PUBLIC REDACTED

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

DANIEL RICHMAN,

                Petitioner.

       v.

UNITED STATES OF AMERICA,

                Respondent.

Case: 1:25–mc–00170
Assigned To : Kollar–Kotelly, Colleen
Assign. Date : 11/26/2025
Description: Misc.

# MEMORANDUM OF LAW IN SUPPORT OF
## PETITIONER DANIEL RICHMAN'S MOTION FOR RETURN OF PROPERTY
### PURSUANT TO FEDERAL RULE OF CRIMINAL PROCEDURE 41(g)

KKL LLP
350 Fifth Avenue, 77th Floor
New York, NY 10118
Tel.: (212) 390-9550

KELLOGG, HANSEN, TODD, FIGEL
& FREDERICK, P.L.L.C.
1615 M Street NW, Suite 400
Washington, DC 20036
Tel.: (212) 326-7900

*Attorneys for Petitioner Daniel Richman*

PUBLIC REDACTED

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................. 1

BACKGROUND ..................................................................................................................... 2

I.   2017-2018: PROFESSOR RICHMAN CONSENTS TO IMAGING AND LIMITED
     SEARCH OF HIS PERSONAL COMPUTER .................................................................. 2

II.  2019–2020: FBI OBTAINS SEARCH WARRANTS IN CONNECTION WITH USAO-
     DDC'S "ARCTIC HAZE" INVESTIGATION .................................................................. 3

III. 2025: THE GOVERNMENT SEARCHES PROFESSOR RICHMAN'S FILES IN
     CONNECTION WITH INVESTIGATION INTO COMEY CONGRESSIONAL
     TESTIMONY AND VIOLATION OF WARRANTS IS REVEALED ............................. 6

LEGAL STANDARD .............................................................................................................. 9

ARGUMENT ....................................................................................................................... 12

I.   PROFESSOR RICHMAN IS AGGRIEVED BY AN UNLAWFUL SEARCH, SEIZURE,
     AND DEPRIVATION OF PROPERTY ......................................................................... 12

     A.  The Government Exceeded the Scope of the Warrants ................................................. 13

     B.  The Government Improperly Retained Professor Richman's Files and Hard Drive for
         Four Years ......................................................................................................... 16

     C.  The Government Conducted a Warrantless Search over Professor Richman's
         Improperly Seized Files in Connection with a New Investigation ............................... 17

II.  THE GOVERNMENT HAS NO BASIS TO RETAIN PROFESSOR RICHMAN'S FILES
     18

     A.  Because Any Materials Seized in Connection with the Warrants or 2025 Search Were
         Illegally Seized, They Must Be Promptly Returned ................................................... 18

     B.  The Government Has No Legitimate Basis to Retain the Hard Drive (or Any Other
         Copies of Professor Richman's Personal Computer) .................................................. 19

III. THE COURT SHOULD EXERCISE EQUITABLE JURISDICTION AND GRANT
     PROFESSOR RICHMAN'S MOTION .......................................................................... 20

     A.  The Government Displayed Callous Disregard for Professor Richman's Rights ........ 21

     B.  Professor Richman Meets the Remaining *Ramsden* Factors ...................................... 23

IV.  THE COURT SHOULD ENJOIN THE GOVERNMENT FROM USING THE FILES
     DURING THE PENDENCY OF THIS MOTION ..……..……………..…………….26

CONCLUSION .................................................................................................................... 27

PUBLIC REDACTED

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Aamer v. Obama,*
   742 F.3d 1023 (D.C. Cir. 2014) ................................................................ 26

*Asinor v. District of Columbia,*
   111 F.4th 1249 (D.C. Cir. 2024) ................................... 10, 13, 16, 17, 19

*Cable News Network, Inc. v. FBI,*
   293 F. Supp. 3d 59 (D.D.C. 2018) ............................................................ 2

*Coolidge v. New Hampshire,*
   403 U.S. 443 (1971) ................................................................... 13, 15

*Dalia v. United States,*
   441 U.S. 238 (1979) ................................................................... 12, 13

*D.A.M. v. Barr,*
   474 F. Supp. 3d 45 (D.D.C. 2020) ......................................................... 26

*Gibani v. Barr,*
   No. 19 Civ. 1009 (JGB), 2019 WL 8112511 (C.D. Cal. Oct. 11, 2019) ............... 16, 18, 21, 24

*In re Grand Jury,*
   635 F.3d 101 (3d Cir. 2011) ................................................................ 22

*Harbor Healthcare Sys., L.P. v. United States,*
   5 F.4th 593 (5th Cir. 2021) ................................................... 22, 23, 24, 26

*Harris v. Bessent,*
   775 F. Supp. 3d 86 (D.D.C. 2025) ......................................................... 26

*Herrera v. Santa Fe Pub. Sch.,*
   792 F. Supp. 2d 1174 (D.N.M. 2011) ...................................................... 25

*League of Women Voters of U.S. v. Newby,*
   838 F.3d 1 (D.C. Cir. 2016) ................................................................ 26

*Lopez v. United States,*
   No. 96 Civ. 1972 (AK), 2006 WL 2788999 (D.D.C. Sept. 26, 2006) ...................... 11

PUBLIC REDACTED

*Nat'l L. Ctr. on Homelessness & Poverty v. U.S. Dep't of Veterans Affs.*,
  842 F. Supp. 2d 127 (D.D.C. 2012) ....................................................................... 20

*Parrott v. District of Columbia*,
  No. 21 Civ. 2930 (RCL), 2023 WL 2162859 (D.D.C. Feb. 22, 2023) .................................... 10

*Perkins Coie LLP v. U.S. Dep't of Just.*,
  783 F. Supp. 3d 105 (D.D.C. 2025) ....................................................................... 25

*Ramsden v. United States*,
  2 F.3d 322 (9th Cir. 1993) ......................................................................... passim

*Richey v. Smith*,
  515 F.2d 1239 (5th Cir. 1975) ............................................................................ 11

*Riley v. California*,
  573 U.S. 373 (2014) ..................................................................................... 23

*In re Search of Info. Associated with Facebook Account Identified by Username Aaron.Alexis
  That Is Stored at Premises Controlled by Facebook Inc.*,
  21 F. Supp. 3d 1 (D.D.C. 2013) ...................................................................... 14, 24

*In re Search of Premises Known as: Three Hotmail Email Accounts: [redacted]@hotmail.com,
  [redacted]@hotmail.com, [redacted]@hotmail.com Belonging to & Seized from [redacted]
  ("Aaron.Alexis")*, No. 16 Mag. 8036 (DJW), 2016 WL 1239916 (D. Kan. Mar. 28, 2016).... 14

*In re Singh*,
  892 F. Supp. 1 (D.D.C. 1995) ..................................................................... 9, 11, 21

*Snitko v. United States*,
  90 F.4th 1250 (9th Cir. 2024) ........................................................................... 11

*United States v. Comey ("Comey I")*,
  -- F. Supp. 3d. --, 2025 WL 3202693 (E.D. Va. Nov. 17, 2025) ...................................... passim

*United States v. Comey ("Comey II")*,
  -- F. Supp. 3d --, 2025 WL 3266932 (E.D. Va. Nov. 24, 2025) ......................................... 6, 19

*United States v. Comprehensive Drug Testing, Inc. ("CDT")*,
  621 F.3d 1162 (9th Cir. 2010) ........................................................................... 10

*United States v. Cotterman*,
  709 F.3d 952 (9th Cir. 2013) ............................................................................ 23

*United States v. Debbi*,
  244 F. Supp. 2d 235 (S.D.N.Y. 2003) ................................................................. 14, 17

PUBLIC REDACTED

*United States v. Heldt,*
    668 F.2d 1238 (D.C. Cir. 1981) ............................................................. 12

*United States v. Hubbard,*
    650 F.2d 293 (D.C. Cir. 1980) ........................................................ 9, 10, 18

*United States v. Kim,*
    103 F. Supp. 3d 32 (D.D.C. 2015) ......................................................... 23

