## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

DANIEL RICHMAN,

                  Petitioner,

      v.

UNITED STATES OF AMERICA,

                  Respondent.

1:25-mc-00170-CKK

**EMERGENCY HEARING RESPECTFULLY REQUESTED**

## MEMORANDUM OF LAW IN SUPPORT OF PETITIONER DANIEL RICHMAN'S MOTION FOR TEMPORARY RESTRAINING ORDER

KKL LLP
350 Fifth Avenue, 77th Floor
New York, NY 10118
Tel.: (212) 390-9550

KELLOGG, HANSEN, TODD, FIGEL
& FREDERICK, P.L.L.C.
1615 M Street NW, Suite 400
Washington, DC 20036
Tel.: (212) 326-7900

*Attorneys for Petitioner Daniel Richman*

## TABLE OF CONTENTS

BACKGROUND ........................................................................................................ 4

I.   2017-2018: PROFESSOR RICHMAN CONSENTS TO IMAGING AND LIMITED
     SEARCH OF HIS PERSONAL COMPUTER ................................................... 4

II.  2019–2020: FBI OBTAINS SEARCH WARRANTS IN CONNECTION WITH USAO-
     DDC'S "ARCTIC HAZE" INVESTIGATION ................................................... 5

III. 2025: THE GOVERNMENT SEARCHES PROFESSOR RICHMAN'S FILES IN
     CONNECTION WITH INVESTIGATION INTO COMEY CONGRESSIONAL
     TESTIMONY AND VIOLATION OF WARRANTS IS REVEALED ............................ 7

IV.  THE GOVERNMENT REFUSES TO REFRAIN FROM USING SEIZED PROPERTY
     PENDING RESOLUTION OF RULE 41(G) MOTION ................................... 11

LEGAL STANDARD ............................................................................................. 13

ARGUMENT .......................................................................................................... 13

I.   PROFESSOR RICHMAN WILL LIKELY WIN HIS RULE 41(g) MOTION ................ 13

A.   Professor Richman Is Aggrieved by an Unlawful Search, Seizure, and Deprivation of
     Property ........................................................................................................ 16

     1.   The Government Exceeded the Scope of the Warrants ................................. 18

     2.   The Government Improperly Retained Professor Richman's Files ............................. 20

     3.   The Government Conducted a Warrantless Search over Professor Richman's
          Improperly Seized Files in Connection with a New Investigation ............................. 22

B.   The Government Has No Basis to Retain Professor Richman's Files ............................. 23

     1.   Because Any Materials Seized in Connection with the Warrants or 2025 Search Were
          Illegally Seized, They Must Be Promptly Returned .................................... 23

     2.   The Government Has No Legitimate Basis to Retain the Hard Drive (or Any Other
          Copies of Professor Richman's Personal Computer) .................................... 23

C.   The Equities Favor Granting Professor Richman's Rule 41(g) Motion ............................. 25

     1. The Government Callously Disregarded Professor Richman's Rights ........................ 26

     2. Professor Richman Nonetheless Meets the Remaining *Ramsden* Factors .................... 27

II.  PROFESSOR RICHMAN IS LIKELY TO SUFFER IRREPARABLE HARM IN THE
     ABSENCE OF PRELIMINARY RELIEF ......................................................... 30

III. THE PUBLIC INTEREST AND EQUITIES WEIGHT IN FAVOR OF GRANTING
     PROFESSOR RICHMAN'S REQUESTED RELIEF ....................................... 36

CONCLUSION ....................................................................................................... 38

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Am. Foreign Serv. Ass'n v. Trump*,
766 F. Supp. 3d 25 (D.D.C. 2025) ...................................................................36

*Asinor v. District of Columbia*,
111 F.4th 1249 (D.C. Cir. 2024) ...............................14, 17, 20, 21, 23

*Cable News Network, Inc. v. FBI*,
293 F. Supp. 3d 59 (D.D.C. 2018) ...................................................................4

*Chaplaincy of Full Gospel Churches v. England*,
454 F.3d 290 (D.C. Cir. 2006) .........................................................................30

*Climate United Fund v. Citibank*,
*N.A.*, 775 F. Supp. 3d 335 (D.D.C. 2025) ........................................................37

*Coolidge v. New Hampshire*,
403 U.S. 443 (1971) ............................................................................17, 19, 36

*Council on Am.-Islamic Rels. v. Gaubatz*,
667 F. Supp. 2d 67 (D.D.C. 2009) ...................................................................33

*Covino v. Patrissi*,
967 F.2d 73 (2d Cir. 1992) ...............................................................................29

*Dalia v. United States*,
441 U.S. 238 (1979) .....................................................................................16, 17

*Davis v. District of Columbia*,
158 F.3d 1342 (D.C. Cir. 1998) .......................................................................34

*D.A.M. v. Barr*,
474 F. Supp. 3d 45 (D.D.C. 2020) ...................................................................12

*Drs. for Am. v. Off. of Pers. Mgmt.*,
765 F. Supp. 3d 39 (D.D.C. 2025) ...................................................................30

*Gibani v. Barr*,
No. 19 Civ. 1009 (JGB), 2019 WL 8112511 (C.D. Cal. Oct. 11, 2019) ..............20, 22, 25

*Gordon v. Holder*,
721 F.3d 638 (D.C. Cir. 2013) .........................................................................34

*Harbor Healthcare Sys., L.P. v. United States*,
5 F.4th 593 (5th Cir. 2021) ..................................................................26, 27, 29

*Harris v. Bessent,*
    775 F. Supp. 3d 86 (D.D.C. 2025) ................................................................12

*Herrera v. Santa Fe Pub. Sch.,*
    792 F. Supp. 2d 1174 (D.N.M. 2011) ..........................................................29

*In re Search of Info. Associated with Facebook Account Identified by Username Aaron.Alexis*
    *That Is Stored at Premises Controlled by Facebook, Inc. ("Aaron.Alexis"),*
    21 F. Supp. 3d 1 (D.D.C. 2013) ..........................................................18, 28

*In re Search of Premises Known as: Three Hotmail Email Accounts: [redacted]@hotmail.com,*
    *[redacted]@hotmail.com, [redacted]@hotmail.com Belonging to & Seized from*
    *[redacted],* No. 16 Mag. 8036 (DJW), 2016 WL 1239916, (D. Kan. Mar. 28, 2016) ......18

*In re Search Warrant Issued June 13, 2019,*
    942 F.3d 159 (4th Cir. 2019), *as amended* (Oct. 31, 2019) ........................32, 35

*In re Singh,*
    892 F. Supp. 1 (D.D.C. 1995) ........................................................13, 14, 15, 25

*Karem v. Trump,*
    960 F.3d 656 (D.C. Cir. 2020) ........................................................34

*Leaders of a Beautiful Struggle v. Baltimore Police Dep't,*
    2 F.4th 330 (4th Cir. 2021) ........................................................30

*League of Women Voters of U.S. v. Newby,*
    838 F.3d 1 (D.C. Cir. 2016) ........................................................36

*Lopez v. United States,*
    No. 96 Civ. 1972 (AK), 2006 WL 2788999 (D.D.C. Sept. 26, 2006) ............................15

*Mills v. District of Columbia,*
    571 F.3d 1304 (D.C. Cir. 2009) ........................................................29, 30

*Mohawk Indus., Inc. v. Carpenter,*
    558 U.S. 100 (2009) ........................................................32

*N.S. v. Hughes,*
    335 F.R.D. 337 (D.D.C. 2020) ........................................................36

*Parrott v. District of Columbia,*
    No. 21 Civ. 2930 (RCL), 2023 WL 2162859 (D.D.C. Feb. 22, 2023) ............................14

*Ramsden v. United States,*
    2 F.3d 322 (9th Cir. 1993) ........................................................15, 25, 28, 29

*RFE/RL, Inc. v. Lake,*
    772 F. Supp. 3d 79 (D.D.C. 2025) ........................................................37

*Richey v. Smith,*
    515 F.2d 1239 (5th Cir. 1975) .........................................................................15

*Riley v. California,*
    573 U.S. 373 (2014)...........................................................................................27

*Robert Half Int'l Inc. v. Billingham,*
    315 F. Supp. 3d 419 (D.D.C. 2018) ................................................................33

*R. & R. adopted as modified,*
    212 F. Supp. 3d 1023 (2016) ....................................................................18, 21

*Shawnee Tribe v. Mnuchin,*
    984 F.3d 94 (D.C. Cir. 2021).............................................................................36

*Snitko v. United States,*
    90 F.4th 1250 (9th Cir. 2024) ..........................................................................15

*United States v. Comey ("Comey I"),*
    --F. Supp. 3d --, 2025 WL 3202693 (E.D. Va. Nov. 17, 2025)................................. passim

*United States v. Comey ("Comey II"),*
    -- F. Supp. 3d --, 2025 WL 3266932 (E.D. Va. Nov. 24, 2025)............................8, 23, 24

*United States v. Comprehensive Drug Testing, Inc. ("CDT"),*
    621 F.3d 1162 (9th Cir. 2010) ................................................................ passim

*United States v. Cotterman,*
    709 F.3d 952 (9th Cir. 2013) ...........................................................................27

*United States v. Debbi,*
    244 F. Supp. 2d 235 (S.D.N.Y. 2003)........................................................19, 21

*United States v. Heldt,*
    668 F.2d 1238 (D.C. Cir. 1981) .......................................................................16

*United States v. Hubbard,*
    650 F.2d 293 (D.C. Cir. 1980) ...................................................................14, 22

*United States v. Kim,*
    103 F. Supp. 3d 32 (D.D.C. 2015)...................................................................27

*United States v. Lustyik,*
    57 F. Supp. 3d 213 (S.D.N.Y. 2014)................................................................18

*United States v. Manafort,*
    314 F. Supp. 3d 258 (D.D.C. 2018)..................................................................16

*United States v. Metter,*
    860 F. Supp. 2d 205 (E.D.N.Y. 2012) .......................................................19, 20

*United States v. Nasher-Alneam*,
399 F. Supp. 3d 579 (S.D. W. Va. 2019) .......................................................18

*United States v. Peyton*,
745 F.3d 546, 552 (D.C. Cir. 2014) ..............................................................21

*United States v. Philip Morris Inc.*,
314 F.3d 612 (D.C. Cir. 2003) ......................................................................32

*United States v. Rhine*,
652 F. Supp. 3d 38 (D.D.C. 2023) ................................................................16

*United States v. Raymond*,
No. 21 Cr. 380 (CKK), 2023 WL 7005341 (D.D.C. Oct. 24, 2023) ................22

