**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

DANIEL RICHMAN,

                    Petitioner,

        v.

UNITED STATES OF AMERICA,

                Respondent.

1:25-mc-00170-CKK

**MEMORANDUM OF LAW IN FURTHER SUPPORT OF**
**PETITIONER DANIEL RICHMAN'S MOTION FOR RETURN OF PROPERTY**
**PURSUANT TO FEDERAL RULE OF CRIMINAL PROCEDURE 41(g) AND MOTION**
**<u>FOR TEMPORARY RESTRAINING ORDER</u>**

KKL LLP
350 Fifth Avenue, 77th Floor
New York, NY 10118
Tel.: (212) 390-9550

KELLOGG, HANSEN, TODD, FIGEL
& FREDERICK, P.L.L.C.
1615 M Street NW, Suite 400
Washington, DC 20036
Tel.: (212) 326-7900

*Attorneys for Petitioner Daniel Richman*

## PRELIMINARY STATEMENT

The government has a vast trove of Professor Richman's personal and professional data and no lawful basis to retain it. Tellingly, the government does not seriously argue that it did not violate Professor Richman's Fourth Amendment rights. Rather, it claims that the Court must disregard its repeated Fourth Amendment violations because it needs the fruits of those violations to prosecute James Comey. In doing so, it misstates the law and seeks to deprive Professor Richman of the only available recourse to stop the government from violating his rights. The Court should reject these arguments, deny the government's motion to dissolve the temporary restraining order ("TRO"), and grant Professor Richman's Rule 41(g) Motion.[1]

The government's position—that it has an unqualified right to indefinitely retain property that it possesses unlawfully so long as it can articulate a use for it—offends basic notions of justice and has no limiting principle. The Rule 41(g) Motion is not a surrogate motion to suppress; it seeks to vindicate real and ongoing violations of Professor Richman's constitutional rights. At present, the government possesses a complete record of Professor Richman's electronic life up to the date of the seizures in 2020: every personal and professional email, every text message, every voicemail message, each financial and medical document, and all the data from every application he used. As one judge has already concluded, the government likely violated Professor Richman's rights in myriad ways. Unlike the criminal defendant and investigation-target movants in each case cited by the government, the Rule 41(g) Motion is Professor Richman's only recourse to prevent further invasions of his privacy, which, based on the government's stated intention to rely on his illegally retained materials, appears virtually certain to occur absent judicial intervention.

---

[1] Capitalized terms have the meanings set forth in Petitioner's Memorandum of Law in Support of Petitioner Daniel Richman's Motion for Return of Property Pursuant to Federal Rule of Procedure 41(g) ("Rule 41(g) Br."), ECF No. 1-1, and Memorandum of Law in Support of Petitioner Daniel Richman's Motion for Temporary Restraining Order ("TRO Br."), ECF No. 9-1.

**ARGUMENT[2]**

A straightforward application of Rule 41(g) compels the relief Professor Richman seeks: to order that the government return or delete his Files, and to keep the TRO in place while his Rule 41(g) Motion is pending. Professor Richman is "[a] person aggrieved by an unlawful search and seizure of property or by the deprivation of property." Fed. R. Crim. P. 41(g). Thus, he is entitled under the Rule to "move for the property's return." *Id.* The Court has authority to grant this relief as an exercise of its "civil equitable jurisdiction." *Parrott v. District of Columbia*, No. 21 Civ. 2930 (RCL), 2023 WL 2162859, at *10 (D.D.C. Feb. 22, 2023) (quoting *United States v. Comprehensive Drug Testing, Inc. ("CDT")*, 621 F.3d 1162, 1172 (9th Cir. 2010)), *reconsid. denied*, 2025 WL 1836145 (July 3, 2025). The government's purported "need for the property" is of course relevant to the Court's exercise of jurisdiction, but it is not dispositive. *See* Fed. R. Crim. P. 41(e) Advisory Committee's Note to 1989 Amendment (noting that the government's retention of property that it needs "in an investigation or prosecution" is "*generally* . . . reasonable" and instructing courts to apply a reasonableness test to such determinations) (emphasis added). Where, as here, the property in question is *unlawfully* seized, this Circuit's law requires that it "be promptly returned unless it be contraband or statutorily forfeit." *United States v. Hubbard*, 650 F.2d 293, 303 n.26 (D.C. Cir. 1980); *see also* United States' Response in Opposition to Petitioner's Motion for Return of Property and in Support of United States' Motion to Dissolve Temporary Restraining Order ("Gov't Opp.") at 11 n.9, ECF No. 12 (conceding that a movant can prevail on a Rule 41(g) motion where a government investigation is pending if it demonstrates that "that the property's