*United States v. Lustyik,*
    57 F. Supp. 3d 213 (S.D.N.Y. 2014) ...................................................... 14

*United States v. Manafort,*
    314 F. Supp. 3d 258 (D.D.C. 2018) ....................................................... 12

*United States v. Matter of Search of Info. Associated With Fifteen Email Addresses Stored at
    Premises Owned , Maintained, Controlled or Operated by 1&1 Media, Inc.,*
    No. 17 Cr. 3152 (WC), 2017 WL 4322826 (M.D. Ala. Sept. 28, 2017) ................... 14

*United States v. Metter,*
    860 F. Supp. 2d 205 (E.D.N.Y. 2012) .................................................. 14, 16

*United States v. Nasher-Alneam,*
    399 F. Supp. 3d 579 (S.D. W. Va. 2019) .................................................. 14

*United States v. Peyton,*
    745 F.3d 546 (D.C. Cir. 2014) ............................................................. 17

*United States v. Raymond,*
    No. 21 Cr. 380 (CKK), 2023 WL 7005341 (D.D.C. Oct. 24, 2023) ......................... 18

*United States v. Rhine,*
    652 F. Supp. 3d 38 (D.D.C. 2023) ......................................................... 12

*United States v. Roper,*
    No. Cr. 117-035, 2018 WL 1465765 (S.D. Ga. Mar. 1, 2018) ........................... 16, 19

*United States v. Rowland,*
    No. 23-1821, 2024 WL 3250909 (3d Cir. July 1, 2024) ..................................... 10

*United States v. Wey,*
    256 F. Supp. 3d 355 (S.D.N.Y. 2017) ...................................................... 18

*United States v. Wright,*
    49 F.4th 1221 (9th Cir. 2022) .......................................................... 11, 19

PUBLIC REDACTED

*United States v. Zelaya-Veliz,*
    94 F.4th 321 (4th Cir. 2024) ........................................................................ 16, 18

*Vernonia Sch. Dist. 47J v. Acton,*
    515 U.S. 646 (1995) ...................................................................................... 12


**<u>Statutes, Rules, and Regulations</u>**

18 U.S.C. § 1001 ................................................................................................. 6

18 U.S.C. § 1505 ................................................................................................. 6

18 U.S.C. § 641 ........................................................................................... passim

18 U.S.C. § 793 ........................................................................................... passim

28 U.S.C. § 546 ................................................................................................... 6

**Other Authorities**

3A Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 690
    (4th ed. 2023) ............................................................................................... 21

Fed. R. Crim. P. 41(e) ............................................................................. 9, 10, 13

Fed. R. Crim. P. 41(g) ................................................................................. passim

Orin S. Kerr, Executing Warrants for Digital Evidence: The Case for Use Restrictions on
    Nonresponsive Data, 48 Tex. Tech. L. Rev. 1, 26 (2015) ........................... 15

**Constitutional Provisions**

U.S. Const. amend. IV ....................................................................................... 12

PUBLIC REDACTED

## PRELIMINARY STATEMENT

This motion seeks redress for the government's violations of Petitioner Daniel Richman's Fourth Amendment rights. Between 2017 and 2020, Professor Richman, an attorney and law professor with a distinguished record of government service, had various interactions with the government relating to his legal representation of former FBI Director James B. Comey, Mr. Comey's handling of potentially classified information, and related communications with the media. Professor Richman agreed to allow the government to image his personal computer for the purpose of identifying and deleting certain sensitive documents and subsequently agreed to a limited search of the image. The government later obtained four warrants that authorized additional searches of the image and of Professor Richman's email and iCloud accounts. Professor Richman was never charged with a crime and had no contact with the government regarding these matters between 2021 and 2025.

On September 25, 2025, Mr. Comey was indicted in the Eastern District of Virginia. Before the indictment against Mr. Comey was dismissed, disclosures in the case brought to light troubling facts concerning the government's handling of the materials it obtained from Professor Richman between 2017 and 2020. First, the government violated the warrants that authorized its searches of Professor Richman's files by apparently failing to identify and segregate responsive materials, thus seizing the *entirety* of the searched materials. Second, despite having no need for those materials after 2021 when its investigation closed, the government nonetheless retained the materials that it collected from Professor Richman's personal computer, email, and iCloud account. Finally, and perhaps most egregiously, in a last-ditch effort to support its prosecution of Mr. Comey, the government conducted a new warrantless search of Professor Richman's files in September 2025 in contravention of clear constitutional rules and the attorney-client privilege.

**PUBLIC REDACTED**

The government's conduct has deprived Professor Richman of his constitutional rights, and the injury to Professor Richman will continue if his property is not returned. Accordingly, the Court should grant Professor Richman's motion and order the return of the files at issue, as well as any copies thereof, and enjoin the government from making any further use of the improperly seized or retained materials.

## BACKGROUND

### I.    2017-2018: PROFESSOR RICHMAN CONSENTS TO IMAGING AND LIMITED SEARCH OF HIS PERSONAL COMPUTER

The story begins in 2017, after a *New York Times* article disclosed the substance of a memorandum written by Mr. Comey concerning a conversation between Mr. Comey and President Trump in which the President sought to pressure Mr. Comey to drop the criminal investigation of former National Security Advisor Michael Flynn. Shortly after this disclosure, the Senate Select Committee on Intelligence held a hearing at which Mr. Comey testified about, among other things, various conversations with President Trump that Mr. Comey had documented in contemporaneous memoranda. *See Cable News Network, Inc. v. FBI*, 293 F. Supp. 3d 59, 65 (D.D.C. 2018), *rev'd*, 984 F.3d 114 (D.C. Cir. 2021). During his testimony, Mr. Comey stated that he had shared at least one of the memoranda with Professor Richman.[1] *See id.* at 73. ██████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

---

[1] Mr. Comey shared several memoranda with counsel. Three of the memoranda were unclassified at the time and remain unclassified today. The fourth memorandum was unclassified at the time that Mr. Comey shared it but was later "up-classified" to the lowest level of classification, "confidential." *See* James Comey's Response to Government's Motion for Expedited Ruling, *United States v. Comey*, No. 25 Cr. 272, 5-6, n.6 (E.D. Va. Oct. 20, 2025), ECF No. 55.

PUBLIC REDACTED



## II.    2019–2020: FBI OBTAINS SEARCH WARRANTS IN CONNECTION WITH USAO-DDC'S "ARCTIC HAZE" INVESTIGATION

Separate from the FBI and OIG outreach to Professor Richman in 2017 and 2018, in 2017,

the U.S. Attorney's Office for the District of Columbia ("USAO-DDC") opened an investigation

into a potential disclosure of classified information in a separate *New York Times* article relating

to decisions Mr. Comey made in connection with Hillary Clinton's use of private email servers.

*See United States v. Comey ("Comey I")*, -- F. Supp. 3d. --, 2025 WL 3202693, at *5 (E.D. Va.

Nov. 17, 2025).  The investigation was known within the FBI as "Arctic Haze."  *Id.*  In connection

with the Arctic Haze investigation, the FBI obtained four search warrants (the "Warrants") in the

---

[2] References to "Affidavits" in connection with the warrants at issue in this case refer to the respective Affidavits in Support of an Application for a Search Warrant.

[3] Attached as Ex. A to Plaintiff's Motion for Return of Property Pursuant to Rule 41(g) ("Rule 41(g) Motion").

**PUBLIC REDACTED**

District of Columbia District Court authorizing searches of accounts or devices that belonged to Professor Richman. On August 27, 2019, the FBI obtained a warrant authorizing the search of a hard drive (the "Hard Drive") that contained the forensic image of Professor Richman's personal computer in 2017 ("Hard Drive Warrant #1"). *See* Hard Drive Warrant #1 at 2, Attachment A. On October 22, 2019, the FBI obtained a warrant authorizing the search of two Columbia University email accounts (the "Columbia Accounts") used by Professor Richman (the "Columbia Warrant"). *See* Columbia Warrant at 4, Attachment A.[4] On January 31, 2020, the FBI obtained a warrant authorizing a search of an Apple iCloud account (the "iCloud Account") that belonged to Professor Richman (the "Apple Warrant"). *See* Apple Warrant at 2, Attachment A.[5] And on June 4, 2020, the FBI obtained a warrant authorizing a second search of Professor Richman's Hard Drive ("Hard Drive Warrant #2").[6] *See* Hard Drive Warrant #2 at 4, Attachment A.