*United States v. Roper*,
No. 117 Crim. 035 (BKE), 2018 WL 1465765, (S.D. Ga. Mar. 1, 2018) .................20, 22

*United States v. Wey*,
256 F. Supp. 3d 355 (S.D.N.Y. 2017) ............................................................22

*United States v. Wright*,
49 F.4th 1221 (9th Cir. 2022) .............................................................14, 15, 23

*United States v. Zelaya-Veliz*,
94 F.4th 321 (4th Cir. 2024) ........................................................................20

*Vernonia Sch. Dist. 47J v. Acton*,
515 U.S. 646 (1995) ....................................................................................16

*Winter v. Nat. Res. Def. Council, Inc.*,
555 U.S. 7 (2008) ..................................................................................12, 36

*Wis. Gas Co. v. Fed. Energy Regul. Comm'n*,
758 F.2d 669 (D.C. Cir. 1985) ....................................................................30

## Statutes, Rules, and Regulations

18 U.S.C. § 641 ....................................................................................6, 17

18 U.S.C. § 793 ....................................................................................6, 17

18 U.S.C. § 1001 ......................................................................................7

18 U.S.C. § 1505 ......................................................................................7

## **Other Authorities**

3A Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 690 (4th ed. 2023) ...................................................................................................................................25

Fed. R. Crim. P. 41(e) ..............................................................................................13, 14

Fed. R. Crim. P. 41(g) .........................................................................................13, 15, 17

Orin S. Kerr, Executing Warrants for Digital Evidence:  The Case for Use Restrictions on Nonresponsive Data, 48 Tex. Tech. L. Rev. 1 (2015) ................................................................20

## **Constitutional Provisions**

U.S. Const. amend. IV ..................................................................................................16

## PRELIMINARY STATEMENT

This motion seeks to stop a continuing violation of Petitioner Daniel Richman's Fourth Amendment rights. Professor Richman is a law professor and attorney with a distinguished record of government service. Between 2017 and 2020, Professor Richman had various interactions with the government relating to his legal representation of former FBI Director James B. Comey, Mr. Comey's handling of potentially classified information, and related communications with the media. Professor Richman agreed to allow the government to image his personal computer for the purpose of identifying and deleting certain sensitive documents and subsequently agreed to a limited search of the image. The government later obtained four warrants that authorized additional limited searches of the image and of Professor Richman's email and iCloud accounts. The materials ultimately seized by the government's dragnet encompassed essentially the entire scope of Professor Richman's electronic life—personal messages, professional correspondence, photographs, videos, and application data. Ultimately, no charges were brought in this investigation, and the case was closed in 2021.

Less than three weeks ago, the Honorable William E. Fitzpatrick, a magistrate judge in the Eastern District of Virginia, issued an opinion in the government's now-dismissed case against Mr. Comey that disclosed troubling facts of constitutional proportions concerning the government's handling of data belonging to Professor Richman. Judge Fitzpatrick identified not only violations of the Fourth Amendment, but also found a "reasonable basis to question whether the government's conduct was willful or in reckless disregard of the law." Following the disclosures in the *Comey* case, Professor Richman filed a motion in this Court pursuant to Rule 41(g) of the Federal Rules of Criminal Procedure (the "Rule 41(g) Motion") seeking the return of the data that the government illegally seized and retained. Among other things, the Rule 41(g)

Motion included a request that the government be immediately enjoined from using or relying upon Professor Richman's data through the pendency of that Motion.

Subsequently, this Court ordered Professor Richman to file that request for temporary relief as an independent motion for a temporary restraining order ("TRO"). Upon issuance of that Order, counsel for Professor Richman contacted the Justice Department (the "DOJ") to inquire whether the government would voluntarily agree to refrain from searching, using, or relying upon Professor Richman's data pending resolution of the underlying Rule 41(g) Motion, as this would obviate the need for a TRO. As of the time of filing, the government has not agreed, despite being aware of Professor Richman's intention to pursue a TRO. Accordingly, there is a high likelihood that, absent intervention by the Court, Professor Richman will suffer irreparable harm prior to the resolution of the Rule 41(g) Motion in the form of constitutionally infirm searches of his data.

The government's treatment of Professor Richman's seized property provides good reasons to believe that immediate judicial intervention is necessary. Disclosures in the now-dismissed case against Mr. Comey in the Eastern District of Virginia have revealed that: (1) more than four years ago, the government violated the warrants that authorized its searches of Professor Richman's files by apparently failing to identify and segregate responsive materials, thus seizing the *entirety* of the searched materials; (2) despite having no need for those materials after 2021 when its investigation closed, the government nonetheless seemingly retained all of the materials that it collected from Professor Richman's personal computer, email, and iCloud account; and (3) perhaps most egregiously, in a last-ditch effort to support its prosecution of Mr. Comey, the government conducted a new warrantless search of Professor Richman's files in September 2025.

The requirements for a TRO are met. *First*, Professor Richman is likely to prevail on his Rule 41(g) Motion. Judge Fitzpatrick's opinion identified several clear violations of Professor

Richman's Fourth Amendment rights. Because the relevant equitable factors all weigh in Professor Richman's favor, he is entitled to the return of his property. *Second*, Professor Richman would face irreparable harm absent a TRO. Given the government's refusal to voluntarily refrain from re-accessing his files, and recent press reports that the government may imminently seek a new indictment against Mr. Comey, there is a significant likelihood that the government will seek to conduct further illegal searches of Professor Richman's property or attempt to use the fruits of its past misconduct absent a TRO. *Third*, the balance of equities is strongly in Professor Richman's favor and an injunction is in the public interest. Professor Richman has a strong interest in preventing the government from rummaging through his files, whereas the government has no legitimate interest in searching, using, or relying on property that it possesses unlawfully. Furthermore, put simply, there is a substantial public interest in ensuring that the government abides by the law.

For these reasons, and the reasons set forth below, the Court should enjoin the government from searching, using, or relying on Professor Richman's illegally seized and retained property pending resolution of the Rule 41(g) Motion.

# BACKGROUND[1]

## I.    2017-2018: PROFESSOR RICHMAN CONSENTS TO IMAGING AND LIMITED SEARCH OF HIS PERSONAL COMPUTER

The story begins in 2017, after a *New York Times* article disclosed the substance of a memorandum written by Mr. Comey concerning a conversation between Mr. Comey and President Trump in which the President sought to pressure Mr. Comey to drop the criminal investigation of former National Security Advisor Michael Flynn.  Shortly after this disclosure, the Senate Select Committee on Intelligence held a hearing at which Mr. Comey testified about, among other things, various conversations with President Trump that Mr. Comey had documented in contemporaneous memoranda.  *See Cable News Network, Inc. v. FBI*, 293 F. Supp. 3d 59, 65 (D.D.C. 2018), *rev'd*, 984 F.3d 114 (D.C. Cir. 2021) (describing Mr. Comey's testimony).  During his testimony, Mr. Comey stated that he had shared at least one of the memoranda with Professor Richman.[2]  *See id.* at 73.  Immediately after the hearing, the government approached Professor Richman seeking information related to Mr. Comey's testimony.  *See* Plaintiff's Unredacted Rule 41(g) Mot., ECF. No. 2-1, at 2–3 (describing Professor Richman's interactions with the government); ECF No. 2-2.  Professor Richman voluntarily agreed to assist and cooperate with the government.  *See* Unredacted Rule 41(g) Mot. at 2–3 (describing consent to government investigation); ECF No. 2-

---

[1] Sections I–III of the Background section are substantially the same as their counterparts in the Memorandum of Law in Support of Petitioner Daniel Richman's Motion for Return of Property Pursuant to Federal Rule of Criminal Procedure 41(g), ECF No. 1-1 ("Redacted Rule 41(g) Mot.") at 2–9.  On occasion, this brief cites or references the sealed Memorandum, ECF No. 2-1 ("Unredacted Rule 41(g) Mot."), and its supporting exhibits, ECF Nos. 2-2, 2-3, 2-4, and 2-5, which are sealed warrants and warrant applications.

[2] Mr. Comey shared several memoranda with counsel.  Three of the memoranda were unclassified at the time and remain unclassified today.  The fourth memorandum was unclassified at the time that Mr. Comey shared it but was later "up-classified" to the lowest level of classification, "confidential."  James Comey's Response to Government's Motion for Expedited Ruling 5–6 n.6, *United States v. Comey*, No. 25 Cr. 272 (E.D. Va. Oct. 20, 2025), ECF No. 55.

2, Attachment C. Specifically, at the government's request, Professor Richman signed a consent permitting the FBI to image his personal computer for the purpose of deleting certain documents. ECF No. 2-2, Attachment C (describing the limited purpose for which the government could image that computer). The next year, Professor Richman signed another consent authorizing the DOJ's Office of the Inspector General ("OIG") to make a copy of the image to search for and locate a small set of specific documents. ECF No. 2-2, Attachment D (describing the limited consent and documents). Professor Richman did not authorize any searches other than the limited searches specifically outlined in the consents. ECF No. 2-2, Attachment C and D (describing limited scope of consent).

## II.  2019–2020: FBI OBTAINS SEARCH WARRANTS IN CONNECTION WITH USAO-DDC'S "ARCTIC HAZE" INVESTIGATION

Separate from the FBI and OIG outreach to Professor Richman in 2017 and 2018, the U.S. Attorney's Office for the District of Columbia ("USAO-DDC") had also opened an investigation in 2017 into a potential disclosure of classified information in a separate *New York Times* article relating to decisions Mr. Comey made in connection with Hillary Clinton's use of private email servers. *See United States v. Comey ("Comey I")*, __ F. Supp. 3d. __, 2025 WL 3202693, at *3– 4 (E.D. Va. Nov. 17, 2025). The investigation was known within the FBI as "Arctic Haze." *Id.* In connection with the Arctic Haze investigation, the FBI obtained four search warrants (the "Warrants") in the District of Columbia District Court authorizing searches of accounts or devices that belonged to Professor Richman. On August 27, 2019, the FBI obtained a warrant authorizing the search of a hard drive (the "Hard Drive") that contained the forensic image of Professor Richman's personal computer from 2017 ("Hard Drive Warrant #1"). *See* ECF No. 2-2 at 2, Attachment A. On October 22, 2019, the FBI obtained a warrant authorizing the search of two Columbia University email accounts (the "Columbia Accounts") used by Professor Richman (the

"Columbia Warrant"). *See* ECF No. 2-3 at 4, Attachment A. On January 31, 2020, the FBI obtained a warrant authorizing a search of an Apple iCloud account (the "iCloud Account") that belonged to Professor Richman (the "Apple Warrant"). *See* ECF No. 2-4 at 2, Attachment A. And on June 4, 2020, the FBI obtained a warrant authorizing a second search of the Hard Drive ("Hard Drive Warrant #2"). *See* ECF No. 2-5 at 4, Attachment A.