---

[2] Professor Richman disputes the government's presentation of the facts, particularly those with respect to its description of the investigation and indictment of Mr. Comey. Professor Richman reserves his rights to further correct the record on those points as needed at an evidentiary hearing and renews his request for such a hearing here.

seizure was illegal and that he . . . is entitled to lawful possession of the property") (quoting *United States v. Gladding*, 775 F.3d 1149, 1152 (9th Cir. 2014)).

## I.    THE GOVERNMENT VIOLATED PROFESSOR RICHMAN'S FOURTH AMENDMENT RIGHTS AND HAS NO BASIS TO RETAIN HIS PROPERTY[3]

### A.    The Government Fails to Seriously Dispute the Fourth Amendment Violations

As set forth in Professor Richman's prior briefing, the government appears to have violated Professor Richman's Fourth Amendment rights in at least three ways:

- *First*, it violated the terms of the four search warrants by failing to identify and segregate responsive data, resulting in a massive over-seizure of professional and personal data (*see* Rule 41(g) Br. at 13–16; TRO Br. at 18–20);

- *Second*, it kept that data for four years after it had any need for it (*see* Rule 41(g) Br. at 16–17; TRO Br. at 20–22); and

- *Third*, earlier this year, it conducted a warrantless search over that data in connection with its investigation into Mr. Comey, Professor Richman's former client, and specifically targeted and identified privileged communications between Professor Richman and Mr. Comey in connection with that review (*see* Rule 41(g) Br. at 17–18; TRO Br. at 22–23)

These violations were so flagrant that Judge Fitzpatrick found "a reasonable basis to question whether the government's conduct was willful or in reckless disregard of law." *See United States v. Comey ("Comey I")*, -- F. Supp. 3d --, 2025 WL 3202693, at *10 (E.D. Va. Nov. 17, 2025).

---

[3] Professor Richman argues that the burden of proof in this Rule 41(g) case lies with the government, not him as the movant. *See United States v. Wright*, 49 F.4th 1221, 1225 (9th Cir. 2022). The original investigation for which the property was seized ended in 2021 (a fact the government does not contest, as they would need to in order to shift the burden back to Professor Richman). *See* Rule 41(g) Br. at 11 (describing Rule 41(g) burden shifting), 16–17 (describing end of investigation). But, even if the court were to find that Professor Richman bears the burden as the movant here, because the government purportedly needs the property for evidentiary purposes, Professor Richman meets that burden of demonstrating that the property's seizure was illegal and that he is entitled to its return. *See Wright*, 49 F.4th at 1225. If the government had a legal basis to retain and research the files, this would have been reflected in Judge Fitzpatrick's opinion. Instead, Judge Fitzpatrick determined the opposite—that the government's behavior with respect to the files likely violated the Fourth Amendment. TRO Br. at 19–21. As any materials seized in connection with the warrants, or in connection with the 2025 warrantless search, were illegally seized. So, they must be promptly returned under this Circuit's law.

The government does not seriously contend otherwise.  On page 16 of its brief, it states in a footnote that "the government denies that there has been any violation of the Fourth Amendment."  Gov't Opp. at 16 n.11.  But its defense of its conduct is limited to the assertion that "property seized under a valid search warrant" may be used "in the prosecution for a crime other than that which may have been described in the affidavit."  *Id.* (quoting *Gouled v. United States*, 255 U.S. 298, 311–12 (1921), *abrogated on other grounds by Warden v. Hayden*, 387 U.S. 294, 302 (1967)); *see also* Gov't Opp. at 15 n.10 ("The Government . . . obtained the pertinent property via search warrants.").  That may be true.  But that is assuredly not what happened here.   And it is assuredly not what Judge Fitzpatrick found occurred.  His findings—conclusions he came to after conducting a factual inquiry into the government's treatment of the seized and improperly retained property—indicated that: (1) the government violated the terms of the relevant warrants by seizing responsive and nonresponsive data and failing to properly follow the "two step" procedure to conduct a responsiveness review; (2) unlawfully retained a trove of materials that it massively over-seized for years; and (3) conducted a warrantless search over those materials in 2025.  *See Comey I*, 2025 WL 3202693, at *5–10.   Apart from its blanket denial that the government did not violate the Fourth Amendment, the government does not address those allegations at all.[4]