Arctic Haze was an investigation into the potential disclosure of classified information. Consistent with that focus, all four warrants expressly limited the material that the government was permitted to seize to "information that constitutes evidence and/or instrumentalities of violation of" 18 U.S.C. § 641 (theft and conversion of government property) and 18 U.S.C. § 793 (unlawful gathering or transmission of national defense information) during specified periods. *See* Hard Drive Warrant #1 at 3, 47; Columbia Warrant at 8; Apple Warrant at 9; *see also* Hard Drive Warrant #2 at 5 (similar). Hard Drive Warrant #1 authorized the seizure of information from the period February 1, 2017 to April 30, 2017. *See* Hard Drive Warrant #1 at 3. The other three warrants authorized the seizure of information from the period March 1, 2016 to May 30, 2017.

---

[4] Attached as Ex. B to Rule 41(g) Motion.

[5] Attached as Ex. C to Rule 41(g) Motion.

[6] Attached as Ex. D to Rule 41(g) Motion.

PUBLIC REDACTED

*See* Columbia Warrant at 8; Apple Warrant at 9; Hard Drive Warrant #2 at 5. ██████████

████████████████████████████████████████████████████████████████

████████████████████████ *See* Hard Drive Warrant #1 at 5-6;

Aff. ¶ 1; Columbia Warrant at 11, Aff. ¶ 1; Apple Warrant at 11, Aff. ¶ 1; Hard Drive Warrant #2

at 12 Aff. ¶ 2.

    The Hard Drive, the Columbia Accounts, and the iCloud Account that the warrants sought

to seize information from (collectively, "Professor Richman's Files" or the "Files") contained a

trove of personal and professional information unrelated to USAO-DDC's investigation, some of

it highly sensitive and highly personal.  As noted, the Hard Drive contained a forensic image of

Professor Richman's personal computer. ████████████████████████████████

████████████████ *See* Hard Drive Warrant #2 at 12, Aff. ¶ 1.  The iCloud Account contained

application data, photographs, and messages.  The Columbia Accounts were Professor Richman's

principal email addresses for professional and personal use during the relevant period.  The emails

obtained from the Accounts included, among other things, correspondence concerning highly

sensitive matters related to students and faculty appointments, and communication with federal

judges, including in connection with student applications for law clerk positions.

    Unsurprisingly, given Professor Richman's occupation, his Files also contained a

significant quantum of privileged information involving multiple clients.  In recognition of this

fact, in connection with the Columbia Warrant, the iCloud Account Warrant, and Hard Drive

Warrant #2—but *not* in connection with Hard Drive Warrant #1—the government afforded

Professor Richman an opportunity to review the warrant returns for privilege.  Professor Richman,

through counsel, availed himself of this opportunity, withholding privileged material and

producing privilege logs to the government.  This process ended in 2020.  The Arctic Haze

PUBLIC REDACTED

investigation closed in 2021 without any charges being filed. *See Comey I*, 2025 WL 3202693, at *5.

### III.    2025: THE GOVERNMENT SEARCHES PROFESSOR RICHMAN'S FILES IN CONNECTION WITH INVESTIGATION INTO COMEY CONGRESSIONAL TESTIMONY AND VIOLATION OF WARRANTS IS REVEALED

In the summer of 2025, the FBI and the U.S. Attorney's Office for the Eastern District of Virginia ("USAO-EDVA") initiated a new investigation of Mr. Comey. *See id.* at *6. On September 25, 2025, a grand jury sitting in the Eastern District of Virginia purportedly returned a two-count indictment against Mr. Comey, charging him with making false statements in violation of 18 U.S.C. § 1001 and obstructing a congressional proceeding in violation of 18 U.S.C. § 1505. Indictment, *United States v. Comey*, No. 25 Cr. 272 (ECF No. 1).[7] These charges related to testimony Mr. Comey gave before the Senate Judiciary Committee in 2020. *See id.* On November 24, 2025, the Honorable Cameron McGowan Currie, sitting by designation in the Eastern District of Virginia, granted Mr. Comey's motion to dismiss the indictment on the ground that Lindsey Halligan, who presented the case to the grand jury, had been unlawfully appointed Interim U.S. Attorney in violation of 28 U.S.C. § 546 and the Appointments Clause of the U.S. Constitution. *United States v. Comey ("Comey II")*, -- F. Supp. 3d --, 2025 WL 3266932, at *15 (E.D. Va. Nov. 24, 2025). The indictment was dismissed without prejudice. *See id.*

However, before the *Comey* case was dismissed, new facts emerged concerning the Warrants and the government's handling of Professor Richman's Files. On November 17, 2025, the Honorable William E. Fitzpatrick, a magistrate judge in the Eastern District of Virginia, issued

---

[7] Although the government presented the court with an indictment that it described as having been returned by the grand jury, details later surfaced that the indictment may not have been actually presented to or voted on by the full grand jury. Sam Levine, *Full grand jury didn't see final Comey indictment, prosecutors admit*, The Guardian (Nov. 19, 2025), https://www.theguardian.com/us-news/2025/nov/19/comey-indictment-grand-jury.

PUBLIC REDACTED

a Memorandum Opinion in the *Comey* case, finding, among other things, that the government had likely seized materials beyond the scope of the Warrants, retained them for four years after the close of the Arctic Haze investigation, and then conducted a new, warrantless search of Professor Richman's Files in September 2025. *See id.* at *4–*7. As Judge Fitzpatrick explained, pursuant to the Warrants, "the government was permitted to search all of the [Files] but authorized to seize *only evidence related to violations of 18 U.S.C. § 641 . . . and 18 U.S.C. § 793.*" *Id.* at *5 (emphasis added). Despite this clear limitation, Judge Fitzpatrick found "nothing in the record to suggest the government made any attempt to identify what documents, communications or other materials seized from Professor Richman constituted evidence of violations of 18 U.S.C. § 641 and § 793," and instead appeared to have seized Professor Richman's Files wholesale, leaving "the government unchecked to rummage through all of the information seized from Professor Richman . . . anytime they chose." *Id.* Judge Fitzpatrick noted that the over-seizure was particularly troubling in light of Hard Drive Warrant #1's explicit requirement that, following a search for responsive materials, "[l]aw enforcement personnel [would] then seal any information . . . that [did] not fall within the scope of [materials permitted to be seized] and [would] not further review the information absent an order of the Court." *See id.*[8]

According to Judge Fitzpatrick's opinion, after the conclusion of the Arctic Haze investigation, Professor Richman's Files "sat dormant with the FBI until the summer of 2025, when the Bureau chose to rummage through them again" in connection with the investigation into Mr. Comey. *Id.* Judge Fitzpatrick found that, on September 12, 2025, an FBI agent assigned to

---

[8] While this requirement was only explicitly stated in Hard Drive Warrant #1, Judge Fitzpatrick correctly observed that it was also "plainly required on the face of each warrant and . . . in accordance with well-established Fourth Amendment precedent." *Comey I*, 2025 WL 3202693, at *5.