Arctic Haze was an investigation into the potential disclosure of classified information. Consistent with that focus, all four warrants limited the material that the government was permitted to seize to "information that constitutes evidence and/or instrumentalities of violation of" 18 U.S.C. § 641 (theft and conversion of government property) and 18 U.S.C. § 793 (unlawful gathering or transmission of national defense information) during specified periods. *See* ECF No. 2-2 at 3, 47; ECF No. 2-3 at 8; ECF No. 2-4 at 9; *see also* ECF No. 2-5 at 5 (similar). Hard Drive Warrant #1 authorized the seizure of information from the period February 1, 2017 to April 30, 2017. *See* ECF No. 2-2 at 3. The other three warrants authorized the seizure of information from the period March 1, 2016 to May 30, 2017. *See* ECF No. 2-3 at 8; ECF No. 2-4 at 9; ECF No. 2-5 at 5. The Warrants represented that the government's searches would employ appropriate attorney-client privilege filter protocols. *See Comey I*, 2025 WL 3202693, at *6, n.2; ECF No. 2-2 at 5-6, Aff. ¶ 1; ECF No. 2-3 at 11, Aff. ¶ 1; ECF No. 2-4 at 13, Aff. ¶ 1; ECF No. 2-5 at 142 Aff. ¶ 2.

The Warrants sought to seize information from the Hard Drive, the Columbia Accounts, and the iCloud Account, which collectively contained a trove of personal and professional information unrelated to USAO-DDC's investigation, some of it highly sensitive and highly personal (collectively, "Professor Richman's Files" or the "Files"). It constituted, effectively, the entirety of Professor Richman's digital life—including all of his personal and professional

communications and all of his electronic documents and files. Specifically, as noted, the Hard Drive contained a forensic image of Professor Richman's personal computer, as well as backup files for Professor Richman's iPad and iPhone. *See* ECF No. 2-5 at 13, Aff. ¶ 1; *id.* Attachment A; ECF No. 2-52-23 at 12, Aff. ¶ 1, *id.* Attachment A; *Comey I*, 2025 WL 3202693, at *6. The iCloud Account contained application data, photographs, and messages. The Columbia Accounts were Professor Richman's principal email addresses for professional and personal use during the relevant period. The emails obtained from the Accounts included, among other things, correspondence concerning highly sensitive matters related to students and faculty appointments, and communication with federal judges, including in connection with student applications for law clerk positions.

Unsurprisingly, given Professor Richman's occupation, his Files also contained a significant quantum of privileged information involving multiple clients. In recognition of this fact, in connection with the Columbia Warrant, the iCloud Account Warrant, and Hard Drive Warrant #2—but *not* in connection with Hard Drive Warrant #1—the government afforded Professor Richman an opportunity to review the warrant returns for privilege. Professor Richman, through counsel, availed himself of this opportunity, withholding privileged material and producing privilege logs to the government. This process ended in 2020. The Arctic Haze investigation closed in 2021 without charges being filed. *See Comey I*, 2025 WL 3202693, at *5.

## III. 2025: THE GOVERNMENT SEARCHES PROFESSOR RICHMAN'S FILES IN CONNECTION WITH INVESTIGATION INTO COMEY CONGRESSIONAL TESTIMONY AND VIOLATION OF WARRANTS IS REVEALED

In the summer of 2025, the FBI and the U.S. Attorney's Office for the Eastern District of Virginia ("USAO-EDVA") initiated a new investigation of Mr. Comey. *See id.* at *6. On September 25, 2025, a grand jury sitting in the Eastern District of Virginia purportedly returned a two-count indictment against Mr. Comey, charging him with making false statements in violation

of 18 U.S.C. § 1001 and obstructing a congressional proceeding in violation of 18 U.S.C. § 1505.

Indictment, *United States v. Comey*, No. 25 Cr. 272 (E.D. Va. Sept. 25, 2025), ECF No. 1.[3]  These

charges related to testimony Mr. Comey gave before the Senate Judiciary Committee in 2020.  *See*

*id.*  On November 24, 2025, the Honorable Cameron McGowan Currie, sitting by designation in

the Eastern District of Virginia, granted Mr. Comey's motion to dismiss the indictment on the

ground that Lindsey Halligan, who presented the case to the grand jury, had been unlawfully

appointed Interim U.S. Attorney in violation of 28 U.S.C. § 546 and the Appointments Clause of

the U.S. Constitution.  *United States v. Comey ("Comey II")*, __ F. Supp. 3d __, 2025 WL

3266932, at *15 (E.D. Va. Nov. 24, 2025).  The indictment was dismissed without prejudice.  *See*

*id.*

However, before the *Comey* case was dismissed, new facts emerged concerning the

Warrants and the government's handling of Professor Richman's Files.  On November 17, 2025,

the Honorable William E. Fitzpatrick, a magistrate judge in the Eastern District of Virginia, issued

a Memorandum Opinion in the *Comey* case, finding, among other things, that the government had

likely seized materials beyond the scope of the Warrants, retained them for four years after the

close of the Arctic Haze investigation, and then conducted a new, warrantless search of Professor

Richman's Files in September 2025.  *See Comey I*, 2025 WL 3202693 at *4–7.  As Judge

Fitzpatrick explained, pursuant to the Warrants, "the government was permitted to search all of

the [Files] but authorized to seize *only evidence related to violations of 18 U.S.C. § 641 . . . and*

*18 U.S.C. § 793.*"  *Id.* at *5 (emphasis added).  Despite this clear limitation, Judge Fitzpatrick

---

[3] Although the government presented the court with an indictment that it described as having been returned by the grand jury, details later surfaced that the indictment may not have been actually presented to or voted on by the full grand jury.  *See* Sam Levine, *Full grand jury didn't see final Comey indictment, prosecutors admit*, The Guardian (Nov. 19, 2025), https://www.theguardian. com/us-news/2025/nov/19/comey-indictment-grand-jury.

found "nothing in the record to suggest the government made any attempt to identify what documents, communications or other materials seized from Professor Richman constituted evidence of violations of 18 U.S.C. § 641 and § 793," and instead appeared to have seized Professor Richman's Files wholesale, leaving "the government unchecked to rummage through all of the information seized from Mr. Richman . . . anytime they chose." *Id.* Judge Fitzpatrick noted that the over-seizure was particularly troubling in light of Hard Drive Warrant #1's explicit requirement that, following a search for responsive materials, "[l]aw enforcement personnel [would] then seal any information that [did] not fall within the scope of [the materials permitted to be seized] and [would] not further review the information absent an order of the Court." *See id.*[4]

According to Judge Fitzpatrick's opinion, after the conclusion of the Arctic Haze investigation, Professor Richman's Files "sat dormant with the FBI until the summer of 2025, when the Bureau chose to rummage through them again" in connection with the investigation into Mr. Comey. *Id.* Judge Fitzpatrick found that, on September 12, 2025, an FBI agent assigned to the investigation into Mr. Comey was instructed, "apparently with the concurrence of the USAO-EDVA to review a full Cellebrite extraction and Reader reports of Mr. Richman's iPhone and iPad backups" for communications between Professor Richman and his former client, Mr. Comey. *Id.* at *6 (internal quotation marks and brackets omitted). Judge Fitzpatrick noted that, although "the 2025 investigation was focused on a different person, was exploring a fundamentally different legal theory, and was predicated on an entirely different set of criminal offenses," the government

---

[4] While this requirement was only explicitly stated in Hard Drive Warrant #1, Judge Fitzpatrick correctly observed that it was also "plainly required on the face of each warrant and . . . in accordance with well-established Fourth Amendment precedent." *Comey I*, 2025 WL 3202693, at *5 n.5.

made the "[i]nexplicabl[e]" and "highly unusual" decision not to obtain a warrant for this search.[5]

*Id.* He further observed:

> If a new warrant had been sought by the government and issued by the Court, the Fourth Amendment would have required it to be narrowly tailored, authorizing access only to materials within a limited time frame and relevant to the new offenses under investigation. In addition, any new warrant would have imposed strict procedural safeguards to ensure privileged information was not reviewed by the prosecution team. As a result, the parameters of the 2025 search would inevitably have had a different and much narrower scope than the . . . Warrants. Faced with this prospect, the government chose to unilaterally search materials that were (1) seized five years earlier; (2) seized in a separate and since closed investigation; (3) that were never reviewed to determine whether the seized information was responsive to the original warrants; (4) that were likely improperly held by the government for a prolonged period of time; (5) that included potentially privileged communications; (6) did so without ever engaging the privilege holders; and (7) did so without seeking any new judicial authority.

*Id.* (citations omitted). According to Judge Fitzpatrick, "the materials seized from the . . . Warrants were the cornerstone of the government's grand jury presentation" in the *Comey* case. *Id.* at *7.

With respect to the government's over-seizure and consequent violation of the Warrants, Judge Fitzpatrick concluded that "the facts establish a reasonable basis . . . to challenge whether the . . . Warrants were executed in a manner consistent with the Fourth Amendment and the orders of the issuing court" and that "the facts establish a reasonable basis . . . to challenge whether the government exceeded the scope of the . . . Warrants in 2019 and 2020 by seizing and preserving information that was beyond the scope of the warrants, that is, information that did not constitute evidence of violations of either 18 U.S.C. § 641 or § 793." *Id.* at *10. With respect to the warrantless search conducted in September 2025, Judge Fitzpatrick found that "the facts establish a reasonable basis . . . to challenge whether the government had the lawful authority to search

---

[5] Judge Fitzpatrick noted that the government may have made the decision not to obtain a warrant in its haste to indict Mr. Comey before the statute of limitations expired. *See Comey I*, 2025 WL 3202693, at *6.