### B.     The Government Has No Legitimate Basis to Retain the Files

Because the fruits of these Fourth Amendment violations were illegally obtained, they must be returned.  *See Hubbard*, 650 F.2d at 303 n.26.  The government also has no basis to retain the image of his computer that it obtained in 2017 with Professor Richman's consent.   As the government acknowledges, the continued retention of seized property must be reasonable.  *See*

---

[4] If the Court finds the government's blanket denial sufficient to create an issue of fact, the proper recourse is an evidentiary hearing.  *See* Rule 41(g) Br. at 27; TRO Br. at 27 n.16.

Gov't Opp. at 10 n.8 (quoting *Asinor v. Dist. of Columbia*, 111 F.4th 1249, 1261 (D.C. Cir. 2024)). The government's retention of the image is patently unreasonable. As discussed in Professor Richman's previous briefing (and not disputed by the government), the government violated the terms of the consents pursuant to which Professor Richman agreed to the seizure, thus destroying its legal basis to retain the property. *See* Rule 41(g) Br. at 20; TRO Br. at 25. Nor does the government's ongoing investigation into Mr. Comey justify retention of the image. Notwithstanding the government's claim that 18 U.S.C. § 3288 would permit a new indictment of Mr. Comey, *see* Gov't Opp. at 15, there is considerable doubt as to whether Mr. Comey can be prosecuted given the expiration of the statute of limitations. *See United States v. Comey ("Comey II")*, -- F. Supp. 3d --, 2025 WL 3266932, at *14 n.21 (E.D. Va. Nov. 24, 2025) (observing that an invalid indictment cannot toll the statute of limitations). But even assuming a new prosecution would not be time-barred, the government should not be able to keep property that it acquired, retained, and searched unlawfully so it can again rummage through materials it obtained through repeated violations of Professor Richman's constitutional rights.[5] *See* Rule 41(g) Br. at 19–20; TRO Br. at 24–25. To hold otherwise would reward the government for its illegal conduct. *Cf. CDT*, 621 F.3d at 1174 (observing that the government "must not be allowed to benefit from its own wrongdoing by retaining the wrongfully obtained evidence or any fruits thereof").

## II.    THE COURT HAS THE AUTHORITY TO ORDER THE RETURN OR DELETION OF PROFESSOR RICHMAN'S PROPERTY AND SHOULD DO SO

Perhaps the most glaring weakness in the government's response is its assertion that Professor Richman's Rule 41(g) Motion is improper, and the relief that he requests is categorically unavailable, because the government expresses a desire to use the seized property in question to

---

[5] It should go without saying that the government does not have a right to retain illegally seized property simply because it may or may not have the ability to legally seek evidence through another channel.

investigate and prosecute Mr. Comey.  Gov't Opp. at 7–9.  This assertion is legally wrong, and the government's interpretation of Rule 41(g) would have dire implications if adopted.

### A.    The Rule 41(g) Motion Is Not "A Collateral Motion to Suppress"

Professor Richman's Rule 41(g) Motion is not a surrogate motion to suppress.  The government has not brought any charges against Professor Richman, as it long ago concluded that no charges could be sustained, and the statute of limitations has run with respect to the offenses it investigated in the Arctic Haze investigation.  Indeed, the government repeatedly characterizes Professor Richman as, at most, a witness.  *See* Gov't Opp. at 15 n.10; *id.* at 17 n.12.  A suppression motion is not now, and will never be, available to Professor Richman to challenge the government's violation of *his* Fourth Amendment rights.  Given this, Professor Richman seeks precisely the relief envisioned by Rule 41(g): return of his property.