PUBLIC REDACTED

the investigation into Mr. Comey was instructed, with the "apparent[ ] . . . concurrence of [USAO-EDVA]," to review "a full Cellebrite extraction and Reader reports of Professor Richman's iPhone and iPad backups" for communications between Professor Richman and his former client, Mr. Comey. *Id.* at *6 (internal quotation marks and brackets omitted). Judge Fitzpatrick noted that, although "the 2025 investigation was focused on a different person, was exploring a fundamentally different legal theory, and was predicated on an entirely different set of criminal offenses," the government made the "inexplicabl[e]" and "highly unusual" decision *not to obtain a warrant for this search.*[9] *Id.* He further observed:

> If a new warrant had been sought by the government and issued by the Court, the Fourth Amendment would have required it to be narrowly tailored, authorizing access only to materials within a limited time frame and relevant to the new offenses under investigation. In addition, any new warrant would have imposed strict procedural safeguards to ensure privileged information was not reviewed by the prosecution team. As a result, the parameters of the 2025 search would inevitably have had a different and much narrower scope than the . . . Warrants. Faced with this prospect, the government chose to unilaterally search materials that were (1) seized five years earlier; (2) seized in a separate and since closed investigation; (3) that were never reviewed to determine whether the seized information was responsive to the original warrants; (4) that were likely improperly held by the government for a prolonged period of time; (5) that included potentially privileged communications; (6) did so without ever engaging the privilege holders; and (7) did so without seeking any new judicial authority.

*Id.* (citations omitted). According to Judge Fitzpatrick, "the materials seized from the . . . Warrants were the cornerstone of the government's grand jury presentation" in the *Comey* case. *Id.*

With respect to the government's over-seizure and consequent violation of the Warrants, Judge Fitzpatrick concluded that "the facts establish a reasonable basis . . . to challenge whether the . . . Warrants were executed in a manner consistent with the Fourth Amendment and the orders

---

[9] Judge Fitzpatrick noted that the government may have made the decision not to obtain a warrant in its haste to indict Mr. Comey before the statute of limitations expired. *See Comey I*, 2025 WL 3202693, at *6.

PUBLIC REDACTED

of the issuing court" and that "the facts establish a reasonable basis . . . to challenge whether the government exceeded the scope of the . . . Warrants in 2019 and 2020 by seizing and preserving information that was beyond the scope of the warrants, that is, information that did not constitute evidence of violations of either 18 U.S.C. § 641 or § 793." *Id.* at \*10. With respect to the warrantless search conducted in September 2025, Judge Fitzpatrick found that "the facts establish a reasonable basis . . . to challenge whether the government had the lawful authority to search [Professor Richman's Files] anew in 2025" and "the facts establish a reasonable basis . . . to challenge whether the government's 2025 seizure of the [Files] included information beyond the scope of the original warrants." *Id.* Judge Fitzpatrick concluded that the government's misconduct was so egregious that "the nature and circumstances surrounding the government's potential violations of the Fourth Amendment and court orders establish a reasonable basis to question whether the government's conduct was willful or in reckless disregard of the law." *Id.*

## LEGAL STANDARD

A "party from whom materials are seized in the course of a criminal investigation retains a protectible property interest in the seized materials." *United States v. Hubbard*, 650 F.2d 293, 303 (D.C. Cir. 1980). Federal Rule of Criminal Procedure 41(g) provides a mechanism for "[a] person aggrieved by an unlawful search and seizure of property or by the deprivation of property" to move for the property's return or destruction. Fed. R. Crim. Pro. 41(g); *see also* Fed. R. Crim. P. 41(e) Advisory Committee's Note to 1989 Amendment ("In some circumstances . . . equitable considerations might justify an order requiring the government to return or destroy all copies of records that it has seized."). "District courts have the power to entertain motions to return property seized by the government when there are no criminal proceedings pending against the movant." *In re Singh*, 892 F. Supp. 1, 3–4 (D.D.C. 1995). In such circumstances, where "the motion is made by a party against whom no criminal charges have been brought," the case is considered as a

**PUBLIC REDACTED**

"petition that the district court invoke its civil equitable jurisdiction" under Rule 41(g). *Parrott v. District of Columbia*, No. 21 Civ. 2930 (RCL), 2023 WL 2162859, at *10 (D.D.C. Feb. 22, 2023) (quoting *United States v. Comprehensive Drug Testing, Inc. ("CDT")*, 621 F.3d 1162, 1172 (9th Cir. 2010)), *reconsid. denied*, 2025 WL 1836145 (July 3, 2025). The proper venue for such a motion is "the district where the property was seized." Fed. R. Crim. P. 41(g).

While the text of Rule 41(g) does not set forth a "standard . . . to govern the determination of whether property should be returned" under the Rule, "[t]he [F]ourth [A]mendment protects people from unreasonable seizures as well as unreasonable searches, and reasonableness under all of the circumstances must be the test when a person seeks to obtain the return of property." Fed. R. Crim. P. 41(e) Advisory Committee's Note to 1989 Amendment (citation omitted). "If the United States has a need for the property in an investigation or prosecution, its retention of the property generally is reasonable." *Id.* However, the government may not retain even lawfully obtained property if it lacks a legitimate reason to do so. *See Asinor v. District of Columbia*, 111 F.4th 1249, 1252, 1255–59 (D.C. Cir. 2024) (holding that the Fourth Amendment requires the government's "continued possession" of lawfully seized property to be reasonable). And property that is "*unlawfully* seized must on motion be promptly returned unless it be contraband or statutorily forfeit." *Hubbard*, 650 F.2d at 303 n.26 (emphasis added) (citation omitted).

A district court has jurisdiction to consider a Rule 41(g) motion "regardless of whether a criminal prosecution is presaged, pending, or perfected." *United States v. Rowland*, No. 23-1821, 2024 WL 3250909, at *3 (3d Cir. July 1, 2024) (per curium). The burden of proof for a Rule 41(g) motion depends on when it is brought. "When the government needs the property for evidentiary purposes, either because investigation is ongoing or trial is imminent, the movant bears the burden of proving both that the property's seizure was illegal and that he or she is entitled to lawful

PUBLIC REDACTED

possession of the property." *United States v. Wright*, 49 F.4th 1221, 1225 (9th Cir. 2022) (citation modified). "[O]nce criminal proceedings conclude or the government abandons its investigation," the burden shifts to the government, which must demonstrate "that it has a legitimate reason to retain the property," either by establishing that "the property is contraband," "the property is subject to forfeiture," or there is "a cognizable claim of ownership or right of possession adverse to that of the movant." *Id.* at 1225-26 (citation modified); *see also Lopez v. United States*, No. 96 Civ. 1972 (AK), 2006 WL 2788999, at *12 (D.D.C. Sept. 26, 2006) ("[O]nce criminal proceedings have ended, the Government bears the burden of demonstrating that the property is contraband or subject to forfeiture.").

In determining whether to exercise equitable jurisdiction over "preindictment" Rule 41(g) motions, courts may consider the following four factors (known as the *Ramsden* factors):

> (1) whether the Government displayed a callous disregard for the constitutional rights of the movant; (2) whether the movant has an individual interest in and need for the property he wants returned; (3) whether the movant would be irreparably injured by denying return of the property; and (4) whether the movant has an adequate remedy at law for the redress of his grievance.

*In re Singh*, 892 F. Supp. at 3 (quoting *Ramsden v. United States*, 2 F.3d 322, 325 (9th Cir. 1993)). "Whether to exercise [equitable] jurisdiction in a given case is subject to the sound discretion of the district court." *Richey v. Smith*, 515 F.2d 1239, 1243 (5th Cir. 1975). Where, however, the government comes into the possession of evidence "through intentional wrongdoing—rather than through a technical or good faith mistake—[a court] should order return of the property without the need for balancing [the four *Ramsden* factors] that is applicable in the more ordinary case." *Snitko v. United States*, 90 F.4th 1250, 1259 (9th Cir. 2024) (quoting *CDT*, 621 F.3d at 1174).