[Professor Richman's Files] anew in 2025" and "the facts establish a reasonable basis . . . to challenge whether the government's 2025 seizure of the [Files] included information beyond the scope of the original warrants." *Id.*

Judge Fitzpatrick also concluded that the government's misconduct was so egregious that "the nature and circumstances surrounding the government's potential violations of the Fourth Amendment and court orders establish a reasonable basis to question whether the government's conduct was willful or in reckless disregard of the law." *Id.*

## IV.    THE GOVERNMENT REFUSES TO REFRAIN FROM USING SEIZED PROPERTY PENDING RESOLUTION OF RULE 41(G) MOTION

On December 2, 2025, this Court ordered Professor Richman to "file his application for a temporary restraining order" seeking to enjoin the government from relying on the seized property during the pendency of the Rule 41(g) Motion "by separate motion." Min. Order (Dec. 2, 2025). Following this Order, counsel for Professor Richman emailed the DOJ seeking the government's voluntary agreement "to refrain from searching, using, or relying in any way upon Professor Richman's property pending resolution of the Rule 41(g) motion." Ex. A.[6]  Counsel noted their concern that "absent a TRO, the government may continue to use the property in a manner that violates Professor Richman's rights—particularly in light of recent news reports that the DOJ may seek a new indictment of Mr. Comey," and added that reaching agreement with the government on this issue would "address [Professor Richman's] concerns and obviate the need for a TRO." *Id.*  On December 4, 2025, the government responded, stating that it did "not have an answer" and would not be able to provide further clarity until "early next week." *Id.*  This morning, counsel responded by explaining that "under the circumstances," it could not "wait until next week," as

---

[6] The email exchange between Professor Richman's counsel and the government is attached to this TRO motion as Exhibit A.

"new violations of [Professor Richman's] rights may be imminent, if not already occurring." *Id.* Counsel advised the government that absent a representation by 3:00pm that the government would refrain from searching, using, or relying upon Professor Richman's property pending resolution of the Rule 41(g) Motion, he would seek a TRO. *Id.* The government did not respond. *Id.*

The government's refusal to agree to a temporary pause of searching, using, or relying on the seized property strongly suggests that it intends to search, use, and rely upon the seized property. This presumption is supported by media reports asserting that, in the wake of the dismissal of the indictment against Mr. Comey, the DOJ is considering foregoing an appeal and instead seeking a new indictment against him.[7] As multiple outlets have suggested that the DOJ is preparing to seek a new indictment imminently, future violations of Professor Richman's rights seem certain as, according to Judge Fitzpatrick, Professor Richman's materials were "the cornerstone of the government's [September 2025] grand jury presentation."[8]  *See Comey I*, 2025 WL 3202693, at *7. Just yesterday, the DOJ sought (but failed) to reindict New York Attorney General Letitia James, whose original indictment was also dismissed alongside Mr. Comey's as

---

[7] *See, e.g.*, Katelyn Polantz & Holmes Lybrand, *Justice Department could present a new indictment against James Comey to a grand jury this week*, CNN (Dec. 2, 2025), https://www.cnn.com/2025/12/01/politics/justice-department-present-new-indictment-james-comey (citing "multiple sources familiar with the matter"); Josh Gerstein & Kyle Cheney*, DOJ deciding whether to seek new Comey, James indictments*, Politico (Dec. 1, 2025), https://www.politico.com/news/2025/12/01/james-comey-letitia-james-cases-next-00672339 (citing "two people familiar with the cases"); Sarah N. Lynch, *US Justice Dept weighs seeking new indictments of Trump foes Comey and James, sources say*, Reuters (Dec. 1, 2025), https://www.reuters.com/business/finance/us-justice-dept-weighs-seeking-new-indictments-trump-foes-comey-james-sources-2025-12-01 (citing "two people familiar with the matter").

[8] *See* Polantz & Lybrand, *supra* n.7 (reporting possible presentment of new indictment "as soon as this week"); Lynch, *supra* n.7 (same).

defective.[9]  Though yesterday's grand jury declined to indict Ms. James, the DOJ's actions suggest a determination to continue presenting both dismissed cases (Ms. James and Mr. Comey's) to grand juries in a dogged pursuit of criminal charges.

## LEGAL STANDARD

A motion for a TRO is analyzed under the same four-factor test as applies to a motion for preliminary injunctive relief.  *See, e.g.*, *Harris v. Bessent*, 775 F. Supp. 3d 86, 90–91 (D.D.C. 2025).  To obtain either a TRO or preliminary injunction, a movant must demonstrate "(1) that he is likely to succeed on the merits; (2) that he is likely to suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in his favor; and (4) that an injunction serves the public interest."  *Harris*, 775 F. Supp. 3d at 90 (citing *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)).  Where "the movant seeks to enjoin the government, the final two TRO factors . . . merge."  *D.A.M. v. Barr*, 474 F. Supp. 3d 45, 67 (D.D.C. 2020).

## ARGUMENT

## I.    PROFESSOR RICHMAN WILL LIKELY WIN HIS RULE 41(g) MOTION

Professor Richman is likely to succeed on the merits.  The Rule 41(g) Motion, which is predicated in significant part on Judge Fitzpatrick's findings in the *Comey* case, arises out of the government's repeated violations of his Fourth Amendment rights and unlawful possession of property that it has no legitimate basis to retain.  The scope of the seized property is vast: it includes an image of Professor Richman's personal computer, backup files from Professor Richman's iPad and iPhone, the contents of Professor Richman's iCloud account, and the contents of two of his email addresses.  Though Professor Richman has not had the opportunity to personally review the

---

[9] Sam Levine, *Grand jury declines to re-indict Letitia James after judge dismissed first case*, The Guardian (Dec. 4, 2025), https://www.theguardian.com/us-news/2025/dec/04/grand-jury-declines-to-indict-letitia-james.

specific documents taken from these improperly retained materials and used as the foundation of the now-dismissed *Comey* indictment, Judge Fitzpatrick has.  Prior to issuing his decision, Judge Fitzpatrick heard oral argument regarding the search and seizure, questioned knowledgeable parties about the issue, including an FBI agent, and conducted an *in camera* review of underlying documents.  *See Comey I*, 2025 WL 3202693, at *2.  Based on his assessment, Judge Fitzpatrick expressed considerable doubt as to not only the lawfulness of the government's handling of Professor Richman's Files, but also as to "whether the government's conduct was willful or in reckless disregard of the law."  *Id.* at *10.

Federal Rule of Criminal Procedure 41(g) provides a mechanism for "[a] person aggrieved by an unlawful search and seizure of property or by the deprivation of property" to move for the property's return or destruction.  Fed. R. Crim. P. 41(g); *see also* Fed. R. Crim. P. 41(e) Advisory Committee's Note to 1989 Amendment ("In some circumstances . . . equitable considerations might justify an order requiring the government to return or destroy all copies of records that it has seized.").  "District courts have the power to entertain motions to return property seized by the government when there are no criminal proceedings pending against the movant."  *In re Singh*, 892 F. Supp. 1, 3–4 (D.D.C. 1995).  In such circumstances, where "the motion is made by a party against whom no criminal charges have been brought," the case is considered as a "petition that the district court invoke its civil equitable jurisdiction."  *Parrott v. District of Columbia*, No. 21 Civ. 2930 (RCL), 2023 WL 2162859, at *10 (D.D.C. Feb. 22, 2023) (quoting *United States v. Comprehensive Drug Testing, Inc. ("CDT")*, 621 F.3d 1162, 1172 (9th Cir. 2010)), *reconsid. denied*, 2025 WL 1836145 (July 3, 2025).

While the text of Rule 41(g) does not set forth a "standard . . . to govern the determination of whether property should be returned" under the Rule, "[t]he [F]ourth [A]mendment protects

people from unreasonable seizures as well as unreasonable searches, and reasonableness under all of the circumstances must be the test when a person seeks to obtain the return of property." Fed. R. Crim. P. 41(e) Advisory Committee's Note to 1989 Amendment (citation omitted). Property that is "*unlawfully* seized must on motion be promptly returned unless it be contraband or statutorily forfeit." *United States v. Hubbard*, 650 F.2d 293, 303 n.26 (D.C. Cir. 1980) (emphasis added) (citation omitted). And the government may not retain even *lawfully* obtained property if it lacks a legitimate reason to do so. *See Asinor v. District of Columbia*, 111 F.4th 1249, 1252, 1255–59 (D.C. Cir. 2024) (holding that the Fourth Amendment requires the government's "continued possession" of lawfully seized property to be reasonable).

The burden of proof for a Rule 41(g) motion depends on when it is brought. "When the government needs the property for evidentiary purposes, either because investigation is ongoing or trial is imminent, the movant bears the burden of proving both that the property's seizure was illegal and that he or she is entitled to lawful possession of the property." *United States v. Wright*, 49 F.4th 1221, 1225 (9th Cir. 2022) (citation modified). "[O]nce criminal proceedings conclude or the government abandons its investigation," the burden shifts to the government, which must demonstrate "that it has a legitimate reason to retain the property," either by establishing that "the property is contraband," "the property is subject to forfeiture," or there is "a cognizable claim of ownership or right of possession adverse to that of the movant." *Id.* at 1225–26 (citation modified); *see also Lopez v. United States*, No. 96 Civ. 1972 (AK), 2006 WL 2788999, at *12 (D.D.C. Sept. 26, 2006) ("[O]nce criminal proceedings have ended, the Government bears the burden of demonstrating that the property is contraband or subject to forfeiture.").

In determining whether to exercise equitable jurisdiction over "preindictment" Rule 41(g) motions, some courts consider the following four factors (known as the *Ramsden* factors):

15

(1) whether the Government displayed a callous disregard for the constitutional rights of the movant; (2) whether the movant has an individual interest in and need for the property he wants returned; (3) whether the movant would be irreparably injured by denying return of the property; and (4) whether the movant has an adequate remedy at law for the redress of his grievance.

*In re Singh*, 892 F. Supp. at 3 (quoting *Ramsden v. United States*, 2 F.3d 322, 325 (9th Cir. 1993)).

"Whether to exercise [equitable] jurisdiction in a given case is subject to the sound discretion of the district court." *Richey v. Smith*, 515 F.2d 1239, 1243 (5th Cir. 1975). Where, however, the government comes into the possession of evidence "through intentional wrongdoing—rather than through a technical or good faith mistake—[a court] should order return of the property without the need for balancing [the four *Ramsden* factors] that is applicable in the more ordinary case." *Snitko v. United States*, 90 F.4th 1250, 1259 (9th Cir. 2024) (quoting *CDT*, 621 F.3d at 1174).

Professor Richman is both "[a] person aggrieved by an unlawful search and seizure of property or by the deprivation of property," Fed. R. Crim. P. 41(g), and entitled to equitable relief. As explained below, the government unlawfully searched and seized Professor Richman's property by: (1) exceeding the scope of the Warrants; (2) retaining Professor Richman's Files for years after the government had any need for them; and (3) conducting a warrantless search of the Files in 2025. The Files remain in the government's possession, despite the patent absence of any legitimate basis to retain them. Because the government's conduct constitutes at least callous disregard for Professor Richman's rights, he is entitled to Rule 41(g) relief regardless of the other *Ramsden* factors (which, in any event, as set forth below, further support his position).