In arguing that this relief is unavailable, the government relies on *DiBella v. United States*, 369 U.S. 121 (1962), and its progeny, which outline a standard for interlocutory appeals of Rule 41(g) motions.  Under *DiBella*, appellate courts can only exercise jurisdiction over Rule 41(g) appeals where the motion is: (1) "solely for [the] return of property" and (2) "in no way tied to a criminal prosecution in esse against the movant." 369 U.S. at 131–32; *see also In re Sealed Case*, 716 F.3d 603, 606 (D.C. Cir. 2013) (discussing the court's ability to "permit appeals" from the district court's ruling on a Rule 41(g) motion, and noting that in that circumstance, the appellant "must show that the decision is independent of any ongoing criminal prosecution, such that its appeal will not lead to a piecemeal review" of the criminal case below).  But in every single case cited by the government on this point, the movant was the target of an active investigation or the defendant in a charged criminal case.  *See In re Sealed Case*, 716 F.3d at 604, 607  (observing that "the [*DiBella*] Court . . . found that each motion was tied to a criminal prosecution *in esse* because both movants had been arrested and indicted at the time of appeal" and that the movant in the case

before it was "the subject of an ongoing grand jury investigation")[6]; *Martino v. United States*, 2024 WL 3963681, at *1 (3d Cir. Aug. 28, 2024) (movant was the "subject of an ongoing grand jury investigation" and brought a Rule 41(g) Motion tied to "*his* criminal prosecution") (emphasis added); *United States v. Nocito*, 64 F.4th 76, 79 (3d Cir. 2023) (movant entities were owned by person charged with crime); *In re Grand Jury*, 635 F.3d 101, 105 (3d Cir. 2011) (finding *DiBella*'s second requirement met because "the property was seized in connection with an *ongoing grand jury investigation of which the appellant is a target*") (emphasis added); *In re Warrant Dated Dec. 14, 1990 & Recs. Seized From 3273 Hubbard Detroit, Mich. on Dec. 17, 1990*, 961 F.2d 1241, 1242 (6th Cir. 1992) (involving "records . . . sought in connection with a criminal investigation of the appellants for tax evasion, filing of fraudulent tax returns, and conspiracy").

Professor Richman is not a subject, target, or defendant.  Though the government elides this fact, it bears repeating: because Professor Richman is not a prospective criminal defendant, he has no suppression remedy to address an ongoing violation of his constitutional rights.  His property was seized five years ago, pursuant to warrants tied to a separate and since concluded investigation, and there is no indictment and no pending criminal case.  The government acknowledges that, at most, Professor Richman may be a witness in a hypothetical prospective criminal trial.  *See* Gov't Opp. at 15 n.10, 17 n.12.  Here, for Professor Richman, a Rule 41(g) motion is the only procedural vehicle to prevent an ongoing violation of his rights.  In fact, counsel

---

[6] *In re Sealed Case* is highly distinguishable—and has been so distinguished by the Fifth Circuit, in *Harbor Healthcare Sys., L.P. v. United States*, 5 F.4th 593 (5th Cir. 2021), which granted a Rule 41(g) Motion in circumstances much more similar to those at issue in Professor Richman's case and stated as follows: "The government relies on *In re Sealed Case* . . . to argue that Harbor's Rule 41(g) motion is really about suppression, not return of property.  In *Sealed Case*, however, 'the movant ha[d] already recovered the property from the government,' so the Rule 41(g) motion could not be "'solely' for its return.'  Indeed, the court determined that 'the attorney–client privilege [dispute was] moot.'  Here, by contrast, the government has not yet returned Harbor's property and is instead refusing to do so."  5 F.4th at 600 n.4 (citations omitted).

was unable to locate *a single case* where a witness moved pursuant to Rule 41(g) for return of property and the court concluded that the movant's Rule 41(g) motion was an improper attempt to suppress evidence.  Furthermore, all of the cases relied on by the government are distinguishable in that none articulates a need for the property based on clear Fourth Amendment violations and infringements on the attorney-client privilege.  *See In re Sealed Search Warrant & Application for a Warrant by Tel. or Other Reliable Elec. Means*, 11 F.4th 1235, 1245 (11th Cir. 2021) (finding that the claims of intervenors—who were owners, managers, and controllers of a family business that was searched and where the government seized privileged documents—were "sufficiently independent from any forthcoming criminal judgment to pass the *DiBella* test"); *Harbor Healthcare*, 5 F.4th at 600.