PUBLIC REDACTED

# ARGUMENT

## I.   PROFESSOR RICHMAN IS AGGRIEVED BY AN UNLAWFUL SEARCH, SEIZURE, AND DEPRIVATION OF PROPERTY

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV.   "The Supreme Court has interpreted the constitutional prohibition against unreasonable searches to require that law enforcement obtain a warrant except in a narrow set of special circumstances." *United States v. Rhine*, 652 F. Supp. 3d 38, 71 (D.D.C. 2023) (citing *Vernonia Sch. Dist. 47J v. Acton*, 515 U.S. 646, 653 (1995)).   To satisfy the Fourth Amendment, warrants must (1) "be issued by neutral, disinterested magistrates"; (2) be supported by "probable cause to believe that the evidence sought will aid in a particular apprehension or conviction for a particular offense"; and (3) "particularly describe the things to be seized, as well as the place to be searched." *Dalia v. United States*, 441 U.S. 238, 255 (1979) (citation modified).   When executing a warrant, the government must "do so 'in a reasonable manner, appropriately limited to the scope and intensity called for by the warrant.'" *United States v. Manafort*, 314 F. Supp. 3d 258, 263 (D.D.C. 2018) (quoting *United States v. Heldt*, 668 F.2d 1238, 1256 (D.C. Cir. 1981)).

The government violated Professor Richman's Fourth Amendment rights in at least three ways.   First, it apparently exceeded the scope of the Warrants, seizing both responsive and non-responsive materials, leaving "the government unchecked to rummage through *all of* the information seized from [Professor] Richman . . . anytime they chose" for years after the Warrants issued.   *Comey I*, 2025 WL 3202693, at *5 (emphasis added).   Second, it retained all of Professor Richman's Files—without having even attempted to segregate the non-responsive from the

PUBLIC REDACTED

responsive—for more than four years, from 2021 to 2025—a years-long seizure that was patently unreasonable. *See Asinor*, 111 F.4th at 1252, 1255–59. Third, four years after the closure of the Arctic Haze investigation, it conducted a new, warrantless search over Professor Richman's improperly seized Files in connection with a new, unrelated investigation.

### A.    The Government Exceeded the Scope of the Warrants

The government violated Professor Richman's Fourth Amendment rights through its execution of the Warrants by seizing more material than the Warrants authorized. A fundamental purpose behind the Fourth Amendment's warrant requirement is to ensure that any government search "deemed necessary should be as limited as possible." *Coolidge v. New Hampshire*, 403 U.S. 443, 467 (1971). "[T]he specific evil is the 'general warrant' abhorred by the colonists, and the problem is not that of intrusion per se, but of a general, exploratory rummaging in a person's belongings." *Id.* Thus, to comply with the Fourth Amendment, a warrant must "particularly describe the things to be seized, as well as the place to be searched." *Dalia*, 441 U.S. at 255 (citation modified).

These Warrants did just that. While they permitted the government to *search* Professor Richman's Files broadly, they only authorized the government to *seize* "information that constitutes evidence and/or instrumentalities of violation of" 18 U.S.C. § 641 (theft and conversion of government property) and 18 U.S.C. § 793 (unlawful gathering or transmission of national defense information). *See* Hard Drive Warrant #1 at 3, 47; Columbia Warrant at 8; Apple Warrant at 9; *see also* Hard Drive Warrant #2 at 5 (similar); *see also* Fed. R. Crim. P. 41(e)(2) Advisory Committee's Note to 2009 Amendments (approving of a "two-step process" for warrants seeking electronically stored information where "officers . . . seize or copy the entire storage medium and review it later to determine what . . . information falls within the scope of the warrant"). Thus, the government was obligated to (i) conduct a search, (ii) determine which materials were responsive,

13

PUBLIC REDACTED

and (iii) seize and retain only those responsive materials.  While this requirement was implicit in

all of the Warrants (and is constitutionally required), *see Comey I*, 2025 WL 3202693, at *5, ████



████████████████████████ Furthermore, the Fourth Amendment required

the government to complete this procedure "within a reasonable time."  *United States v. Lustyik*,

57 F. Supp. 3d 213, 230 (S.D.N.Y. 2014); *see also United States v. Metter*, 860 F. Supp. 2d 205,

215 (E.D.N.Y. 2012) (granting suppression due to a fifteen-month delay in responsiveness review

as required by search warrant and noting that "the Fourth Amendment requires the Government to

complete its review, *i.e.*, execute the warrant, within a reasonable period of time"); *United States

v. Debbi*, 244 F. Supp. 2d 235, 237-38 (S.D.N.Y. 2003) (granting suppression and "the prompt

---

[10] Judges routinely impose similar requirements to limit the government's access to non-responsive material.  *See, e.g.*, *In re Search of Info. Associated with Facebook Account Identified by Username Aaron.Alexis That Is Stored at Premises Controlled by Facebook Inc. ("Aaron.Alexis")*, 21 F. Supp. 3d 1, 10 (D.D.C. 2013) (approving of orders that "explicitly require that contents and records of electronic communications that are not relevant to an investigation must be returned or destroyed and cannot be kept by the government"); *United States v. Matter of Search of Info. Associated With Fifteen Email Addresses Stored at Premises Owned , Maintained, Controlled or Operated by 1&1 Media, Inc.*, No. 17 Cr. 3152 (WC), 2017 WL 4322826, at *9 (M.D. Ala. Sept. 28, 2017) (holding that when data was "turned over by the providers but not 'seized' as relevant to the investigation . . . it . . . make[s] sense to require the Government to destroy or return that evidence"); *In re Search of Premises Known as: Three Hotmail Email Accounts: [redacted]@hotmail.com, [redacted]@hotmail.com, [redacted]@hotmail.com Belonging to & Seized from [redacted]*, No. 16 Mag. 8036 (DJW), 2016 WL 1239916, at *23 (D. Kan. Mar. 28, 2016) (approving of the use of retention limits as an "easily enforceable tool" to protect Fourth Amendment rights); *see also United States v. Nasher-Alneam*, 399 F. Supp. 3d 579, 595 (S.D. W. Va. 2019) ("Given the heightened potential for government abuse of stored electronic data, it is imperative that courts ensure that law enforcement scrupulously contain their searches to the scope of the search warrant which permitted the search in the first place.").

PUBLIC REDACTED

return" of seized unreviewed and/or nonresponsive data due to an eight-month delay in responsiveness review).

Despite its obligation to seize only responsive materials, Judge Fitzpatrick found "nothing in the record to suggest the government made any attempt to identify what documents, communications or other materials seized from [Professor Richman] constituted evidence of violations of 18 U.S.C. § 641 and § 793," which left "the government unchecked to rummage through *all* of the information seized from Professor Richman . . . anytime they chose." *Comey I*, 2025 WL 3202693, at *5 (emphasis added); *see also id.* at *10 ("[T]he facts establish a reasonable basis . . . to challenge whether the . . . Warrants were executed in a manner consistent with the Fourth Amendment and the orders of the issuing court" and "whether the government exceeded the scope of the . . . Warrants in 2019 and 2020 by seizing and preserving information that was beyond the scope of the warrants, that is, information that did not constitute evidence of violations of either 18 U.S.C. § 641 or § 793"). By failing to separate responsive and non-responsive materials in Professor Richman's Files, the government deprived Professor Richman of the Fourth Amendment's protection against general warrants. *See Coolidge*, 403 U.S. at 466 (describing "a general, exploratory rummaging in a person's belongings" as an evil the Fourth Amendment was designed to prevent); *see also* Orin S. Kerr, Executing Warrants for Digital Evidence: The Case for Use Restrictions on Nonresponsive Data, 48 Tex. Tech. L. Rev. 1, 26 (2015) ("In effect, allowing use of nonresponsive data effectively treats that data as if it had been included in the warrant . . . eliminat[ing] the role of the particularity requirement."). The government's execution of the Warrants was therefore unreasonable, rendering any seizure pursuant to the Warrants unlawful.

PUBLIC REDACTED

**B.    The Government Improperly Retained Professor Richman's Files and Hard Drive for Four Years**

The government exacerbated its error by then retaining all of Professor Richman's seized data—responsive and not—for four years after closing the investigation through which it came into possession of that data.  This too is unreasonable and constitutes a violation of Professor Richman's Fourth Amendment rights.  The "touchstone of the [Fourth] Amendment is reasonableness," *Henke v. Dep't of Interior*, 842 F. Supp. 2d 54, 62 (D.D.C. 2012), which is a standard that applies in full force to "the continuing retention of seized property" by the government, *Asinor*, 111 F.4th at 1261 ("[P]laintiffs' allegations raise serious questions about the reasonableness of the MPD's handling of their property for months or years after their release from custody without charges.").