## A.    Professor Richman Is Aggrieved by an Unlawful Search, Seizure, and Deprivation of Property

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation,

and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. "The Supreme Court has interpreted the constitutional prohibition against unreasonable searches to require that law enforcement obtain a warrant except in a narrow set of special circumstances." *United States v. Rhine*, 652 F. Supp. 3d 38, 71 (D.D.C. 2023) (citing *Vernonia Sch. Dist. 47J v. Acton*, 515 U.S. 646, 653 (1995)). To satisfy the Fourth Amendment, warrants must (1) "be issued by neutral, disinterested magistrates"; (2) be supported by "probable cause to believe that the evidence sought will aid in a particular apprehension or conviction for a particular offense"; and (3) "particularly describe the things to be seized, as well as the place to be searched." *Dalia v. United States*, 441 U.S. 238, 255 (1979) (citation modified). When executing a warrant, the government must "do so 'in a reasonable manner, appropriately limited to the scope and intensity called for by the warrant.'" *United States v. Manafort*, 314 F. Supp. 3d 258, 263 (D.D.C. 2018) (quoting *United States v. Heldt*, 668 F.2d 1238, 1256 (D.C. Cir. 1981)).

The government unlawfully searched and seized the Files in at least three ways:

- *First*, it apparently exceeded the scope of the Warrants, seizing both responsive and non-responsive materials, leaving "the government unchecked to rummage through *all of* the information seized from [Professor] Richman . . . anytime they chose" for years after the Warrants issued. *Comey I*, 2025 WL 3202693, at *5 (emphasis added).

- *Second*, it retained all of Professor Richman's Files—without having even attempted to segregate the non-responsive from the responsive—for more than four years, from 2021 to 2025—a years-long seizure that was patently unreasonable. *See Asinor*, 111 F.4th at 1252, 1255–59 (finding that the continued possession of lawfully seized evidence for "many months after it lacked any legitimate interest in . . . investigating criminal behavior" to "raise serious questions about the reasonableness" of government's possession).

- *Third*, four years after the closure of the Arctic Haze investigation, it conducted a new, warrantless search over Professor Richman's improperly seized Files in connection with a new, unrelated investigation.

Indeed, as set forth below, the 2025 warrantless search (No. 3) powerfully illustrates why exceeding the scope of the warrant (No. 1) and retaining the materials for nearly half a decade despite having no need to do so (No. 2) were constitutionally unreasonable actions.

1.      The Government Exceeded the Scope of the Warrants

The government's execution of the Warrants was unlawful because the government seized more material than the Warrants authorized. A fundamental purpose behind the Fourth Amendment's warrant requirement is to ensure that any government search "deemed necessary should be as limited as possible." *Coolidge v. New Hampshire*, 403 U.S. 443, 467 (1971). "[T]he specific evil is the 'general warrant' abhorred by the colonists, and the problem is not that of intrusion per se, but of a general, exploratory rummaging in a person's belongings." *Id.* Thus, to comply with the Fourth Amendment, a warrant must "particularly describe the things to be seized, as well as the place to be searched." *Dalia*, 441 U.S. at 255 (citation modified).

These Warrants did just that. While they permitted the government to *search* Professor Richman's Files broadly, they only authorized the government to *seize* "information that constitutes evidence and/or instrumentalities of violation of" 18 U.S.C. § 641 (theft and conversion of government property) and 18 U.S.C. § 793 (unlawful gathering or transmission of national defense information). *See* ECF No. 2-2 at 3, 47; ECF No. 2-3 at 8; ECF No. 2-4 at 9; *see also* ECF No. 2-2 at 5 (similar); *see also* Fed. R. Crim. P. 41(e)(2) Advisory Committee's Note to 2009 Amendments (approving of a "two-step process" for warrants seeking electronically stored information where "officers . . . seize or copy the entire storage medium and review it later to determine what . . . information falls within the scope of the warrant"). In other words, the Warrants required that non-responsive materials—which, in light of the seized materials' breadth, almost certainly constitute the vast majority of the Files—be set aside and not reviewed or accessed by government agents. Thus, the government was obligated to (i) conduct a search, (ii) determine which materials were responsive, and (iii) seize and retain only those responsive materials. While this requirement was implicit in all of the Warrants (and is constitutionally required), *see Comey I*, 2025 WL 3202693, at *5 n.5, Hard Drive Warrant #1 stated it explicitly. As explained by Judge

Fitzpatrick, this warrant "specifically directed the government to identify what information was responsive to the warrant and instructed law enforcement personnel to then seal any information that does not fall within the scope of the warrant and . . . not to further review the information absent an order of the Court.'" *Id*. at 10 (citation modified); *see* ECF No. 2-2 at 3, 47 (explaining same).[10]  Furthermore, the Fourth Amendment required the government to complete this procedure "within a reasonable time." *United States v. Lustyik*, 57 F. Supp. 3d 213, 230 (S.D.N.Y. 2014); *see also United States v. Metter*, 860 F. Supp. 2d 205, 215 (E.D.N.Y. 2012) (granting suppression due to a fifteen-month delay in responsiveness review as required by search warrant and noting that "the Fourth Amendment requires the Government to complete its review, *i.e.*, execute the warrant, within a reasonable period of time"); *United States v. Debbi*, 244 F. Supp. 2d 235, 237–38 (S.D.N.Y. 2003) (granting suppression and "the prompt return" of seized unreviewed and/or nonresponsive data due to an eight-month delay in responsiveness review).

Despite its obligation to seize only responsive materials, Judge Fitzpatrick found "nothing in the record to suggest the government made any attempt to identify what documents, communications or other materials seized from [Professor Richman] constituted evidence of

---

[10] Judges routinely impose similar requirements to limit the government's access to non-responsive material. *See, e.g.*, *In re Search of Info. Associated with Facebook Account Identified by Username Aaron.Alexis That Is Stored at Premises Controlled by Facebook, Inc. ("Aaron.Alexis")*, 21 F. Supp. 3d 1, 10 (D.D.C. 2013) (approving of orders that "explicitly require that contents and records of electronic communications that are not relevant to an investigation must be returned or destroyed and cannot be kept by the government"); *In re Search of Premises Known as: Three Hotmail Email Accounts: [redacted]@hotmail.com, [redacted]@hotmail.com, [redacted]@hotmail.com Belonging to & Seized from [redacted]*, No. 16 Mag. 8036 (DJW), 2016 WL 1239916, at *23 (D. Kan. Mar. 28, 2016) (approving of the use of retention limits as an "easily enforceable tool" to protect Fourth Amendment rights), *R. & R. adopted as modified*, 212 F. Supp. 3d 1023 (2016); *see also United States v. Nasher-Alneam*, 399 F. Supp. 3d 579, 595 (S.D. W. Va. 2019) ("Given the heightened potential for government abuse of stored electronic data, it is imperative that courts ensure that law enforcement scrupulously contain their searches to the scope of the search warrant which permitted the search in the first place.").

violations of 18 U.S.C. § 641 and § 793," which left "the government unchecked to rummage through *all* of the information seized from [Professor] Richman . . . anytime they chose." *Comey I,* 2025 WL 3202693, at *5 (emphasis added); *see also id.* at *10 ("[T]he facts establish a reasonable basis . . . to challenge whether the . . . Warrants were executed in a manner consistent with the Fourth Amendment and the orders of the issuing court" and "whether the government exceeded the scope of the . . . Warrants in 2019 and 2020 by seizing and preserving information that was beyond the scope of the warrants, that is, information that did not constitute evidence of violations of either 18 U.S.C. § 641 or § 793").  By failing to separate responsive and non-responsive materials, the government deprived Professor Richman of the Fourth Amendment's protection against general warrants.  *See Coolidge*, 403 U.S. at 466 (describing "a general, exploratory rummaging in a person's belongings" as an evil the Fourth Amendment was designed to prevent); *see also* Orin S. Kerr, Executing Warrants for Digital Evidence:  The Case for Use Restrictions on Nonresponsive Data, 48 Tex. Tech. L. Rev. 1, 26 (2015) ("In effect, allowing use of nonresponsive data effectively treats that data as if it had been included in the warrant [which] eliminates the role of the particularity requirement.").  The government's execution of the Warrants was therefore unreasonable, rendering any seizure pursuant to the Warrants unlawful.

2.    The Government Improperly Retained Professor Richman's Files

After exceeding the scope of the Warrants, the government exacerbated its error by then retaining all of Professor Richman's seized data—responsive and not—for four years after closing the Arctic Haze investigation.  This too was unreasonable and constituted a further violation of Professor Richman's Fourth Amendment rights.  *See Asinor*, 111 F.4th at 1261 (holding that the Fourth Amendment's reasonableness standard applies to "the continuing retention of seized property"); *see also United States v. Zelaya-Veliz*, 94 F.4th 321, 338 (4th Cir. 2024) (holding that

district courts "retain[] the authority to determine that prolonged retention of nonresponsive data by the government violated the Fourth Amendment").

Despite the closure of the Arctic Haze investigation in 2021, the government to this day indefensibly retains Professor Richman's Files. Even if some of the Files were originally responsive to the Warrants, the government retained *all of the seized data* (both responsive and non-responsive) for four years, during which time the property no longer bore any relation to an active investigation and, as a result, held zero evidentiary value. *See Gibani v. Barr*, No. 19 Civ. 1009 (JGB), 2019 WL 8112511, at *2 (C.D. Cal. Oct. 11, 2019) (finding "callous disregard" for Rule 41(g) movant's rights where the government retained property seized pursuant to a search warrant that was "of no interest to the Government"). This prolonged retention of Professor Richman's Files—even those responsive to the Warrants—was facially unreasonable and amounts to independent grounds to seek return of the seized property. *See Metter*, 860 F. Supp. 2d at 215; *United States v. Roper*, No. 117 Crim. 035 (BKE), 2018 WL 1465765, at *6–7 (S.D. Ga. Mar. 1, 2018) (ordering case agent be directed to remove all nonresponsive data from his computer, because retaining the complete original production for more than two years after completing review exceeded the scope of the warrant and violated the Fourth Amendment), *R. & R. adopted*, 2018 WL 1463365 (Mar. 23, 2018); *Debbi*, 244 F. Supp. 2d at 237–38 (noting that the government's actions, including "pick[ing] over [records] for months . . . without determining which were actually evidence of the alleged crimes" demonstrated "blatant disregard" for the law). Maintaining the non-responsive materials was plainly violative of the Warrants—and the government's retention of even the responsive materials, four years following the close of the investigation, is patently unreasonable. *See Asinor*, 111 F.4th at 1252. Indeed, what the government did next—conducting a warrantless search across a vast quantity of files in connection

with a new investigation concerning different alleged offenses, when those files had been improperly seized, never segregated based on responsiveness, and retained by the government for four years—exemplifies precisely the governmental abuse against which the Fourth Amendment was designed to protect.