The difference between the purpose of a Rule 41(g) motion and a suppression remedy underscores why Professor Richman's Rule 41(g) is procedurally proper.[7]  Suppression is solely a forward-looking remedy to deter future violations of the Fourth Amendment.  It is filled with exceptions that limit it to that deterrent purpose.  Rule 41(g), in contrast, serves to protect a particular person whose property has been unconstitutionally searched or seized against the

---

[7] The government criticizes the timing of Professor Richman's motion, suggesting that it demonstrates an improper nexus to the *Comey* case.  *See* Gov't Opp. at 15.  However, Professor Richman only became aware of the facts that underlying his motion through recent disclosures in the *Comey* case.  Prior to those disclosures, any person, especially a former prosecutor and criminal law professor would assume the following: that (1) at a minimum, all search warrant returns would have been segregated and all non-responsive materials would be placed under seal and categorically inaccessible to anyone in the government; after the Arctic Haze investigation was closed without any charges, all of the materials, including responsive materials, would have been destroyed and not kept as a repository for some unknown future use; and (3) even if the government had retained responsive and non-privileged materials in the case file of a case that had been closed for more than four years, any attempt to re-search that material would have to be presented to a federal judge to rule on probable cause, bless an appropriate privilege filter review, and limit the government's search to evidence relevant to the offenses for which probable cause was shown.  Up until recently, Professor Richman had confidence that the Department of Justice's treatment of his files would have complied with the basic tenets of the United States Constitution.

ongoing injury to his constitutional rights. This action is focused on Professor Richman's constitutional rights. And the government's footnoted reference to *Bivens*, Opp Br. at 15 n.10, rings particularly hollow. The government can hardly justify its ongoing violation of Professor Richman's rights by suggesting he should sue for damages. The Constitution does not permit the government monetize Professor Richman's constitutional rights by remediating violations of those rights with the prospect of future money. Irreparable harm is met in part here because compensatory damages do not make a party whole for the ongoing violation of prospective constitutional rights.

**B.      Return or Destruction of the Files Is an Available Remedy**

The government's reliance on *United States v. Calandra*, 414 U.S. 338 (1974), and an Advisory Committee's Note to Rule 41, to suggest that Professor Richman's requested relief is improper are also deeply misguided. *See* Gov't Opp. at 10. In *Calandra*, the Supreme Court declined to expand the exclusionary rule to grand jury proceedings, in part because the putative defendant would have an opportunity to challenge the use of the illegally seized evidence through a suppression motion if a case were ultimately brought against him. *Id.* In so doing, *Calandra* also found that Rule 41(e), the precursor to Rule 41(g), was not an automatic end-run around its holding that could be used to bar the use of the fruits of an illegal search in a grand jury. *See id.* at 351–52. Consistent with *Calandra*, the 1989 amendment to Rule 41 removed language that allowed Rule 41(g)'s precursor to operate like an exclusionary rule, instead replacing it with a "reasonableness" test. Fed. R. Crim. Pro. 41 Advisory Committee's Note to 1989 Amendment ("the exclusionary provision is deleted" and opting instead "for a reasonableness approach" in deciding motions for the return of property). What the government fails to note is that the revised rule contemplated precisely the remedy that Professor Richman is seeking through his Rule 41(g) Motion. *See id.* ("[I]n some circumstances . . . equitable considerations might justify an order

requiring the government to return or destroy all copies of records that it has seized."). Such considerations powerfully exist here. Professor Richman does not suggest that Rule 41(g) should be applied to automatically bar the use of his seized property by the government. Instead, he describes the facially unreasonable nature of the government's years-long retention and abuse of that property to support the conclusion that the remedy Professor Richman seeks (return or deletion of the retained property) is a proper use of Rule 41(g) and the court's equitable powers.[8] *See generally* Rule 41(g) Br.; *Asinor* 111 F.4th at 1261; Gov't Opp. at n.8.

## C.    The *Ramsden* Factors Weigh Heavily in Professor Richman's Favor

The government mentions the *Ramsden* factors only in passing, Gov't Opp. n.10. That's telling. For the reasons set forth previously, those factors weigh strongly in favor of exercising jurisdiction and granting the Rule 41(g) motion. The severity of government's constitutional violations amounts to, at minimum, callous disregard. *See* Rule 41(g) Br. at 21–23; TRO Br. at 26–27; *see supra* Section I. Where, as here, the callous disregard factor is met, that is sufficient in and of itself to exert equitable jurisdiction, and it is not necessary to balance the other *Ramsden* factors that otherwise apply to a Court's decision to exert equitable jurisdiction. *See* Rule 41(g) Br. at 20–21; TRO Br. at 25–26.