Although the Arctic Haze investigation decisively concluded in 2021, the government to this day indefensibly retains Professor Richman's Files. *See id.*; *United States v. Zelaya-Veliz*, 94 F.4th 321, 338 (4th Cir. 2024) (holding that district courts "retain[] the authority to determine that prolonged retention of nonresponsive data by the government violated the Fourth Amendment"). Even if some portion of the data was originally responsive to the Arctic Haze investigation, the government retained *all of the seized data* (both responsive and nonresponsive) for four years, during which time the property no longer bore any relation to a potential criminal activity to be charged and, as a result, held zero evidentiary value. *See Gibani v. Barr*, No. 19 Civ. 1009 (JGB), 2019 WL 8112511, at *2 (C.D. Cal. Oct. 11, 2019).  This prolonged retention of Professor Richman's Files—even those responsive to the Warrants—was facially unreasonable and amounts to independent grounds to seek return of the seized property. *See Metter*, 860 F. Supp. 2d at 215; *United States v. Roper*, No. Cr. 117-035, 2018 WL 1465765, at *6 (S.D. Ga. Mar. 1, 2018) (recommending case agent be directed to remove all nonresponsive data from his computer,

16

PUBLIC REDACTED

because retaining the complete original production for more than two years after completing review exceeded the scope of the warrant and violated the Fourth Amendment), *R. & R. adopted*, 2018 WL 1463365 (Mar. 23, 2018); *Debbi*, 244 F. Supp. 2d at 237–38 (noting that the government's actions, including "pick[ing] over [records] for months . . . without determining which were actually evidence of the alleged crimes" demonstrated "blatant disregard" for the law); *see also Asinor*, 111 F.4th at 1252, 1255–59 (holding that government's retention of even lawfully seized property must be reasonable to comport with the Fourth Amendment). Indeed, what the government did next—namely, to conduct a warrantless search across a vast quantity of files in connection with a new investigation alleging different crimes, when those files had been improperly seized, were never segregated based on responsiveness, and had been retained by the government for four years—exemplifies precisely the governmental abuse against which the Fourth Amendment was designed to protect.

### C.    The Government Conducted a Warrantless Search over Professor Richman's Improperly Seized Files in Connection with a New Investigation

In 2025, the government compounded its over-seizure and unconstitutional retention when it chose to conduct a warrantless search of the Files it had unlawfully seized. "A warrantless search is the quintessential intrusion and is presumptively unreasonable." *United States v. Peyton*, 745 F.3d 546, 552 (D.C. Cir. 2014). And there is no plausible exception applicable here.

According to Judge Fitzpatrick, after Professor Richman's illegally seized and unsegregated Files sat dormant for four years, "the [FBI] chose to rummage through them again" in 2025 in connection with the government's investigation into Mr. Comey. *Comey I*, 2025 WL 3202693, at *5. Specifically, the FBI searched the entirety of Professor Richman's "iPhone and iPad backups" for communications between Professor Richman and Mr. Comey, despite their attorney-client relationship. *Id.* at *6. The 2025 investigation into Mr. Comey came four years

PUBLIC REDACTED

after the Arctic Haze investigation ended: it "was focused on a different person, was exploring a fundamentally different legal theory, and was predicated on an entirely different set of criminal offenses." *Id.* As described by Judge Fitzpatrick, the government nevertheless made the "inexplicabl[e]" and "highly unusual" decision not to obtain a warrant for the search. *Id.*; *see also id.* at *10.

The government cannot rely on the Warrants to justify this search. By 2025, they had long expired, and the investigation to which they pertained had long been closed. Moreover, even if the 2025 search had been within the scope of the Warrants, there is "no authority suggesting that simply because it has retained all originally searchable electronic materials, the Government is permitted to return to the proverbial well months or years after the relevant Warrant has expired to make another sweep for relevant evidence, armed with newly refined search criteria and novel case theories." *United States v. Wey*, 256 F. Supp. 3d 355, 406 (S.D.N.Y. 2017). "A search warrant, like a pumpkin carriage, retains its magical properties only for a certain period of time." *United States v. Raymond*, No. 21 Cr. 380 (CKK), 2023 WL 7005341, at *9 (D.D.C. Oct. 24, 2023). "A warrant permits but one search, and when it is completed, the prevailing guidance is simple: get another warrant." *Id.* (citation modified). The government failed to do so. Thus, the 2025 search and any associated seizures violated the Fourth Amendment.

## II.   THE GOVERNMENT HAS NO BASIS TO RETAIN PROFESSOR RICHMAN'S FILES

### A.   Because Any Materials Seized in Connection with the Warrants or 2025 Search Were Illegally Seized, They Must Be Promptly Returned

Because the materials seized in connection with the Warrants and 2025 search were seized illegally, the government cannot retain them. *See Hubbard*, 650 F.2d at 303 n.26; *see also v. Zelaya-Veliz*, 94 F.4th at 338; *Gibani*, 2019 WL 8112511, at *2 (granting Rule 41(g) motion where, although "the Government was aware of its obligation to have a warrant and the procedure

PUBLIC REDACTED

to obtain one, it failed to do so"); *Roper*, 2018 WL 1465765, at *6 (recommending that case agent be ordered to remove data non-responsive to search warrant from his computer).

**B.    The Government Has No Legitimate Basis to Retain the Hard Drive (or Any Other Copies of Professor Richman's Personal Computer)**

The government also lacks a legitimate basis to retain the Hard Drive. Even with respect to property that is lawfully seized, the government's "continued possession of the property" must be reasonable. *See Asinor*, 111 F.4th at 1252. Once the government's need for seized property expires, it may only retain such property if it demonstrates that "the property is contraband," "the property is subject to forfeiture," or there is "a cognizable claim of ownership or right of possession adverse to that of the movant." *Wright*, 49 F.4th at 1226 (citation modified).

The government imaged Professor Richman's computer in 2017 with Professor Richman's consent. It subsequently conducted limited searches of the computer in 2017 and 2018, again with Professor Richman's consent, and obtained Warrants to search the Hard Drive (which contained the image of the computer) in 2019 and 2020 in connection with the Arctic Haze investigation. Since the Arctic Haze investigation ended in 2021, the government has had no evidentiary need for the Hard Drive. While the government may argue that it needs the Hard Drive to obtain evidence to prosecute Mr. Comey, the *Comey* case has now been dismissed and any charges related to the underlying conduct are time-barred. *See Comey I*, 2025 WL 3202693, at *6 (noting that had Mr. Comey not been indicted, the statute of limitations would have expired on September 30, 2025). Even if the case were to somehow proceed, the government should be barred from using evidence from the Hard Drive.[11] The materials from the Hard Drive that the government presented

---

[11] In dismissing the *Comey* indictment, Judge McGowan Currie stated that she was "invalidat[ing] the *ultra vires* acts performed by Ms. Halligan" and "returning Mr. Comey to the status he occupied before being indicted." *See Comey II*, 2025 WL 3266932, at *15. Following the *Comey* court's

PUBLIC REDACTED

to the grand jury in the *Comey* case were only identified by the government because it (1) exceeded the scope of the Warrants and seized non-responsive data, (2) illegally retained materials it should have destroyed or returned, and (3) searched the illegally seized and retained data without a warrant. *See id.* The government should not be permitted to benefit from this. *Cf. CDT*, 621 F.3d at 1174 (observing that the government "must not be allowed to benefit from its own wrongdoing by retaining the wrongfully obtained evidence or any fruits thereof").