> 3. The Government Conducted a Warrantless Search over Professor Richman's Improperly Seized Files in Connection with a New Investigation

In 2025, the government compounded its over-seizure and unconstitutional retention of the Files by conducting a warrantless search of the Files. "A warrantless search is the quintessential intrusion and is presumptively unreasonable." *United States v. Peyton*, 745 F.3d 546, 552 (D.C. Cir. 2014). There was no plausible exception to justify the government's actions.

According to Judge Fitzpatrick, after Professor Richman's illegally seized and unsegregated Files sat dormant for four years, "the [FBI] chose to rummage through them again" in 2025 in connection with the government's investigation into Mr. Comey. *Comey I*, 2025 WL 3202693, at *5. Specifically, the FBI searched the entirety of Professor Richman's "iPhone and iPad backups" for communications between Professor Richman and Mr. Comey, despite their attorney-client relationship. *Id.* at *6. The 2025 investigation into Mr. Comey came four years after the Arctic Haze investigation ended: it "was focused on a different person, was exploring a fundamentally different legal theory, and was predicated on an entirely different set of criminal offenses." *Id.* The government nevertheless made the "[i]nexplicabl[e]" and "highly unusual" decision not to obtain a warrant for the search. *Id.*; *see also id.* at *10.

The Warrants, which issued in 2019 and 2020, did not provide a lawful basis for this search. By 2025, they were long-stale, and the investigation to which they pertained had long been closed. Moreover, even if the 2025 search had been within the scope of the Warrants, there is "no authority suggesting that simply because it has retained all originally searchable electronic materials, the

Government is permitted to return to the proverbial well months or years after the relevant Warrant has expired to make another sweep for relevant evidence, armed with newly refined search criteria and novel case theories." *United States v. Wey*, 256 F. Supp. 3d 355, 406 (S.D.N.Y. 2017). "A search warrant, like a pumpkin carriage, retains its magical properties only for a certain period of time." *United States v. Raymond*, No. 21 Cr. 380 (CKK), 2023 WL 7005341, at *9 (D.D.C. Oct. 24, 2023). "A warrant permits but one search, and when it is completed, the prevailing guidance is simple: get another warrant." *Id.* (citation modified). The government failed to do so. Thus, the 2025 search and any associated seizures violated the Fourth Amendment.

### B.    The Government Has No Basis to Retain Professor Richman's Files

#### 1.    Because Any Materials Seized in Connection with the Warrants or 2025 Search Were Illegally Seized, They Must Be Promptly Returned

Because the materials seized in connection with the Warrants and 2025 search were seized illegally, the government cannot retain them. *See Hubbard*, 650 F.2d at 303 n.26; *see also Gibani*, 2019 WL 8112511, at *2 (granting Rule 41(g) motion where, although "the Government was aware of its obligation to have a warrant and the procedure to obtain one, it failed to do so"); *Roper*, 2018 WL 1465765, at *6–7 (ordering that case agent be ordered to remove data non-responsive to search warrant from his computer).

#### 2.    The Government Has No Legitimate Basis to Retain the Hard Drive (or Any Other Copies of Professor Richman's Personal Computer)

The government also lacks a legitimate basis to retain the Hard Drive. Even with respect to property that is lawfully seized, the government's "continued possession of the property must be reasonable." *See Asinor*, 111 F.4th at 1252. Once the government's need for seized property expires, it may only retain such property if it demonstrates that "the property is contraband," "the property is subject to forfeiture," or there is "a cognizable claim of ownership or right of possession adverse to that of the movant." *Wright*, 49 F.4th at 1226 (citation modified). Initially, Professor

Richman consented to the imaging of his computer and a limited search of its contents for a particular purpose.  Perhaps conforming to the adage that "no good deed goes unpunished," after lawfully coming into possession of the Hard Drive, the government abused its access.  That improper conduct renders the government's continued possession unreasonable and thus unlawful.

The government imaged Professor Richman's computer in 2017 with Professor Richman's consent.  It subsequently conducted limited searches of the computer in 2017 and 2018, again with Professor Richman's consent, and obtained Warrants to search the Hard Drive (which contained the image of the computer) in 2019 and 2020 in connection with the Arctic Haze investigation. Since the Arctic Haze investigation ended in 2021, the government has had no evidentiary need for the Hard Drive.  To the extent that the government argues that it needs the Hard Drive to obtain evidence to prosecute Mr. Comey, the *Comey* case has now been dismissed and any charges related to the underlying conduct are time-barred.  *See Comey I*, 2025 WL 3202693, at *6 (noting that had Mr. Comey not been indicted, the statute of limitations would have expired on September 30, 2025); *Comey II*, 2025 WL 3266932, at *14 n.21 (observing that an invalid indictment, like the indictment against Mr. Comey, does not toll the statute of limitations).

But more to the point, even if the *Comey* case were to proceed,[11] the government should not be permitted to access or use evidence from the Hard Drive.[12]  The materials from the Hard Drive that the government presented to the grand jury in the *Comey* case were only identified by

---

[11] For the avoidance of doubt, nothing about this possible re-indictment implicates the Court's power to grant the relief requested here or in the Rule 41(g) Motion.  *See In re Singh*, 892 F. Supp. at 3–4 ("District courts have the power to entertain motions to return property seized by the government when there are no criminal proceedings pending against the movant.").

[12] In dismissing the *Comey* indictment, Judge McGowan Currie stated that she was "invalidat[ing] the *ultra vires* acts performed by Ms. Halligan" and "returning Mr. Comey to the status he occupied before being indicted."  *See Comey II*, 2025 WL 3266932, at *15.  Following the *Comey* court's reasoning, there seems to be no viable path for the government to seek to renew its prosecution of Mr. Comey based on alleged false statements made over five years prior.

the government because it (1) exceeded the scope of the Warrants and seized non-responsive data, (2) illegally retained materials it should have destroyed or returned, and (3) searched the illegally seized and retained data without a warrant. *See Comey I*, 2025 WL 3202693, at *6. The government should not be allowed to benefit from this conduct. *Cf. CDT*, 621 F.3d at 1174 (observing that the government "must not be allowed to benefit from its own wrongdoing by retaining the wrongfully obtained evidence or any fruits thereof").

Furthermore, by breaching the terms of the consents, the government eviscerated its legal basis to possess the Hard Drive. The government's imaging of Professor Richman's computer was conditioned on the government limiting any searches of the image to those authorized by the consents or permitted by "process"—i.e., a warrant. *See* ECF No. 2-2, Attachment C (FBI Consent); *id.* Attachment D (OIG Consent). The government breached the consents when it exceeded the scope of the Warrants and conducted a warrantless search of the contents of the Hard Drive in 2025. Thus, the 2017 consent no longer provides a lawful basis for the government to retain images of Professor Richman's computer, whether stored on the Hard Drive or elsewhere.

## C.    The Equities Favor Granting Professor Richman's Rule 41(g) Motion

Granting the Rule 41(g) Motion would be an appropriate exercise of the Court's equitable jurisdiction. The *Ramsden* factors—which courts use to determine whether to exercise jurisdiction in Rule 41(g) cases—weigh decidedly in favor of granting the Motion.[13] But under circumstances such as these, in which the government retained and searched the seized property through wrongdoing, no balancing of the equities is required under *Ramsden* or its progeny. *See CDT*, 621

---

[13] The D.C. Circuit has not adopted the *Ramsden* factors, but they have previously been applied in this District. *See In re Singh*, 892 F. Supp. at 2–3; *see also* 3A Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 690 (4th ed. 2023) (noting the equitable nature of Rule 41(g) relief and stating that courts consider whether the movant has "an adequate remedy otherwise or cannot show irreparable injury" in considering Rule 41(g) motions).

F.3d at 1174 (where "the government has obtained . . . evidence through intentional wrongdoing—rather than through a technical or good faith mistake—[courts] should order return of the property without the need for balancing that is applicable in the more ordinary case").

> 1.    The Government Callously Disregarded Professor Richman's Rights

The government's over-seizure and retention of Professor Richman's Files and the 2025 warrantless search constitute, at a minimum, "callous disregard for [the movant's] rights."[14] *Ramsden*, 2 F.3d at 325.  The over-seizure was a direct violation of the Warrants and the terms of the consents pursuant to which the government obtained the image of Professor Richman's personal computer.  *See Gibani*, 2019 WL 8112511, at *2 ("[T]he Government demonstrated 'a callous disregard' for Movant's constitutional rights when it kept Movant's property for over a year and a half after its warrant to search that property had expired.").  Like in *Ramsden*, "[n]o warrant was obtained" by the government "and no exception to the warrant requirement was applicable" to excuse the warrantless search.  2 F.3d at 325.  And, like in *Ramsden*, "although the Government had the opportunity to secure a warrant, it simply chose not to comply with its obligations under the Fourth Amendment."  *Id*.[15]  The government's seizure and retention of privileged documents is further basis to conclude that the government displayed a callous disregard for Professor Richman's rights.  *See Harbor Healthcare Sys., L.P. v. United States*, 5 F.4th 593,

---

[14] In fact, there is significant evidence that the government's actions here went far beyond "callous" disregard.  *See, e.g.*, *Comey I*, 2025 WL 3202693, at *7 (after an FBI agent "alerted the lead case agent (hereinafter referred to as Agent-3) and an attorney with the FBI's Office of General Counsel that 'evidence obtained in the Government's investigation of James Comey may constitute attorney-client privileged or attorney-client confidential information,'" Agent-3 "proceeded into the grand jury undeterred and testified in support of the pending indictment," "rather than remove himself from the investigative team until the taint issue was resolved").

[15] As Judge Fitzpatrick suggested, the government may have decided to conduct the 2025 search without a warrant due to the impending statute of limitations in the *Comey* case.  *See Comey I*, 2025 WL 3202693, at *6.

599 (5th Cir. 2021) (finding callous disregard where the government "made no attempt to respect" attorney-client privilege in its search and failed to "destroy or return" privileged documents).

For all of these reasons, Judge Fitzpatrick concluded that "the nature and circumstances surrounding the government's behavior"—including its "potential violations of the Fourth Amendment and court orders"—were so concerning as to "establish a reasonable basis to question whether the government's conduct was willful or in reckless disregard of the law." *Comey I*, 2025 WL 3202693, at *10. Because the government's conduct appears to be far more serious than a "technical or good faith mistake," the Court will not need to reach the other *Ramsden* factors.[16] *See CDT*, 621 F.3d at 1174.