---

[8] The government also cites *United States v. Bein* for the proposition that "Rule 41(g) provides for 'once [sic] specific remedy—the return of property,'" presumably suggesting that the remedy of deletion of electronic copies is somehow not contemplated. *United States v. Bein*, 214 F.3d 408, 415 (3d Cir. 2000); Gov't Opp. at 8, 13 (suggesting Richman does not "genuinely want any property *back*"). The *Bein* decision, however, was issued prior to the revision of Rule 41(g) to more specifically cover electronic materials. That revision specifically considered "the ability of an aggrieved party to pursue the return of property associated with electronic media," and noted the Rule's "appli[cation] to electronic storage media." Search Warrants for Electronic Materials Final Report, Pennsylvania Court System (July 31, 2017), https://www.pacourts.us/assets/opinion/Supreme/out/492crim-rpt.pdf/; *see also* Fed. R. Crim. Pro. 41 Advisory Committee's Note to 1989 Amendment (discussing potential remedy of deletion); *see generally* Note, *Digital Duplications and the Fourth Amendment*, 129 Harv. L. Rev. 1046 (2016) (government seizures of electronic data violate the Fourth Amendment).

Though the court need not reach them, the remaining *Ramsden* factors (individual interest, irreparable harm, and no adequate remedy at law) also weigh in Professor Richman's favor: he has an individual interest in and need for the property; he would be irreparably injured if it were not returned; and he has no adequate remedy at law. *See* Rule 41(g) Br. at 23–26; TRO Br. at 27–30.

Without citing authority, the government suggests that Professor Richman does not demonstrate an individual "want or need for [his] property" because he requests that copies of that data be "*destroyed*." Gov't Opp. at 15 n.10. But Professor Richman has articulated at length his individual privacy, attorney-client privilege, and constitutional interests in the property, and the many irreparable harms caused by the government's retention of and rummaging through this data, which again includes:

- Copies of his privileged communications;

- Non-privileged but confidential professional communications, including with and about judges, students, colleagues, and journalists;

- Sensitive personal communications, including financial documents, medical records, personal photographs; and

- Full application data.

Rule 41(g) Br. at 23–25; TRO Br. at 27, 30–36. The articulated irreparable harm is not, as the government mistakenly (and wantonly) suggests, "being a potential witness in federal criminal prosecution." *Compare* Gov't Opp at n.10, *with* Rule 41(g) Br. at 23–26 (describing how the nature of the seized documents and communications, as well as the deprivation of Fourth Amendment rights, even for a short time, support a finding of irreparable harm); TRO Br. at 31–33 (same).

As explained in his prior briefing, Professor Richman seeks the return and destruction of government-retained copies of his electronic data *not* because he is attempting to enjoin a government investigation, *compare* Gov't Opp. at 13–14, but instead because deletion is the only

11

true remedy for the continuing constitutional violations at issue, *with* TRO Mot. 27-30.  It is well-accepted that electronic data is different from other types of "personal items such as a cigarette pack, a wallet, or a purse."  *Matter of the Search of Twenty-Six (26) Digital Devices & Mobile Device Extractions That Are Currently in the Possession of L. Enf't In Washington D.C.*, No. 21-SW-233 (GMH), 2022 WL 998896, at *7 (D.D.C. Mar. 14, 2022) ("[T]he rationales guiding the search-incident-to-arrest cases . . . have little relevance to digital data stored on a cell phone," which implicate "weighty privacy-related concerns" given their "immense storage capacity").  It simply cannot be the case that the government can simply retain copies of the entirety of Professor Richman's electronic files and data up to its seizure in 2020 in perpetuity and continue to conduct unconstitutional, warrantless searches of that data years after the fact.