Furthermore, by breaching the terms of the consents, the government has destroyed its legal basis to possess the Hard Drive. The government's imaging of Professor Richman's computer was conditioned on the government limiting any searches of the image to those authorized by the consents or permitted by "process"—i.e., a warrant. *See* FBI Consent; OIG Consent. The government breached the consents when it conducted a warrantless search of the contents of the Hard Drive in 2025. Thus, there is no lawful basis for the government to retain any images of Professor Richman's computer, whether stored on the Hard Drive or elsewhere.

## III.    THE COURT SHOULD EXERCISE EQUITABLE JURISDICTION AND GRANT PROFESSOR RICHMAN'S MOTION

The Court should exercise equitable jurisdiction under Rule 41(g) and its inherent powers to order the return of Professor Richman's Files. *See Nat'l L. Ctr. on Homelessness & Poverty v. U.S. Dep't of Veterans Affs.*, 842 F. Supp. 2d 127, 131 (D.D.C. 2012) (discussing a court of equity's broad and flexible equitable powers) (collecting cases). Should this Court choose to apply

---

reasoning, there seems to be no viable path for the government to seek to renew its prosecution of Mr. Comey based on alleged false statements made over five years prior.

PUBLIC REDACTED

the *Ramsden* factors in determining whether to exercise jurisdiction,[12] those factors weigh

decidedly in favor of granting the motion.  Critically, under circumstances such as these, where

the government retained and searched the seized property through wrongdoing, no balancing of

the equities is required under *Ramsden* or its progeny.  *See CDT*, 621 F.3d at 1174 (where "the

government has obtained . . . evidence through intentional wrongdoing—rather than through a

technical or good faith mistake—[courts] should order return of the property without the need for

balancing that is applicable in the more ordinary case").  However, even if the Court were to apply

all four factors, a balancing of the equities tilts strongly in favor of Professor Richman.

### A.     The Government Displayed Callous Disregard for Professor Richman's Rights

The government's over-seizure and retention of Professor Richman's Files and the 2025

warrantless search constitute, at a minimum, "callous disregard for [the movant's] rights."[13]  The

over-seizure was a direct violation of the Warrants and the terms of the consents pursuant to which

the government obtained the image of Professor Richman's personal computer.  *See Gibani*, 2019

WL 8112511, at *2 ("[T]he Government demonstrated 'a callous disregard' for Movant's

constitutional rights when it kept Movant's property for over a year and a half after its warrant to

search that property had expired.").  Like in *Ramsden*, "[n]o warrant was obtained" by the

---

[12] The D.C. Circuit has not adopted the *Ramsden* factors, but they have previously been applied in this District.  *See In re Singh*, 892 F. Supp. at 2–3; *see also* 3A Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 690 (4th ed. 2023) (noting the equitable nature of Rule 41(g) relief and stating that courts consider whether the movant has "an adequate remedy otherwise or cannot show irreparable injury" in considering Rule 41(g) motions).

[13] In fact, there is significant evidence that the government's actions here went far beyond "callous" disregard, and instead amounted to, at the very least, willful disregard.  *See, e.g.*, *Comey I*, 2025 WL 3202693, at *7 (after an FBI agent "alerted the lead case agent (hereinafter referred to as Agent-3) and an attorney with the FBI's Office of General Counsel that 'evidence obtained in the Government's investigation of James Comey may constitute attorney-client privileged or attorney-client confidential information,'" Agent-3 "proceeded into the grand jury undeterred and testified in support of the pending indictment," "rather than remove himself from the investigative team until the taint issue was resolved").

PUBLIC REDACTED

government "and no exception to the warrant requirement was applicable" to excuse the warrantless 2025 search. 2 F.3d at 325. Moreover, like in *Ramsden*, "although the Government had the opportunity to secure a warrant, it simply chose not to comply with its obligations under the Fourth Amendment." *Id.*[14]  The government's over-seizure and retention of privileged documents is further basis to conclude that the government displayed a callous disregard for Professor Richman's rights. *See Harbor Healthcare Sys., L.P. v. United States*, 5 F.4th 593, 599 (5th Cir. 2021) (finding callous disregard where the government "made no attempt to respect" attorney-client privilege in its search and failed to "destroy or return" privileged documents). For all of these reasons, Judge Fitzpatrick concluded that "the nature and circumstances surrounding the government's behavior"—including its "potential violations of the Fourth Amendment and court orders"—were so concerning as to "establish a reasonable basis to question whether the government's conduct was willful or in reckless disregard of the law." *Comey I*, 2025 WL 3202693, at *10.

Because the government displayed at least a callous disregard for Professor Richman's rights (assuming, *arguendo*, the absence of willful misconduct), the Court need not reach the other *Ramsden* factors. *See CDT*, 621 F.3d at 1174. The Court should grant Professor Richman's requested relief: the immediate return of his seized data and Hard Drive, and the deletion of any copies in the government's possession. *See Ramsden*, 2 F.3d at 327 n.4 (observing that "callous disregard for a movant's constitutional rights may under some circumstances justify denying the government the right to retain copies of seized documents"); *see also In re Grand Jury*, 635 F.3d

---

[14] As Judge Fitzpatrick suggested, the government may have decided to conduct the 2025 search without a warrant due to the impending statute of limitations in the *Comey* case. *See Comey I*, 2025 WL 3202693, at *6.

PUBLIC REDACTED

101, 105 (3d Cir. 2011) (observing that a Rule 41(g) motion may properly seek "both the return of property and the suppression of evidence").

**B.      Professor Richman Meets the Remaining *Ramsden* Factors**

While the Court need not reach the other *Ramsden* factors—whether the movant can establish (1) an individual interest in and substantial need for the seized property; (2) irreparable harm absent the return of the property; and (3) that he lacks an adequate remedy at law—they also weigh in Professor Richman's favor.

As an initial matter, the government's retention of the Files poses significant privacy issues. The Files include: (1) an image of Professor Richman's personal computer, which itself includes backup files for Professor Richman's iPad and iPhone; (2) the contents of two of Professor Richman's email addresses; and (3) the contents of an iCloud account.  Professor Richman is an attorney and law professor who used his devices and email to conduct personal and professional communications.  Digital materials such as these contain "the most intimate details" of a person's life: "financial records, confidential business documents, medical records and private emails." *United States v. Kim*, 103 F. Supp. 3d 32, 50 (D.D.C. 2015) (citing *United States v. Cotterman*, 709 F.3d 952, 964–65 (9th Cir. 2013)); *see Riley v. California*, 573 U.S. 373, 393–94 (2014) (discussing constitutional concerns unique to seizing electronic devices with "immense storage capacity").

The nature of the Files and the government's constitutional violations to date demonstrate both Professor Richman's interest in and need for his property and the harm he will suffer if it is not returned.  To start, the Files include privileged communications between Professor Richman and his clients—including, but not limited to, Mr. Comey.  Though "[t]he whole point of privilege is privacy," *Harbor Healthcare*, 5 F.4th at 599, the government has retained these communications for years, and earlier this year, conducted a warrantless search of Professor Richman's Files,

PUBLIC REDACTED

specifically targeting communications between Professor Richman and his client. *See Comey I*, 2025 WL 3202693, at *6. Professor Richman's inability to maintain confidentiality over the privileged communications in the government's possession "constitutes an irreparable injury that can be cured only by Rule 41(g) relief." *Harbor Healthcare*, 5 F.4th at 600 ("Harbor remains injured as long as the government retains its privileged documents. That injury can only be made whole by the government returning and destroying its copies of the privileged material.").

Professor Richman also has an interest in keeping the government out of his non-privileged work communications. Professor Richman's work as a law professor requires the ability to communicate freely and candidly with students, colleagues, and judges. The government's continued retention of Professor Richman's professional correspondence—and demonstrated willingness to rummage through it without a warrant—significantly hinders this ability. *See CDT*, 621 F.3d at 1172 (a movant properly sought return of seized property where necessary to preserve the "integrity of its business," and protect the "privacy and economic well-being of its members, which could easily be impaired if the government were to release" the seized information). *Ramsden*, 2 F.3d at 325 (finding the individual interest factor met where the seized "documents [we]re necessary for Ramsden to run his business"); *cf. Aaron.Alexis*, 21 F. Supp. 3d at 6–9 (expressing concern about the government's "remarkable dragnet over communications that surely have nothing to do with this case, including those to and from third parties, who will never know of the government's seeing their communications with John Doe about unrelated matters").