### 2.    Professor Richman Nonetheless Meets the Remaining Ramsden Factors

While consideration of the other *Ramsden* factors—whether the movant can establish (1) an individual interest in and substantial need for the seized property; (2) irreparable harm absent the return of the property; and (3) that he lacks an adequate remedy at law—is unnecessary to grant the Rule 41(g) Motion, the other factors also favor exercising jurisdiction.

As an initial matter, the government's retention of the Files poses significant privacy issues. The Files include: (1) an image of Professor Richman's personal computer, which itself includes backup files for Professor Richman's iPad and iPhone; (2) the contents of two of Professor Richman's email addresses; and (3) the contents of an iCloud account. Professor Richman is an attorney and law professor who used his devices and email to conduct personal and professional communications. Digital materials like these contain "the most intimate details" of a person's life:

---

[16] To the extent that the Court determines a need for additional evidence prior to ruling on the Rule 41(g) Motion, Professor Richman requested that it hold an evidentiary hearing. Unredacted Rule 41(g) Mot. at 27. Professor Richman renews that request here: if the Court identifies a need for additional evidence prior to finding a likelihood of success on the merits, Professor Richman requests that it hold an evidentiary hearing before making any determination.

"financial records, confidential business documents, medical records and private emails." *United States v. Kim*, 103 F. Supp. 3d 32, 50 (D.D.C. 2015) (citing *United States v. Cotterman*, 709 F.3d 952, 964–65 (9th Cir. 2013)); *see Riley v. California*, 573 U.S. 373, 393–94 (2014) (discussing constitutional concerns unique to seizing electronic devices with "immense storage capacity").

The nature of the Files and the government's past conduct demonstrate both Professor Richman's interest in and need for the Files and the harm he will suffer if they are not returned. To start, the Files include privileged communications between Professor Richman and his clients—including, but not limited to, Mr. Comey. Though "[t]he whole point of privilege is privacy," *Harbor Healthcare*, 5 F.4th at 599, the government has retained these communications for years, and earlier this year, conducted a warrantless search of Professor Richman's Files, specifically targeting communications between Professor Richman and his client. *See Comey I*, 2025 WL 3202693, at *6. Professor Richman's inability to maintain confidentiality over the privileged communications in the government's possession "constitutes an irreparable injury that can be cured only by Rule 41(g) relief." *Harbor Healthcare*, 5 F.4th at 600 ("[Movant] remains injured as long as the government retains its privileged documents. That injury can only be made whole by the government returning and destroying its copies of the privileged material.").

Professor Richman also has an interest in keeping the government out of his non-privileged work communications. Professor Richman's work as a law professor requires the ability to communicate freely and candidly with students, colleagues, and judges. The government's continued retention of Professor Richman's professional correspondence—and demonstrated willingness to rummage through it without a warrant—significantly hinders this ability. *See CDT*, 621 F.3d at 1172 (a movant properly sought return of seized property where necessary to preserve the "integrity of its business," and protect the "privacy and economic well-being of its members,

which could easily be impaired if the government were to release" the seized information); *Ramsden*, 2 F.3d at 325 (finding the individual interest factor met where the seized "documents [we]re necessary for Ramsden to run his business"); *cf. Aaron.Alexis*, 21 F. Supp. 3d at 6–9 (expressing concern about the government's "remarkable dragnet over communications that surely have nothing to do with this case, including those to and from third parties, who will never know of the government's seeing their communications with John Doe about unrelated matters" (citation omitted)).

Professor Richman's Files also include sensitive personal documents, including his own and family members' medical records, and comprehensive financial records. *See Gibani*, 2019 WL 8112511, at *2 (finding irreparable injury *Ramsden* factor met where government retained electronic devices that contained data of "personal value" for over a year and half after warrants expired). These documents have no value to any government investigation.

Because the government has no legitimate basis to retain the Files, the government's continued possession of them violates the Fourth Amendment. *See supra* Section I(B). "It has long been established that the loss of constitutional freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Mills v. District of Columbia*, 571 F.3d 1304, 1312 (D.C. Cir. 2009) (finding irreparable injury based on Fourth Amendment violation) (internal quotation marks omitted); *Herrera v. Santa Fe Pub. Sch.*, 792 F. Supp. 2d 1174, 1182 (D.N.M. 2011) ("[C]ourts have regularly found that being subjected to an unconstitutional search causes irreparable harm.") (citing *Covino v. Patrissi,* 967 F.2d 73, 77 (2d Cir. 1992)). Furthermore, the government's past conduct creates a significant risk that the government will cause irreparable harm to Professor Richman in other ways if it is permitted to retain his personal Files—for example by conducting additional warrantless searches or violating the terms of any future warrants that

might issue.  So long as the government remains able to "rummage through" the Files "anytime they [choose]," *Comey I*, 2025 WL 3202693, at *5, Professor Richman (and anyone he communicated with) will be at risk.

If the Court were to deny the Rule 41(g) Motion, Professor Richman would lack an adequate remedy at law to recover his property and vindicate his rights.  Because Professor Richman is not a defendant, target, or subject in any current government investigation or proceeding, "he will not have the opportunity to challenge the seizure of the documents and request their return at a later date in a court[.]"  *Ramsden*, 2 F.3d at 326.  Even if Professor Richman were able to bring a "motion to suppress in a possible criminal proceeding," which he is not, this avenue would not redress Professor Richman's injury because "suppression motions vindicate an interest entirely different from Rule 41(g) motions."  *Harbor Healthcare*, 5 F.4th at 600.

Accordingly, for the reasons set forth above, the remaining three *Ramsden* factors also weigh heavily in favor of exercising jurisdiction.

## II.    PROFESSOR RICHMAN IS LIKELY TO SUFFER IRREPARABLE HARM IN THE ABSENCE OF PRELIMINARY RELIEF

Absent a TRO, Professor Richman will suffer irreparable harm.  As discussed in Section I(C)(ii) above, the government's continued possession of the Files is itself irreparable harm, as the government has no legitimate basis to retain them.  Moreover, the government's possession of the Files presents an intolerable ongoing risk that the government will rummage through the Files at its leisure—a risk brought into stark relief by the government's past violations of Professor Richman's Fourth Amendment rights.  Thus, a TRO that bars the government from using or relying on the Files while the Rule 41(g) Motion is pending is necessary to prevent irreparable harm.

To establish irreparable harm, the movant must demonstrate an injury that is "'both certain and great,' 'actual . . .  not theoretical,' and 'of such imminence that there is a clear and present

need for equitable relief.'" *Drs. for Am. v. Off. of Pers. Mgmt.*, 765 F. Supp. 3d 39, 53–54 (D.D.C. 2025) (quoting *Wis. Gas Co. v. Fed. Energy Regul. Comm'n*, 758 F.2d 669, 674 (D.C. Cir. 1985)). Injury is irreparable if it cannot later be remedied by "compensatory or other corrective relief." *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006) (quoting *Wis. Gas Co.*, 758 F.2d at 674). As noted above, "the loss of constitutional freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Mills*, 571 F.3d at 1312 (internal quotation marks omitted); *see also Leaders of a Beautiful Struggle v. Baltimore Police Dep't*, 2 F.4th 330, 346 (4th Cir. 2021) ("Because there is a likely [Fourth Amendment] constitutional violation, the irreparable harm factor is satisfied.").

Overwhelming evidence demonstrates that Professor Richman is experiencing ongoing harm due to the government's disregard for his constitutional rights. As discussed in Section I above, the government has repeatedly violated Professor Richman's Fourth Amendment rights by, among other things: violating the Warrants by seizing documents it was not permitted to seize, including privileged materials and materials not responsive to the Warrants; baselessly retaining Professor Richman's Files for four years after the close of the Arctic Haze investigation in 2021; and conducting a warrantless search of the Files in 2025, which included a search of documents that were non-responsive to even the long-stale Warrants. These past harms bleed into the present—even today, though there is no pending criminal matter related to the government's Arctic Haze investigation, and although the separate 2025 indictment of Mr. Comey has been dismissed (and any renewed indictment would be time-barred), the government violates Professor Richman's Fourth Amendment rights *each day* by improperly retaining his property. *See supra* Section I(B) (discussing the government's lack of legitimate basis to retain the Files). This is irreparable harm. *See Mills*, 571 F.3d at 1312.

While the government's retention of Professor Richman's Files is itself causing irreparable harm, the government's potential *use* of the Files is the focus of the temporary relief requested by Professor Richman through this TRO motion. The government has violated warrants, retained sensitive data far beyond any reasonable period, and conducted a warrantless search. There is every reason to believe these invasions of Professor Richman's rights will continue should the government be allowed continued use of the Files. If the government is allowed this continued access, there is a significant risk of further invasion of the attorney-client privilege, disclosure of confidential and personal information, and perhaps most acutely, new violations of Professor Richman's Fourth Amendment rights.

As discussed above, the Files include a variety of highly sensitive materials, including materials covered by the attorney-client privilege, which the government has historically failed to make any meaningful effort to cordon off and protect. While conducting past searches of the Files, the government showed blatant disregard for Professor Richman's attorney-client correspondence by: invading privileged and confidential materials; failing to timely seek and apply filter protocols; ignoring potential issues of taint; and even allowing an FBI agent who was potentially tainted by the substandard review to testify at the September 2025 grand jury proceedings. *See Comey I*, 2025 WL 3202693, at *4 (finding that the government's "steps to identify and isolate potentially privileged information" were "ineffective"); *id.* at *6 (finding that the FBI searched Professor Richman's materials in September 20205 with what "appeared to be *no precautions in place* to avoid the collection of privileged communications") (emphasis added); *id*. at *7 (finding that the government inexplicably "waited 31 days from" beginning reviewing Professor Richman's materials "before seeking court approval of a filter protocol"). In fact, Judge Fitzpatrick found that the government treated its "obligation to protect [Professor Richman's] privileged information

. . . *casually at best*." *Id.* at \*5 (emphasis added).  This abysmal government track record with respect to attorney-client communications supports a finding that irreparable harm is likely to occur if the government can access the Files.  *See United States v. Philip Morris Inc.*, 314 F.3d 612, 622 (D.C. Cir. 2003) (finding likelihood of irreparable harm based on "the general injury caused by the breach of the attorney-client privilege and the harm resulting from the disclosure of privileged documents to an adverse party"), *abrogated on other grounds by Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 103 (2009); *In re Search Warrant Issued June 13, 2019*, 942 F.3d 159, 175 (4th Cir. 2019), *as amended* (Oct. 31, 2019) (finding that filter team's review of privileged materials was "plainly irreparable" as it "cannot be undone" and collecting cases).