The *Ramsden* factors also demonstrate why granting Professor Richman's Rule 41(g) motion and the return of the illegally seized evidence does not operate as an injunction barring the government from investigating or prosecuting a crime.  The judicial reasoning articulated in the *Manafort* case is in direct alignment with the *Ramsden* factors and their application here.  In *Manafort*, the court held that "the subject of a criminal investigation may not bring a civil action to attack an impending federal prosecution."  *Manafort v. U. S. Dep't of Just.*, 311 F. Supp. 3d 22, 30 (D.D.C. 2018) (citing *Younger v. Harris*, 401 U.S. 37, 43-44 (1971)).  This policy was based on "equity jurisprudence," as courts should not "act to restrain a criminal prosecution, when the moving party has an adequate remedy at law and will not suffer irreparable injury if denied equitable relief."  *Id*. at 29.  Professor Richman is not the subject of a criminal investigation, and

he has no remedy at law.[9]  *See* Rule 41(g) Br. at 23; TRO Br. at 30.  And he has clearly articulated irreparable harm that will occur if denied equitable relief.  TRO Br. at 30.

Ordering the return of (egregiously) illegally seized, retained, and searched evidence here would not operate as an injunction on "a federal prosecutor's investigation or presentment of an indictment."  *Cf.* Gov't Br. at 12-13; *Deaver v. Seymour*, 822 F.2d 66, 69 (D.C. Cir. 1987); *Juluke v. Hodel*, 811 F.2d 1553, 1556-57 (D.C. Cir. 1987) (in a case where "the Government [was] seeking to extend the holding of *Younger v. Harris* . . . that a federal court will not enjoin an ongoing criminal proceeding in state court," finding "no support for such an extension" and holding that "when the civil action does not seek to enjoin an ongoing prosecution and where the movants are not being prosecuted, an injunction may issue").  The government is entirely free to investigate potential crimes and make a grand jury presentation.  To the extent that the government still has the right to seek evidence, there is no showing that it cannot do so via proper means.  But Professor Richman should not be required to suffer ongoing constitutional violations because the government chose to take an illegal route to seizing and searching evidence and refuses to amend its errors.  And the government's unconstitutional actions should not be rewarded.

## III.    THE TRO SHOULD REMAIN IN PLACE PENDING RESOLUTION OF PROFESSOR RICHMAN'S RULE 41(g) MOTION

Largely for the reasons set forth in Sections I and II(C) above, the TRO should remain in place until the Court resolves the Rule 41(g) Motion.  Professor Richman is likely to succeed on the merits given the government's Fourth Amendment violations and the application of the *Ramsden* factors.  *See* TRO Br. at 13–30; Sections I, II(C), *supra*.  Furthermore, Professor Richman would likely suffer irreparable harm if the TRO were lifted.  *See* TRO Br. at 30–36; Section II(C),

---

[9] As noted elsewhere, the suggestion that a *Bivens* action provides adequate remedy at law for ongoing prospective constitutional violations, like those occurring here, is baseless.

*supra*.  In addition, the final two TRO factors—balancing the equities and the public interest—weigh strongly in favor of the TRO.  While the government argues, without citing authority, that the TRO goes against the public interest because "granting Richman's request would be an impermissible intrusion by a federal court that might delay or hinder federal criminal prosecution," Gov't Opp. at 17 n.12, "the government has no legitimate interest in acting unlawfully," *N.S. v. Hughes*, 335 F.R.D. 337, 355 (D.D.C. 2020).  The government should not be able to keep illegally obtained and retained evidence, regardless of its claimed need.  *See* TRO Br. 36–38.

## CONCLUSION

For the reasons stated herein and in Professor Richman's prior briefing, the Court should: (1) order the government to immediately return or delete Professor Richman's Files and all copies thereof; (2) enjoin the government from making any further use of the improperly seized or retained materials; and (3) deny the government's motion to dissolve the TRO.

Dated:    December 9, 2025
          New York, NY

Respectfully submitted,

By: _____
    Nicholas J. Lewin

KKL LLP
Nicholas J. Lewin (admitted *pro hac vice*)
Jonathan F. Bolz (admitted *pro hac vice*)
Jessie-Lauren Pierce (admitted *pro hac vice*)
350 Fifth Avenue, 77th Floor
New York, NY 10118
Tel.: (212) 390-9550
Nick.Lewin@KKLllp.com
Jonathan.Bolz@KKLllp.com
Jessie.Pierce@KKLllp.com

KELLOGG, HANSEN, TODD, FIGEL &
FREDERICK, P.L.L.C.
Mark C. Hansen
1615 M Street NW, Suite 400
Washington, DC 20036
Tel.: (202) 326-7900
mhansen@kellogghansen.com

*Attorneys for Petitioner Daniel Richman*