Professor Richman's Files also include sensitive personal documents, including his own and family members' medical records, and comprehensive financial records. *see also Gibani*, 2019 WL 8112511, at *2 (finding irreparable injury *Ramsden* factor met where government

PUBLIC REDACTED

retained electronic devices that contained data of "personal value" for over a year and half after warrants expired). These documents have no value to any government investigation.

The government should not remain in a position to "rummage through them" or any other Files "anytime they [choose]." *Comey I*, 2025 WL 3202693, at *5. Because the government has no legitimate basis to retain the Files, the government's continued possession of them violates the Fourth Amendment. *See* Section II *supra*. "It has long been established that the loss of constitutional freedoms, 'for even minimal periods of time, unquestionably constitutes irreparable injury.'" *Perkins Coie LLP v. U.S. Dep't of Just.*, 783 F. Supp. 3d 105, 178 (D.D.C. 2025) (collecting cases); *Herrera v. Santa Fe Pub. Sch.*, 792 F. Supp. 2d 1174, 1182 (D.N.M. 2011) ("[C]ourts have regularly found that being subjected to an unconstitutional search causes irreparable harm."). The callous disregard that the government has displayed towards Professor Richman's rights creates a significant risk that the government will cause irreparable harm to Professor Richman in other ways if it is permitted to retain his personal Files—for example by conducting additional warrantless searches or violating the terms of any future warrants that might issue. If the government is allowed to remain in a position to conduct endless general searches over the Files, that leaves Professor Richman (and anyone he communicated with) at risk.

If the Court were to deny his motion, Professor Richman would lack an adequate remedy at law to recover his property and vindicate his rights. Because Professor Richman is not a defendant, target, or subject in any current government investigation or proceeding, "he will not have the opportunity to challenge the seizure of the documents and request their return at a later date in a court . . ." *Ramsden*, 2 F.3d at 326. Even if Professor Richman were able to bring a "motion to suppress in a possible criminal proceeding," which he is not, this avenue would not redress Professor Richman's injury because "suppression motions vindicate an interest entirely

PUBLIC REDACTED

different from Rule 41(g) motions." *Harbor Healthcare*, 5 F.4th at 600. Therefore, the remaining three *Ramsden* factors weigh heavily in favor of exercising jurisdiction and granting Professor Richman's motion.

## IV.   THE COURT SHOULD ENJOIN THE GOVERNMENT FROM USING THE FILES DURING THE PENDENCY OF THIS MOTION

Professor Richman respectfully requests that the Court issue a temporary restraining order enjoining the government from using or relying on in any way the improperly seized and retained materials until such time as the Court can further consider the merits of his claims. The standard for granting such relief largely overlaps with the *Ramsden* factors. *See Aamer v. Obama*, 742 F.3d 1023, 1038 (D.C. Cir. 2014) (to obtain such a relief, a plaintiff must show "(1) that he is likely to succeed on the merits, (2) that he is likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in his favor, and (4) that an injunction is in the public interest") (citation modified); *Harris v. Bessent*, 775 F. Supp. 3d 86, 90 (D.D.C. 2025) ("An application for a TRO is analyzed using the same factors applicable to a request for preliminary injunctive relief."); *D.A.M. v. Barr*, 474 F. Supp. 3d 45, 67 (D.D.C. 2020) (where "the movant seeks to enjoin the government, the final two TRO factors … merge"). The nature of the government's conduct here, alongside Judge Fitzpatrick's findings in *Comey I*, support a finding that Professor Richman is likely to succeed on the merits. As described above, Professor Richman also meets the standard for irreparable harm absent preliminary relief, and the balance of equities tips in his favor. *See* Section III *supra*. Finally, an injunction is in the public interest, as "[t]here is generally no public interest in the perpetuation of unlawful agency action," but a "substantial public interest" in having governmental agencies "abide" by the law. *See League of Women Voters of U.S. v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016).

**PUBLIC REDACTED**

## CONCLUSION

For the reasons stated herein, the Court should: (1) enjoin the government from using the Files throughout the pendency of this motion; (2) order the government to immediately return or delete Professor Richman's Files and all copies thereof; and (3) enjoin the government from making any further use of the improperly seized or retained materials.  In the alternative, the Court should order an evidentiary hearing to determine (1) the precise contours of the government's conduct, (2) why it did it, and (3) whether that constitutes callous disregard or intentional misconduct.  *See* Fed. R. Crim. P. 41(g) ("The court must receive evidence on any factual issue necessary to decide the motion.").

PUBLIC REDACTED

Dated:  November 26, 2025

Respectfully submitted,

By: Mark C. Hansen

KKL LLP
Nicholas J. Lewin (*pro hac vice* forthcoming)
Jonathan F. Bolz (*pro hac vice* forthcoming)
Jessie-Lauren Pierce (*pro hac vice* forthcoming)
350 Fifth Avenue, 77th Floor
New York, New York 10118
Tel.: (212) 390-9550
Nick.Lewin@KKLllp.com
Jonathan.Bolz@KKLllp.com
Jessie.Pierce@KKLllp.com

KELLOGG, HANSEN, TODD,
FIGEL & FREDERICK, P.L.L.C.
Mark C. Hansen
1615 M Street NW, Suite 400
Washington, D.C. 20036
Tel.: (202) 326-7900
mhansen@kellogghansen.com

*Attorneys for Petitioner Daniel Richman*

# Exhibit A

## FILED UNDER SEAL

# Exhibit B

## FILED UNDER SEAL

# Exhibit C

## FILED UNDER SEAL

# Exhibit D

## FILED UNDER SEAL

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

DANIEL RICHMAN,

                       Petitioner.

        v.

UNITED STATES OF AMERICA,

                       Respondent.

_____ -mc- _____

**[PROPOSED] ORDER GRANTING PETITIONER'S MOTION FOR RETURN OF PROPERTY PURSUANT TO FEDERAL RULE OF CRIMINAL PROCEDURE 41(g)**

Upon consideration of Petitioner Daniel Richman's Motion for Return of Property Pursuant to Federal Rule of Criminal Procedure 41(g) (the "Motion") and supporting memorandum, the government's opposition thereto, Petitioner's reply memorandum in support of his Motion, and any related evidentiary hearing, for the reasons stated in Petitioner's Motion and supporting papers, it is hereby **ORDERED** that:

(1) The Motion is **GRANTED**; and

(2) The government shall return or delete all copies it retains of Petitioner's Files, as defined in Petitioner's supporting memorandum, and certify to Petitioner that no copies remain in the government's possession by _____; and

(3) The government is permanently enjoined from making any further use of the improperly seized and retained materials.

**SO ORDERED**.

Dated:                                                _____

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

DANIEL RICHMAN,

                Petitioner.

        v.

UNITED STATES OF AMERICA,

                Respondent.

_____ -mc- _____

## [PROPOSED] TEMPORARY RESTRAINING ORDER

Upon consideration of Petitioner Daniel Richman's Motion for Return of Property Pursuant to Federal Rule of Criminal Procedure 41(g) (the "Motion") and supporting memorandum, for the reasons stated in Petitioner's Motion and supporting papers, it is hereby **ORDERED** that:

(1) The government is **ENJOINED** from accessing Petitioner's Files, as defined in Petitioner's supporting memorandum, including searching, relying on, or reviewing those Files in any way, pending resolution of Petitioner's Motion; and

(2) The government must file a status report within 24 hours of the issuance of this Order describing the steps taken to ensure compliance with this Order and certifying their compliance with it; and

(3) This Order shall remain in effect until further order from the Court.

    **SO ORDERED**.

Dated:                                          _____