In addition to privileged information, Professor Richman's Files include a massive volume of electronic correspondence, digital photographs, and phone application data—the vast majority of which has no relevance to any government investigation.  Thus, the government remains in possession of additional categories of confidential and personal data,[17] the possession of which risks causing irreparable harm to Professor Richman (and third parties) should such information be disclosed.  "The disclosure of confidential information is, by its very nature, irreparable because such information, once disclosed, loses its confidential nature."  *Robert Half Int'l Inc. v. Billingham*, 315 F. Supp. 3d 419, 433 (D.D.C. 2018) (citation modified); *see also Council on Am.-*

---

[17] As noted above in Section I(C)(ii), the Files include, among other sensitive materials, confidential medical and financial information and communications between Professor Richman and federal judges concerning clerkship applicants.  The government's invasion of Professor Richman's confidential communications with federal judges raises additional safety concerns, given fatal attacks on the judiciary in recent years.  *See* Federal Bar Association Judicial Security Update (last accessed Dec. 5, 2025), https://www.fedbar.org/blog/federal-judicial-security-update/ ("The impartial administration of justice requires that judges be free to make decisions without fear of reprisal from disappointed litigants, lawyers, or other interested individuals."); Josh Margolin et al., *'Anti-feminist' lawyer identified as shooter who killed Judge Esther Salas' son then self*, ABC News (July 20, 2020), https://abcnews.go.com/US/federal-judges-son-shot-killed-husband-injured-attack/story?id=71871708.

*Islamic Rels. v. Gaubatz*, 667 F. Supp. 2d 67, 77 (D.D.C. 2009) (CKK) (concluding that public disclosure of confidential information, including "personal information" about a party's employees, would be irreparable harm).

The possibility that the government intends to imminently search, use, or otherwise rely on Professor Richman's Files is not conjectural. Tellingly, prior to filing this motion, the government refused to agree to refrain from searching, using, or relying on Professor Richman's Files while the Rule 41(g) Motion was pending. This is compelling evidence that the government intends to search, use, and rely on the Files absent a TRO. Multiple sources have also confirmed that the DOJ may imminently seek to re-indict Mr. Comey, and the DOJ's attempt to re-indict Ms. James makes a renewed prosecution of Mr. Comey all the more plausible.[18] To procure its previous, now-dismissed indictment, the government conducted a warrantless search of the Files, targeting privileged communications between Professor Richman and Mr. Comey, and relied extensively on evidence obtained through this unlawful search in its presentation to the grand jury. *Comey I*, 2025 WL 3202693, at *7 ("[T]he materials seized from the . . . Warrants were *the cornerstone of the government's grand jury presentation*.") (emphasis added). Thus, any renewed grand jury presentation is highly likely to involve further unconstitutional reliance on and search of the Files, which again supports a finding of irreparable harm. *See Davis v. District of Columbia*, 158 F.3d 1342, 1346 (D.C. Cir. 1998) ("[T]here is a presumed availability of federal equitable relief against threatened invasions of constitutional interests.") (citation modified); *Karem v. Trump*, 960 F.3d 656, 667 (D.C. Cir. 2020) ("[A] prospective violation of a constitutional right constitutes irreparable injury[.]") (quoting *Gordon v. Holder*, 721 F.3d 638, 653 (D.C. Cir. 2013)).

---

[18] *See* Polantz & Lybrand, *supra* n.7; Levine, *supra* n.9.

The government's treatment of the Files has also caused ongoing irreparable reputational harm to Professor Richman—harm that would be significantly aggravated by the Files' continued use. For any attorney, the ability to maintain the confidentiality of client materials is of paramount importance. But being able to maintain confidences is also critical to other aspects of Professor Richman's work: his research and writing about the Justice Department requires that he have sensitive discussions with those in and around government.[19] His counseling of students, present and past, regularly involves emails and texts about their personal lives, professional decisions, and legal strategies. His role in faculty governance involves communications about sensitive appointments matters, student issues, and governance questions. The conversations with reporters that he considers part of his educational mission require secrecy as he discusses the stories they are thinking of writing or not writing. As a result of the government's actions, Professor Richman's name is publicly affiliated with a criminal prosecution, and it is public knowledge that the government is rummaging through his electronic correspondence. *See In re Search Warrant Issued June 13, 2019*, 942 F.3d at 175 n.16 (finding irreparable harm met and noting that "adverse publicity about the search" of the law firm's privileged documents "could make potential clients less likely to seek out and retain the Firm"). Given the government's ongoing retention of his property, until those materials are returned, Professor Richman suffers ongoing irreparable harm because he cannot guarantee his ability to maintain confidentiality over the seized attorney-client communications and other sensitive professional communications, including those with federal judges about their hiring decisions—not to mention his personal and family communications and photographs.

---

[19] *See, e.g.*, Daniel Richman, Opinion, *All the President's Sock Puppets*, The N.Y. Times (Feb. 16, 2025), https://www.nytimes.com/2025/02/16/opinion/bove-sassoon-trump-adams.html.

As long as the government retains the ability to access and use the Files, Professor Richman lives under constant threat that his electronic correspondence may be leaked or further publicized. Professor Richman's inability to ensure the future privacy of his electronic correspondence impacts his reputation and career, as it chills his prospective ability to speak honestly and fairly regarding the professional candidacies of his current and former students, and reduces the chance that he will receive candid responses to similarly confidential questions he may pose. *See id.* ("Additionally, potential and current clients might be reluctant to candidly communicate" with attorneys "because they fear government review of their communications and breaches of confidentiality," which is likely to deprive attorneys "of information necessary to the proper handling of its cases"). Again, these circumstances amount to ongoing and irreparable harm.

As demonstrable invasions and violations of Professor Richman's constitutional rights have already occurred, and more abuses seem imminent, Professor Richman seeks immediate judicial intervention to prevent future harm during the pendency of his Rule 41(g) Motion.

## III. THE PUBLIC INTEREST AND EQUITIES WEIGHT IN FAVOR OF GRANTING PROFESSOR RICHMAN'S REQUESTED RELIEF

Where a movant "seeks to enjoin the government, the final two TRO factors—balancing the equities and the public interest—merge." *Am. Foreign Serv. Ass'n v. Trump*, 766 F. Supp. 3d 25, 28 (D.D.C. 2025) (citation omitted). Courts weigh "the competing claims of injury and . . . consider the effect on each party [and the public] of the granting or withholding of the requested relief." *Winter v. Nat'l Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) (citation omitted). These two factors strongly support granting Professor Richman's requested relief here.

Granting Professor Richman's requested relief is in the public interest, as "[t]here is generally no public interest in the perpetuation of unlawful agency action," but a "substantial public interest" in having governmental agencies "abide" by the law. *See League of Women Voters*

*of U.S. v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016) (citation modified); *see also Shawnee Tribe v. Mnuchin*, 984 F.3d 94, 102 (D.C. Cir. 2021) (quoting *Newby*, 838 F.3d at 12); *N.S. v. Hughes*, 335 F.R.D. 337, 355 (D.D.C. 2020) ("[T]he government has no legitimate interest in acting unlawfully.").   As discussed above, the government's retention of Professor Richman's Files violates the Fourth Amendment and constitutes ongoing harm to Professor Richman.  *See* Section I(B) *supra*.  Preventing the government from searching, using, or relying on the Files while the Court resolves the Rule 41(g) Motion is in the public interest, as it upholds the fundamental purpose of the Fourth Amendment: ensuring that any governmental search "deemed necessary should be as limited as possible."  *Coolidge*, 403 U.S. at 467.

No meaningful countervailing interest weighs in favor of allowing the government to access Professor Richman's property.[20]  To the extent that the government argues that there would be harm to the public in not allowing it to use or retain access to Professor Richman's seized materials pending determination of the Rule 41(g) Motion, this argument should be accorded little weight.  *First*, there is no public interest served in allowing or encouraging the FBI and DOJ to violate the constitution as part of *any criminal investigation.  RFE/RL, Inc. v. Lake*, 772 F. Supp. 3d 79, 85 (D.D.C. 2025) ("There is a substantial public interest 'in having governmental agencies abide by the federal laws that govern their existence and operations.") (citation omitted).  *Second*,

---

[20] As discussed previously, the government's search, use, or reliance upon Professor Richman's Files, which he alleges are the fruits of illegal searches and seizures, would likely be directed at reindicting Mr. Comey.  As the presumed target of any such investigation, Mr. Comey would face irreparable harm, including a potential loss of liberty and the large financial burden of defending a prosecution originating in egregious Fourth Amendment violations, if indicted and prosecuted using these illegal fruits.  This is a further equitable basis to retain the status quo until the Court has fully assessed the Rule 41(g) Motion.  Given Professor Richman's credible allegations and Judge Fitzpatrick's findings, temporarily barring the government from again rummaging through Professor Richman's seized property (and using it to support a prosecution) would not only prevent renewed violations of Professor Richman's rights, but would also prevent real and irreparable constitutional, reputational, and financial harm to Mr. Comey.

Professor Richman is not under investigation, and there is currently no live prosecution linked to the Files. When the party opposing injunctive relief will not suffer "significant harm from a temporary injunction preserving the status quo," the equities weigh in favor of the movant. *See Climate United Fund v. Citibank, N.A.*, 775 F. Supp. 3d 335, 351 (D.D.C. 2025). Here, the most equitable path is to preserve the status quo: grant the temporary injunctive relief requested by Professor Richman and bar the government from using the improperly seized materials during the pendency of the Rule 41(g) Motion.

## CONCLUSION

For the reasons stated herein, the Court should enjoin the government from searching, using, or relying in any way on the Files pending resolution of the Rule 41(g) Motion.

Dated:    December 5, 2025                    Respectfully submitted,
          New York, NY

                                            By:    */s/ Nicholas J. Lewin*
                                                   Nicholas J. Lewin

                                            KKL LLP
                                            Nicholas J. Lewin (admitted *pro hac vice*)
                                            Jonathan F. Bolz (admitted *pro hac vice*)
                                            Jessie-Lauren Pierce (admitted *pro hac vice*)
                                            350 Fifth Avenue, 77th Floor
                                            New York, NY 10118
                                            Tel.: (212) 390-9550
                                            Nick.Lewin@KKLllp.com
                                            Jonathan.Bolz@KKLllp.com
                                            Jessie.Pierce@KKLllp.com

                                            KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.
                                            Mark C. Hansen
                                            1615 M Street NW, Suite 400
                                            Washington, DC 20036
                                            Tel.: (202) 326-7900
                                            mhansen@kelloghansen.com

                                            *Attorneys for Petitioner Daniel Richman*