**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| |
|---|
| DANIEL RICHMAN, |
|        Petitioner, |
|    v. |
| UNITED STATES OF AMERICA, |
|        Respondent. |

Civil Misc. Action No. 25-0170 (CKK)

**REDACTED MEMORANDUM OPINION**
(December 12, 2025)

When the Government violates the Fourth Amendment's prohibition on unreasonable searches and seizures by sweeping up a broad swath of a person's electronic files, retaining those files long after the relevant investigation has ended, and later sifting through those files without a warrant to obtain evidence against someone else, what remedy is available to the victim of the Government's unlawful intrusion?  Federal Rule of Criminal Procedure 41(g) provides one such remedy: a court may order the Government to return the files to their rightful owner.  This case calls for that remedy.

Petitioner Daniel Richman, an attorney and law professor, challenges the Government's retention and use of certain files that the Government copied from his personal computer and online accounts between 2017 and 2020 in connection with investigations of potentially improper disclosures by James B. Comey, a former Director of the Federal Bureau of Investigation ("FBI").  Petitioner Richman argues that the Government's ongoing retention and use of these files violates his Fourth Amendment right to be free from unreasonable searches and seizures.  He therefore seeks an order directing the Government to return the files to him.  Petitioner Richman also applied for a temporary restraining order to limit the Government's

ability to use the files at issue while this matter is pending. This Court partially granted Petitioner Richman's application for a temporary restraining order to preserve the status quo as it awaited a formal response from the Government.

The Government has now appeared in this case, and it opposes Petitioner Richman's request for return of property and moves to dissolve the Court's temporary restraining order. The Government argues that Petitioner Richman's motion amounts to nothing more than an improper collateral attack on the investigation and prosecution of Mr. Comey and that return of property to Petitioner Richman is not an available remedy.

Upon consideration of the parties' submissions,[1] the relevant legal authority, and the entire present record, this Court agrees with Petitioner Richman that the Government's retention and use of his files has violated his Fourth Amendment rights. Specifically, the Government's retention of an "image" of Petitioner Richman's personal computer—that is, a complete copy of all the files stored on the computer, including backups of his phone and tablet—and its retention of related materials from his online accounts for years after the conclusion of the relevant investigation is an ongoing unreasonable seizure. This seizure is unreasonable because the

---

[1] The Court's consideration has focused on the following documents, including the attachments and exhibits thereto:

- Petitioner Richman's Motion for Return of Property Pursuant to Federal Rule of Criminal Procedure 41(g) ("Pet'r's Rule 41(g) Mot."), Dkt. No. 1;
- Petitioner Richman's Sealed Memorandum of Law in Support of his Motion for Return of Property Pursuant to Federal Rule of Criminal Procedure 41(g) ("Pet'r's 41(g) Mem."), Dkt. No. 2, a redacted version of which is available on the public docket, *see* Dkt. No. 1-1;
- Petitioner Richman's Memorandum of Law in Support of his Motion for Temporary Restraining Order ("Pet.'r's T.R.O. Mem."), Dkt. No. 9-1;
- The Government's Response in Opposition to Petitioner Richman's Motion for Return of Property and Motion to Dissolve Temporary Restraining Order ("Gov't's Opp'n"), Dkt. No. 12; and
- Petitioner Richman's Combined Reply in Support of his Motion for Return of Property and Opposition to the Government's Motion to Dissolve Temporary Restraining Order ("Pet'r's Reply"), Dkt. No. 15.

In an exercise of its discretion, the Court concludes that holding an oral hearing is not necessary to the resolution of the issues presented in the pending Motions. *See* LCvR 7(f). The Court has received sufficient evidence in the parties' written submissions to resolve the factual issues presented in Petitioner Richman's [1] Motion for Return of Property on the written record. *See* Fed. R. Crim. P. 41(g) ("The court must receive evidence on any factual issue necessary to decide the motion.").

Government's warrantless search of the files earlier this year reveals that the Government has not implemented effective safeguards to protect copies of the files from unlawful access while they remain in the Government's custody and control.

The Court also agrees with Petitioner Richman that the Government's conduct reflects a "callous disregard" for his constitutional rights, and each of the other prerequisites to this Court's exercise of equitable jurisdiction to order the return of property are satisfied. *See Ramsden v. United States*, 2 F.3d 322, 325 (9th Cir. 1993); Fed. R. Crim. P. 41(g). Because Petitioner Richman is entitled to return of his property as a remedy for the violation of his constitutional rights, the Court is unpersuaded by the Government's contention that his motion must be denied based on its potential collateral effects on the investigation and prosecution of Mr. Comey.

Accordingly, to remedy the Government's violations of Petitioner Richman's Fourth Amendment right against unreasonable searches and seizures, the Court shall **GRANT** Petitioner Richman's [1] Motion for Return of Property and **ORDER** the Government to return to Petitioner Richman the image of his computer that was made in 2017; any files obtained from his Columbia University email account(s) or his Apple iCloud account(s) in 2019 or 2020 that are in the Government's possession; any copies of the image or files obtained from Petitioner Richman's email or iCloud accounts that are in the Government's possession; and any materials directly obtained or extracted from those files that are in the Government's possession (collectively, the "covered materials").

In order to "protect access to" the files at issue and preserve their availability for lawful "use in later proceedings," *see* Fed. R. Crim. P. 41(g), and as an exercise of the Court's equitable discretion to fashion a remedy that is appropriate under all the circumstances, the Court shall further **ORDER** that, before returning the covered materials to Petitioner Richman, the

Government may create one complete electronic copy of those materials and deposit that copy, under seal, with the U.S. District Court for the Eastern District of Virginia, which shall have supervisory authority over access to this material, for future access pursuant to a lawful search warrant and judicial order. The U.S. District Court for the Eastern District of Virginia may then exercise its discretion to decide whether to allow Petitioner Richman an opportunity to move to quash any such warrant before it is executed.

The Court shall further **ORDER** the Attorney General of the United States or her designee to certify, no later than **4:00 p.m. ET on Monday, December 15, 2025**, that the Government has (1) returned the covered materials to Petitioner Richman; (2) not retained any additional copy or copies of the covered materials; (3) not provided any copy or copies of the covered materials to any other person, except for one copy that may be filed, under seal, in the U.S. District Court for the Eastern District of Virginia consistent with this Court's order; and (4) not otherwise shared, disseminated, or disclosed the covered materials to any other person without first seeking and obtaining leave of this Court.

Because the Court's rulings will provide permanent relief for the injuries asserted in Petitioner Richman's [9] Motion for a Temporary Restraining Order without preventing the Government from conducting any future investigation or prosecution, the Court shall **DENY AS MOOT** both the remaining requests for relief in Petitioner Richman's [9] Motion and the Government's [12] Motion to Dissolve the Court's Temporary Restraining Order.

### I. BACKGROUND

Petitioner Daniel Richman is an attorney and law professor who is described as a longtime friend and confidant of former FBI Director James B. Comey. Petitioner Richman has also worked for Mr. Comey as his attorney. This case arises from the Government's

investigation into Mr. Comey's handling of sensitive information, including inquiries into Mr. Comey's communications with Petitioner Richman.

### A.    Factual Background

Unless otherwise noted, the following facts are undisputed and unrebutted. The Court has considered the parties' representations and the evidence that the parties have submitted in writing. *See* Fed. R. Crim. P. 41(g) (providing that the Court "must receive evidence on any factual issue necessary to decide the motion"). After issuing a temporary restraining order limiting the Government's access to the material at issue, the Court invited the Government to file a motion for leave to access that material for the limited purpose of responding to Petitioner Richman's claims with additional evidence. *See* Order, Dkt. No. 14. The Government elected not to file such a motion. The Court has also reviewed the opinion of Magistrate Judge William E. Fitzpatrick of the U.S. District Court for the Eastern District of Virginia in *United States v. Comey*, No. 25-cr-272-MSN-WEF, --- F. Supp. 3d ----, 2025 WL 3202693 (E.D. Va. Nov. 17, 2025), which Petitioner Richman cites extensively and which includes Magistrate Judge Fitzpatrick's findings based on his review of sealed records and transcripts of grand jury proceedings in the now-dismissed prosecution of Mr. Comey. See id. at *3–7. Finally, the Court has reviewed the public materials cited in Judge Fitzpatrick's opinion, including relevant affidavits of Government agents.

> 1.    <u>In 2017, Petitioner Richman allowed the FBI to create an image of his personal computer and consented to limited reviews of that image.</u>

In May 2017, a major newspaper published an article that recounted details from a memo by Mr. Comey regarding a meeting Mr. Comey had with President Donald J. Trump in the Oval Office in February 2017, while Mr. Comey was serving as FBI Director. According to the

article, the memo stated that President Trump had asked Mr. Comey to drop a federal investigation into former National Security Advisor Michael T. Flynn.

Mr. Comey later testified before the Senate Select Committee on Intelligence about meetings with President Trump that he had documented in contemporaneous memos. *See Cable News Network, Inc. v. Fed. Bureau of Investigation*, 293 F. Supp. 3d 59, 65–66 (D.D.C. 2018) (JEB) (recounting this history), *later determination vacated and remanded on other grounds*, 984 F.3d 114 (D.C. Cir. 2021); *see also* Open Hearing with Former FBI Director James Comey, U.S. Senate Select Committee on Intelligence (June 8, 2017) [hereinafter "June 2017 Hr'g Tr."], https://perma.cc/SS4F-XQH5.

During his testimony before the Senate Intelligence Committee, Mr. Comey stated that he had given "a good friend" who is "a professor at Columbia law school" a copy of his memo regarding his February 2017 meeting with President Trump. *See id.* at 73; *see also* June 2017 Hr'g Tr. at 27. Mr. Comey testified that he asked this friend "to share the content of the memo with a reporter." June 2017 Hr'g Tr. at 27.

After this hearing, Petitioner Richman allowed the FBI to create an "image"—that is, a complete electronic copy—of all files saved on his personal computer and a hard drive attached to that computer, which included backup files containing the contents of his cell phone and tablet. Petitioner Richman authorized the FBI to use that image for a limited purpose.

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮



2.    <u>In 2019 and 2020, in connection with the FBI's "Arctic Haze" investigation, the Government obtained warrants authorizing searches of the image of Petitioner Richman's computer and three online accounts.</u>

In April 2017, a major newspaper published an article that allegedly included classified information about a factor that influenced Mr. Comey's decision to announce publicly that the FBI had closed its investigation into Hillary Clinton's use of a private email server during her tenure as Secretary of State. *See United States v. Comey* ("*Comey I*"), --- F. Supp. 3d. ----, 2025 WL 3202693, at *3 (E.D. Va. Nov. 17, 2025). This article quoted Petitioner Richman by name and identified him as a confidant and friend of Mr. Comey.

---

[2] The factual material in this paragraph and the latter half of the preceding paragraph was provisionally filed under seal. If that material is later unsealed, the Court will unseal this portion of its Memorandum Opinion.

Soon after this article was published, the Government began an investigation into the public disclosure of the allegedly classified information that had been included in the article. *Comey I*, 2025 WL 3202693 at *3. The FBI called this investigation "Arctic Haze." *Id.*

In connection with this investigation, between August 2019 and June 2020, the FBI and the U.S. Attorney's Office for the District of Columbia obtained four warrants to search Petitioner Richman's electronic files and communications. *See* Pet'r's Exs. A–D, Dkt. Nos. 2-3 to 2-5 (under seal). The first warrant, issued in August 2019, authorized a search of the hard drive containing the image of Petitioner Richman's computer that the FBI had made in 2017. Pet'r's Ex. A. The second warrant, issued the following month, authorized a search of two Columbia University email accounts that Petitioner Richman used. Pet'r's Ex. B. The third warrant, issued in January 2020, authorized a search of Petitioner Richman's Apple iCloud account. Pet'r's Ex. C. The fourth and final warrant, issued in June 2020, authorized a second search of the hard drive containing an image of Petitioner Richman's computer. Pet'r's Ex. D.

All four warrants were limited in scope to allow seizure of only information relevant to "violations of 18 U.S.C. §§ 641, 793(d), and (e)"—criminal statutes concerning the theft and conversion of public records and the mishandling of national defense information—during specified periods. *See* Pet'r's Ex. A, Dkt. No. 2-2 at 4 (limiting seizures to "information that constitutes evidence and/or instrumentalities of violations of" these statutes); Pet'r's Ex. B, Dkt. No. 2-3 at 8 (same); Pet'r's Ex. C, Dkt. No. 2-4, at 10 (same); Pet'r's Ex. D, Dkt. No. 2-5 at 6 (limiting seizures to "data and information that constitutes fruits, evidence, contraband, or instrumentalities of violations of" these statutes).

One of these warrants also contained an express limit on how the Government would use the information seized. The first warrant authorizing a search of the image of Petitioner

Richman's computer provided that, after "determin[ing] which information is within the scope of the information to be seized" under the terms of the warrant, the responsive information "may be copied and retained by the United States," but information that was not "within the scope" of the warrant would be "seal[ed]" and the Government would "not further review the information absent an order of the Court."  Pet'r's Ex. A, Dkt. No. 2-2 at 4.

Petitioner Richman asserts—and the Government does not dispute—that the image and online accounts targeted by these warrants "contained a trove of personal and professional information unrelated to [the 'Arctic Haze'] investigation," some of which was "highly sensitive and highly personal."  Pet'r's Rule 41(g) Mem. at 5.  Among other things, the materials included "a significant quantum of [attorney-client] privileged information involving multiple clients." *Id.*  Recognizing the potential privilege issues, the Government allowed Petitioner Richman to review warrant returns for three of the four warrants to assert claims of privilege.  *Id.*  With the assistance of counsel, Petitioner Richman reviewed these returns, withheld privileged material, and produced privilege logs to the Government.  *Id.*  However, for one of the four warrants—the first warrant authorizing a search of the image of Petitioner Richman's computer—the Government did not give Mr. Richman an opportunity for such a review.  *Id.*  Petitioner Richman was therefore unable to assert claims of attorney-client privilege over this material at the time the Government collected it for use in the "Arctic Haze" investigation.  *See id.*

In addition to privileged material, the image and online accounts that the Government collected in the "Arctic Haze" investigation included sensitive correspondence related to student and faculty appointments, Petitioner Richman's personal photographs, his personal medical information, and all of his application data.  *See id.*; Pet'r's Reply, Dkt. No. 15, at 1.

9

Collectively, these materials are "a complete record of Petitioner Richman's electronic life up to the date of the seizures." Pet'r's Reply at 1.

The Government closed the "Arctic Haze" investigation in 2021 without filing any charges. *Comey I*, 2025 WL 3202693 at *5.

> 3. <u>Four years after the "Arctic Haze" investigation concluded, the Government conducted a warrantless search of Petitioner Richman's files in connection with a new investigation of Mr. Comey.</u>

In September 2025, in the course of a new investigation into Mr. Comey led by the FBI and the U.S. Attorney's Office for the Eastern District of Virginia, the Government conducted a further search of Petitioner Richman's files. *Comey I*, 2025 WL 3202693 at *6. Inexplicably, the Government did not seek or obtain a new warrant for this search. *See id.* (noting that the Government may have elected not to seek a new warrant for this search in part because doing so would have delayed its presentation to the grand jury, and the statute of limitations for the relevant offenses was set to expire in "a mere 18 days").

For this search, an FBI agent was instructed to review "a Blu-ray disc that contained a full Cellebrite extraction and Reader reports" for two of Petitioner Richman's devices to identify "conversations between [Petitioner Richman] and [Mr. Comey]." *See Comey I*, 2025 WL 3202693 at *6 (citing Affidavit of Francis Nero ("Nero Affidavit"), Dkt. No. 172-1, *United States v. Comey*, No. 25-cr-272 (E.D. Va. filed Sept. 25, 2025)). The U.S. Attorney's Office for the Eastern District of Virginia advised this agent that "the FBI was legally permitted to review the information contained on the Blu-ray disc." *See* Nero Affidavit. It appears from the record that there were "no precautions in place to avoid the collection of privileged communications" during this initial review. *Comey I*, 2025 WL 3202693 at *6.

During this review, the assigned FBI agent found text messages between several people, including Mr. Comey and "Michael Garcia." *See* Nero Affidavit. The agent did not recognize

some of the names, including "Garcia," and could not determine whether the messages were relevant to the FBI's investigation of Mr. Comey.  *Id.*  Nonetheless, he printed the messages for another agent to review and returned the Blu-ray disc to that agent.  *See id.*

Upon review of these printed messages, the second agent concluded that "Michael Garcia" was an alias for Petitioner Richman, and he determined that some of the messages between Petitioner Richman and Mr. Comey may be covered by the attorney-client privilege. *See Comey I*, 2025 WL 3202693 at *6 (citing Affidavit of Spenser Warren ("Warren Affidavit"), Dkt. No. 172-2, *United States v. Comey*, No. 25-cr-272 (E.D. Va. filed Sept. 25, 2025)).

About two weeks later, on the day the Government presented its case against Mr. Comey to the grand jury, the second agent provided a "limited overview" of the messages between Petitioner Richman and Mr. Comey to the lead FBI case agent assigned to the case and an attorney from the FBI Office of General Counsel ("OGC").  *See Comey I*, 2025 WL 3202693 at *7 (quoting Warren Affidavit).  The agent also advised the lead case agent and the OGC attorney that "some of the messages" between Petitioner Richman and Mr. Comey that the agents had reviewed "appeared to reference potential future legal representation."  *See* Warren Affidavit at 2; *see also Comey I*, 2025 WL 3202693 at *7 (quoting sealed materials stating that the lead case agent and OGC attorney were told that "evidence obtained in the Government's investigation of James Comey may constitute attorney-client privileged or attorney-client confidential information" and it was "possible" that agents "may have obtained evidence that constitutes attorney work-product information").  The OGC attorney "immediately advised that any of the text message communications referencing potential future legal representation should not be part of the indictment preparation."  Warren Affidavit at 2.

After this discussion, the lead case agent proceeded into the grand jury and testified as the sole witness in support of the pending indictment against Mr. Comey, without waiting for a filter team to be established or for the privilege issue to be otherwise resolved.  *Comey I*, 2025 WL 3202693 at \*7 (citing sealed transcript of grand jury proceedings).

Eighteen days later, after the grand jury voted to return a true bill on two of the three counts the Government had presented, the Government approached the U.S. District Court for the Eastern District of Virginia to propose a filter protocol for materials that the FBI case team had already reviewed.  *Comey I*, 2025 WL 3202693 at \*7 (citing Gov't's Mot. for Implementation of Filter Protocol, Dkt. No. 38, *United States v. Comey*, No. 25-cr-272 (E.D. Va. filed Sept. 25, 2025)).

### B.    Procedural History

Petitioner Richman filed his motion for return of property under Rule 41(g) on November 26, 2025, and it was randomly assigned to Court on December 2, 2025.  *See* Pet'r's Mot., Dkt. No. 1.  Petitioner Richman's motion concerns the Government's handling of his property in relation to an unrelated prosecution in the Eastern District of Virginia.  *See* Pet'r's Mem., Dkt. No. 2-1 at 1.  Many of the facts that form the basis of Petitioner Richman's motion come from a November 17, 2025, ruling in this separate prosecution by Magistrate Judge William E. Fitzpatrick.  *See Comey I*, 2025 WL 3202693.

Petitioner Richman's motion requested that the Court "issue a temporary restraining order enjoining the [G]overnment from using or relying on in any way" the materials at issue in his motion.  Pet'r's Mem. at 26.  Accordingly, on December 2, 2025, the Court ordered Petitioner Richman to file his application for a temporary restraining order by separate motion, consistent with Local Rule of Civil Procedure 65.1.  *See* Min. Order, Dec. 2, 2025 (explaining that Richman's motion must be "accompanied by a certificate of counsel that either (1) states the

Government has received actual notice of the application and 'copies of all pleadings and papers filed in the action to date or to be presented to the Court' in connection with the application; or (2) identifies 'the efforts made by the applicant to give such notice and furnish such copies'").

Petitioner Richman filed a motion for a temporary restraining order after-hours on December 5, 2025. *See* Pet'r's Mot. for T.R.O., Dkt. No. 9. On December 6, 2025, the Court ruled on Petitioner Richman's motion for a temporary restraining order, granting it in part and denying it in part. *See* Order, Dkt. No. 10. In this ruling, the Court ordered the Government to "identify, segregate, and secure the image of Petitioner Richman's personal computer that was made in 2017, his Columbia University email accounts, and his iCloud account; any copies of those files; and any materials obtained, extracted, or derived from those files" and to refrain from accessing, sharing, disseminating, or disclosing once they were identified and secured. *Id.* at 3. The Government was ordered to certify compliance with the Court's Order by December 8, 2025, and file a response to Richman's motion by December 9, 2025. *Id.* The Court provided that the temporary restraining order would "remain in effect until 11:59 p.m. ET on Friday, December 12, 2025, or until dissolved by further order of this Court." *Id.* at 4.

The Government filed a motion to dissolve the Court's temporary restraining order and a reply to Richman's motion for return of property on December 9, 2025. Gov't's Opp'n & Mot., Dkt. No. 12. In its motion, the Government noted that it was "prepared to provide a more detailed factual summary" of the relevant events if the Court allowed it to use materials obtained from Richman through the relevant warrants "as part of this litigation." *Id.* at 3. Accordingly, to "receive evidence on any factual issue necessary to decide" Richman's motion, the Court permitted the Government to file a "brief motion for leave to access the covered materials for the

limited purpose of responding to Petitioner Richman's claims in this case." Order, Dkt. No. 14 (citing Fed. R. Crim. P. 41(g)). The Government, however, did not file any such motion.

Petitioner Richman replied to the Government's opposition on December 9, 2025. *See* Pet'r's Reply, Dkt. No. 15. His motion is ripe for review.

## II. LEGAL STANDARD

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend IV. A "person aggrieved by an unlawful search and seizure of property" under the Fourth Amendment may "move for the property's return" under Federal Rule of Criminal Procedure 41(g). Fed. R. Crim. P. 41(g). Such a motion "must be filed in the district where the property was seized." *Id.* To determine whether property should be returned, courts must consider the "reasonableness under all the circumstances" of the search and seizure at issue. Fed. R. Crim. P. 41 advisory committee's note to 1989 amendments. If the Government needs the property for use in an investigation or prosecution, "its retention of the property generally is reasonable." *Id.* However, if the Government's interests "can be satisfied even if the property is returned, continued retention of the property [is] unreasonable." *Id.*

If a court grants a motion for return of property under Rule 41(g), then the court "must" order that the property be returned "to the movant." Fed. R. Crim. P. 41(g). However, the court "may impose reasonable conditions to protect access to the property and its use in later proceedings." *Id.* For example, a court may order the Government to return original records to their owner but allow the Government to retain copies of those records for its own use in future investigations and prosecutions. *See, e.g.*, *J.B. Manning Corp. v. United States*, 86 F.3d 926, 928 (9th Cir. 1996). "In some circumstances, however, equitable considerations might justify an

14

order requiring the [G]overnment to return or destroy all copies of records that it has seized."
Fed. R. Crim. P. 41 advisory committee's note to 1989 amendments.

### III. ANALYSIS

**A.  Petitioner Richman has standing.**

Although no party contests this Court's Article III jurisdiction to hear this matter, the
Court begins by briefly reviewing the basis for that jurisdiction.  *See Am. Rivers v. FERC*, 895
F.3d 32, 40 (D.C. Cir. 2018) (explaining that federal courts have an "independent obligation" to
be sure of their Article III jurisdiction).

Article III of our Constitution limits the judicial power to the resolution of "Cases" and
"Controversies."  U.S. Const. art. III, § 2, cl. 1.  To establish that there is a case or controversy
that lies within the reach of this limited power, the party invoking federal jurisdiction must show
that the plaintiff has "a 'personal stake' in the case—in other words, standing."  *TransUnion LLC
v. Ramirez*, 594 U.S. 413, 423 (2021) (quoting *Raines v. Byrd*, 521 U.S. 811, 819 (1997)).  To
make this showing, the proponent of federal jurisdiction must show (i) that the plaintiff "suffered
an injury in fact that is concrete, particularized, and actual or imminent"; (ii) that the plaintiff's
injury "was likely caused by the defendant"; and (iii) that the injury "would likely be redressed
by judicial relief."  *Id.* (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–561 (1992)).

To determine whether an injury is sufficiently "concrete" to support Article III standing,
courts "assess whether the alleged injury to the plaintiff has a 'close relationship' to a harm
'traditionally' recognized as providing a basis for a lawsuit in American courts."  *Id.* at 424
(quoting *Spokeo, Inc. v. Robins*, 578 U. S. 330, 341 (2016)).  Those cognizable harms "include
harms specified by the Constitution itself."  *Id.* (collecting cases).

Petitioner Richman has standing.  For reasons the Court shall explain in greater detail in
the discussion that follows, the Court concludes that Petitioner Richman has established multiple

concrete injuries to his cognizable interests; that those injuries are traceable to—indeed, directly attributable to—the Government's own conduct; and that his injuries are redressable by a favorable decision from this Court.   In summary, Petitioner Richman has shown that the Government has violated his Fourth Amendment right against unreasonable searches and seizures and invaded his privacy in a manner analogous to the common-law tort of intrusion upon seclusion, which was "traditionally recognized as providing a basis for lawsuits in American courts."  *TransUnion*, 594 U.S. at 425 (citing *Gadelhak v. AT&T Services, Inc.*, 950 F.3d 458, 462 (7th Cir. 2020) (Barrett, J.)); *see also Pileggi v. Washington Newspaper Publ'g Co., LLC*, 146 F.4th 1219, 1227–29 (D.C. Cir. 2025) (discussing the traditional elements of intrusion upon seclusion and applying *TransUnion* to find Article III standing based on an alleged disclosure of the plaintiff's "private video viewing history" without consent).   Petitioner Richman has shown that, without judicial intervention, that injury will continue because the Government will retain the materials at issue and may again unlawfully access or use them.   A favorable decision from this Court would redress Petitioner Richman's injury by reducing or eliminating the Government's access to the sensitive information at issue by requiring access only if authorized by a judicial officer.

Assured of its jurisdiction, the Court proceeds to the merits.

**B.      The Government's retention and use of an image of Petitioner Richman's files has violated his Fourth Amendment rights.**

To obtain the return of his property under Rule 41(g), Petitioner Richman must show that "the property's seizure was illegal."  *United States v. Wright*, 49 F.4th 1221, 1225 (9th Cir. 2022) (citation modified).   Petitioner Richman contends that the Government's seizure of his property violated his Fourth Amendment rights "in at least three ways."   Pet'r's T.R.O. Mem., Dkt. No. 9-1 at 17.   *First*, he argues that the Government "exceeded the scope" of the prior warrants it

obtained in 2019 and 2020 to search his property by "seizing both responsive and non-responsive materials." *Id*. at 17–20. *Second*, he argues that the Government has continued to retain his materials for an "unreasonable" period of time. *Id*. at 17, 20–22. *Third*, he argues that the Government executed an unreasonable warrantless search of the retained property in 2025. *Id*., at 17, 22–23.

The Court will address each of Richman's arguments in turn. In doing so, the Court concludes that, although the Government's initial seizure of Richman's property and its continued retention of that property did not violate Richman's Fourth Amendment rights, the Government's warrantless search of his property in 2025—approximately five years after it initially seized that property—did violate those rights. The Court further concludes that the Government's mishandling of Petitioner Richman's property renders its continued retention of that property an unreasonable Fourth Amendment seizure.

1.    On the present record, Petitioner Richman has not shown that the Government's initial seizure of his files in 2017 was unreasonable.

The Fourth Amendment protects against "unreasonable searches and seizures." U.S. Const. amend IV. Outside of "certain carefully defined classes of cases, a search of private property without proper consent is 'unreasonable' unless it has been authorized by a valid search warrant." *Camara v. Mun. Ct. of City & Cnty. of San Francisco*, 387 U.S. 523, 528–29 (1967). The Fourth Amendment provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend IV. A valid warrant, therefore, must be issued by a "neutral and detached" magistrate, *Johnson v. United States*, 333 U.S. 10, 13–14 (1948), who may not issue the warrant "unless probable cause is properly established and the

scope of the authorized search is set out with particularity." *Kentucky v. King*, 563 U.S. 452, 459 (2011).

Searches and seizures made pursuant to a valid warrant "should be as limited as possible." *Coolidge v. New Hampshire*, 403 U.S. 443, 467 (1971) ("Here, the specific evil is the 'general warrant' abhorred by the colonists, and the problem is not that of intrusion per se, but of a general, exploratory rummaging in a person's belongings."), *holding modified by Horton v. California*, 496 U.S. 128 (1990). "The requirement that warrants shall particularly describe the things to be seized makes general searches under them impossible and prevents the seizure of one thing under a warrant describing another." *Marron v. United States*, 275 U.S. 192, 196 (1927). "If the scope of the search exceeds that permitted by the terms of a validly issued warrant or the character of the relevant exception from the warrant requirement, the subsequent seizure is unconstitutional without more." *Horton*, 496 U.S. at 140.

Petitioner Richman's motion concerns the Government's seizure of his property pursuant to four different search warrants executed in 2019 and 2020. Petitioner Richman claims that the Government's execution of these warrants violated his Fourth Amendment rights because the Government seized more material than the warrants authorized. Pet'r's Mem., Dkt. No. 2-1 at 13. Petitioner Richman neither contests the validity of the four search warrants nor disputes the fact that the warrants permitted the Government to *search* his property "broadly." *Id*. Petitioner Richman, however, claims that the warrants only authorized the Government to *seize* information that constituted "evidence and/or instrumentalities of" a violation of either 18 U.S.C. § 641 (theft and conversion of government property) or 18 U.S.C. § 793 (unlawful gathering or transmission of national defense information). *Id*. According to Petitioner Richman, the Government "violated the terms of the four search warrants by failing to identify and segregate responsive

data, resulting in a massive over-seizure of professional and personal data." Pet'r's Reply in Support of TRO, Dkt. No. 15 at 3.

Petitioner Richman's claim of over-seizure is based on recent findings made by Magistrate Judge William E. Fitzpatrick in a separate prosecution in the Eastern District of Virginia. *See* Pet'r's Mem., Dkt. No. 2-1 at 15. On November 17, 2025, Magistrate Judge Fitzpatrick resolved an unrelated dispute that centered on the information obtained by the Government through the four search warrants at issue here. *United States v. Comey*, No. 25-cr-272-MSN-WEF, --- F. Supp. 3d ----, 2025 WL 3202693 at *3 (E.D. Va. Nov. 17, 2025). Magistrate Judge Fitzpatrick expressed "concern" over "whether the government complied with a fundamental requirement of the Fourth Amendment and with the plain language of the warrants that it may seize only those materials specifically authorized by the Court." *Id*. at *4. After considering the parties' arguments, holding multiple hearings, and taking evidence on the matter, Magistrate Judge Fitzpatrick concluded that "the facts establish[ed] a reasonable basis for the defense to challenge whether the government exceeded the scope of the Richman Warrants in 2019 and 2020 by seizing and preserving information that was beyond the scope of the warrants, that is, information that did not constitute evidence of violations of either 18 U.S.C. § 641 or § 793." *Id*. at *10.

The Court adopts Magistrate Judge Fitzpatrick's findings from the record. Magistrate Judge Fitzpatrick found that there was "nothing in the record to suggest the government made any attempt to identify what documents, communications or other materials seized from Mr. Richman" were responsive to the search warrants. *Id*. at *5. He also identified three findings from the record that affirmatively supported his conclusion. First, Magistrate Judge Fitzpatrick highlighted an April 29, 2020, letter from Richman's then-counsel to the Government that

informed the Government that DOJ had informed Richman that it had "obtained" data under the Apple Warrant and one of the Hard Drive Warrants that fell outside the temporal scope of the warrants. *Id*. at 4. In addition, Magistrate Judge Fitzpatrick explained that when he "questioned the Assistant United States Attorney" assigned to the case at a hearing "as to how and whether a set of materials responsive to the Richman Warrants was identified and separated from non-responsive materials," the AUSA "simply said he did not know." *Id*. Finally, Magistrate Judge Fitzpatrick emphasized that after he "ordered the government to produce to the defense all material seized pursuant to the Richman Warrants" in the form in which it was then-maintained, counsel for the defense reported that "the manner and format in which the government provided the information did not reflect that the government had seized, reviewed and used only the information responsive to the warrants." *Id*. To explain these potential discrepancies, Magistrate Judge Fitzpatrick suggested that the Government "appear[ed] to have conflated its obligation to protect privileged information . . . with its duty to seize only those materials authorized by the Court." *Id*.

Magistrate Judge Fitzpatrick's findings establish a reasonable basis for Petitioner Richman to challenge the Government's seizure of his property under the four warrants executed in 2019 and 2020. Magistrate Judge Fitzpatrick's findings show that Petitioner Richman's former attorney wrote a letter to the Government claiming that the DOJ had informed Richman that its seizures under the Apple Warrant and one of the Hard Drive Warrants contained property that fell outside of the temporal scope permitted by those warrants. If this is true, then the Government would have exceeded its scope of authority under those warrants. Furthermore, Magistrate Judge Fitzpatrick provided the Government with multiple opportunities to dispel concerns regarding its seizure under the warrants, but rather than offer any insight into the scope

of its seizure under the warrants, the Government simply said it did not know whether responsive materials were separated from non-responsive materials.  Meanwhile, counsel for the defense reviewed the materials seized by the Government and informed Magistrate Judge Fitzpatrick that the manner and format in which they were provided did not reflect the separation of non-responsive materials.  Because the Government has the most insight into its own execution of the warrants at issue and has not been forthcoming with respect to information seized from those warrants, the Court shall take the Government's failure to augment the record as further support of Magistrate Judge Fitzpatrick's findings.

In light of Magistrate Judge Fitzpatrick's findings, the Court concludes that Petitioner Richman has established a reasonable basis for his claim that the Government exceeded the scope of the 2019 and 2020 "Arctic Haze" warrants when seizing his property.  On the present record, however, the Court shall not determine whether Petitioner Richman has conclusively established a violation of his Fourth Amendment rights based on his claim that the 2019 and 2020 "Arctic Haze" seizures at issue were overbroad.  Magistrate Judge Fitzpatrick's findings raise a substantial question as to whether Petitioner Richman's Fourth Amendment rights were violated when the Government executed the 2019 and 2020 warrants at issue.  However, the parties have not provided the Court with additional information in the record that would enable the Court to make a conclusive determination of Petitioner Richman's Fourth Amendment claim about over-seizure as to the 2019 and 2020 "Arctic Haze" warrants.

The Court notes this ruling is limited to Petitioner Richman's claim regarding the Government's alleged over-seizure of information during the execution of the four warrants in 2019 and 2020.  This ruling in no way undermines the Court's analysis of Petitioner Richman's

Fourth Amendment claim regarding the Government's warrantless search of his property in 2025. *See supra* Section III.B.3.

Accordingly, the Court concludes that, based on Magistrate Judge Fitzpatrick's findings and the present record, Petitioner Richman has shown a reasonable basis for his claim that the Government violated his Fourth Amendment rights by seizing more material than was authorized by the four warrants executed on his property in 2019 and 2020. However, because the parties have not supplemented the limited record with additional information regarding the Government's seizures in 2019 and 2020, the Court shall refrain from making a conclusive determination as to whether these seizures exceeded the scope of their warrants.

        2.        <u>The Government's retention of Petitioner Richman's files is an ongoing Fourth Amendment seizure, but prior to 2025, that seizure was reasonable.</u>

Petitioner Richman next argues that the Government violated his Fourth Amendment right against unreasonable seizures by retaining his files for an unreasonably long time after concluding the "Arctic Haze" investigation in 2021. The Court concludes that the duration of this ongoing seizure was reasonable, but only so long as the Government adequately protected the files by refraining from accessing or searching them without a warrant.

In this Circuit, "there is a Fourth Amendment seizure if the [G]overnment (1) meaningfully interferes with possessory interests in property in a way that (2) would have been understood to be an actionable property tort at common law." *Asinor v. District of Columbia*, 111 F.4th 1249, 1254 (D.C. Cir. 2024). Accordingly, even if the Government's initial seizure of property was reasonable and lawful, "the Fourth Amendment requires that any continued possession of the property must [also] be reasonable." *Id.* at 1252. For example, an initially lawful seizure may become unlawful if "its length unduly intrude[s] upon constitutionally protected interests." *United States v. Jacobsen*, 466 U.S. 109, 124 n.25 (1984) (citing *United*

*States v. Place*, 462 U.S. 696, 707 (1983)).  A seizure that is "lawful at its inception" may also "nevertheless violate the Fourth Amendment because its manner of execution unreasonably infringes possessory interests protected by the Fourth Amendment's prohibition on 'unreasonable seizures.'"  *Jacobsen*, 466 U.S. at 124.

These rules are often relatively straightforward to apply in the context of physical property, but their application can become more complex in the context of electronic data.  To what extent does a person have a "possessory interest" in copies of electronic files if other copies saved elsewhere remain available?  When does the Government's retention of those files interfere with that interest?

Two prior decisions from this District provide helpful guidance on the issue of whether, and under what conditions, the Government may reasonably retain and use electronic data seized under search warrants issued in a previous investigation.  In summary, the Fourth Amendment does not categorically prevent the Government from retaining data under these circumstances, but the Government *must* obtain a search warrant before returning to that data in a subsequent investigation.

In 2021 and 2022, then-Chief Judge Beryl A. Howell and Magistrate Judge G. Michael Harvey each explored this issue in thoughtful opinions in a case involving applications for warrants to search data extracted from cell phones that it had lawfully seized in a since-closed investigation.  *See In re Search of Twenty-Six (26) Digital Devices & Mobile Device Extractions That Are Currently in Possession of L. Enf't in Washington, D.C.*, No. 21-sw-233, 2021 WL 5822583, at *12 (D.D.C. Nov. 30, 2021) (GMH) ("*Digital Devices I*"), *rev'd in part*, 2022 WL 998896, at *1 (D.D.C. Mar. 14, 2022) (BAH) ("*Digital Devices II*").

After surveying relevant authorities from multiple jurisdictions, Magistrate Judge Harvey concluded that the subjects of the Government's investigation had "strong possessory interest[s] in the personal data and information on their phones" that the Government had seized, notwithstanding the fact that the subjects may have had backups of that data available for their own use. *Digital Devices I*, 2021 WL 5822583 at *12–13. In support of this conclusion, Magistrate Judge Harvey noted that one inherent part of the right to possess is the "right to exclude." *Id.* at *13 (citing *Terrence Byrd v. United States*, 584 U.S. 395, 405 (2018)). Accordingly, he concluded that the copying of personal data by law enforcement meaningfully interferes with a subject's possessory interests because each time a copy is made, the subject loses the ability to "control who else could access [his or her] information." *Id.* (quoting *Standifer v. Best Buy Stores, L.P.*, 364 F. Supp. 3d 1286, 1298 (N.D. Ala. 2019)). Magistrate Judge Harvey noted that this possessory interest could be weakened if the subjects voluntarily consented to unrestricted searches of their data or voluntarily abandoned their devices. *Id.* at *13–14. He further noted that actively asserting a possessory interest in property by filing a Rule 41(g) motion for its return is "helpful, though not essential," to establishing that such an interest exists. *Id.* at *14 (quoting *United States v. Wilkins*, 538 F. Supp. 3d 49, 92 (D.D.C. 2021) (RC)).

Applying these principles to a set of pending warrant applications, Magistrate Judge Harvey concluded that the subjects' possessory interests in the data saved on their cell phones outweighed the Government's interest in retaining that data after the conclusion of the prosecution for which the data was originally seized. *Digital Devices I*, 2021 WL 5822583 at *16–26. In doing so, he considered and rejected a Government argument that copies of the subjects' data created in the Government's earlier investigation were Government property. *Id.*

at \*17–19.   Collecting cases from other jurisdictions, he highlighted that many courts have "noted significant discomfort with the notion that the [G]overnment may retain[] seized personal information or data indefinitely, thereby making it available for search in subsequent investigations."  *Id.* at \*17–19.

Summing up, Magistrate Judge Harvey concluded that it was unreasonable for the Government to retain extracted cell phone data for use in a subsequent investigation after the conclusion of the investigation in which the phones were originally seized.  *Id.* at \*25.  He therefore denied the Government's motion for a warrant to search the extracts of those cell phones.  *Id.* at \*25–26.

The Government appealed Magistrate Judge Harvey's decision to then-Chief Judge Howell, who reversed the decision in relevant part and granted the Government's warrant applications.  *Digital Devices II*, 2022 WL 998896, at \*16.  Judge Howell noted that the question of whether the Government may obtain a warrant to search cell phone data extractions that the Government lawfully obtained "in connection with a closed, unrelated prosecution" presented a "novel Fourth Amendment issue in this Circuit."  *Id.* at \*1.  Judge Howell agreed with Magistrate Judge Harvey that this question implicated subjects' "legitimate privacy and possessory concerns," but she ultimately concluded that the Government's compliance with the Fourth Amendment's warrant requirement adequately protects those interests.  *See id.* at \*1–2.  Because the Government had properly applied to a neutral magistrate for a warrant, demonstrated probable cause to believe that the stored extracts of the subjects' cell phones contained evidence of a crime, and described the parameters of the Government's proposed search with sufficient particularity, Judge Howell concluded that the closure of the initial

25

criminal investigation did not preclude the Government from obtaining a new warrant.  *Id.* at *8–15.

Judge Howell noted two critical procedural requirements for searches of stored extracts of digital device data from prior investigations, both of which had been satisfied in the case before her.  First, and most fundamentally, "in order for the [G]overnment to search a cell phone's digital data[,] the [G]overnment must get a probable cause warrant."  *Digital Devices II*, 2022 WL 998896, at *15 (citing *Riley v. California*, 573 U.S. 373 (2014)).  Second, "[o]nce the government's investigation unearths the likelihood that evidence of offenses not covered by the initial warrant exists, the government must set forth adequate probable cause and particularity to secure a warrant expanding the scope of its search of previously seized evidence."  *Id.*

Although nearly all of Judge Howell's reasoning remains powerfully persuasive, one aspect of her analysis appears to have been altered by the D.C. Circuit's intervening decision in *Asinor v. District of Columbia*, 111 F.4th at 1262.  Judge Howell's decision that the closure of the prior investigation did not preclude the Government from obtaining a warrant to search the stored extracts for a later proceeding rested in part on a conclusion that "[t]he Fourth Amendment does not operate as an arbiter of law enforcement retention policies for lawfully seized evidence."  *Digital Devices II*, 2022 WL 998896, at *1.  Although Judge Howell's conclusion on this point is consistent with the law of many circuits, the D.C. Circuit recently held in *Asinor* that the Fourth Amendment *does* regulate the Government's retention of evidence by requiring "continuing retention of seized property to be reasonable."  111 F.4th at 1261.  The court reasoned that although it is not clear from the text of the Fourth Amendment's protection of the right to be "secure" against "unreasonable . . . seizures" whether the provision regulates retention after an initial lawful seizure, history and common-law tradition from the Founding era

26

support the conclusion that the reasonableness requirement governs not only the "taking possession" but also the "continued retention" of property. *Id.* at 1254–55.

The court in *Asinor* noted that its conclusion about the scope of the Fourth Amendment found support in the Supreme Court's decision in *United States v. Jacobsen*, 466 U.S. 109 (1984), which analyzed the Fourth Amendment reasonableness of not only an initial seizure of a white powder suspected to be cocaine, but also the reasonableness of the subsequent testing of a small portion of the powder. *Asinor*, 111 F.4th at 1255–56. Although the Government tried to distinguish *Jacobsen* on the ground that it involved *destruction* of property, rather than lesser interferences, the circuit rejected that argument. *Id.* at 1256. Instead, it concluded that *Jacobsen* supports the proposition that the Fourth Amendment is concerned with "any change in circumstances that makes unreasonable the [G]overnment's ongoing interference with possessory property interests." *Id.*

Applying each of these principles, the Court concludes that it was reasonable for the Government to retain Petitioner Richman's files after it closed the "Arctic Haze" investigation, but only so long as the Government adequately protected those files by refraining from accessing or searching them without a warrant. Although the Government's initial seizure of these files swept up a significant volume of material that was not responsive to its investigation, seizing and retaining all of that information was reasonable considering the practicalities involved in the seizure and forensic analysis of digital data. *See Digital Devices II*, 2022 WL 998896, at *13 (explaining that digital data often "must be preserved in its entirety to be forensically sound"). That seizure did not become unreasonable upon the conclusion of the Government's investigation, so long as the Government had a legitimate purpose for retaining Petitioner Richman's files. *See id.* at *12.

27

However, given the exceptionally sensitive nature of the files, Petitioner Richman maintained a possessory interest in them, including an interest in exercising the "right to exclude" by deciding who could and could not access copies of them. *See Digital Devices I*, 2021 WL 5822583 at *13; *see also United States v. Hubbard*, 650 F.2d 293, 302–03 (D.C. Cir. 1980) (concluding that "the party from whom materials are seized in the course of a criminal investigation retains a protectible property interest in the seized materials" and explaining that this interest is "cognate to and supportive of" constitutional rights). Petitioner Richman did not relinquish that interest by consenting to limited searches of the files in 2017; on the contrary, the carefully circumscribed terms of his consent to those searches shows that he was actively asserting his right to decide who could access the files and on what terms. *See* Pet'r's Ex. A, Dkt. No. 2-2 at 52, 54. After the Government closed the "Arctic Haze" investigation in 2021, the strength of the Government's interest in retaining the files diminished, but it was not categorically unreasonable for the Government to retain the files, so long as the Government maintained appropriate safeguards against improper access. *See Digital Devices II*, 2022 WL 998896, at *15–16. Most importantly, the Government could not search the retained files without obtaining a new warrant. *See id.* So long as the Government respected that critical limitation, its intrusion on Petitioner Richman's possessory interests was limited, and retention of the files was reasonable.

However, the situation changed meaningfully when the Government conducted a recent search of Petitioner Richman's files, as the Court discusses in the following section.

3.     The Government's warrantless review of Petitioner Richman's files in 2025, years after concluding the relevant criminal investigation, was an unreasonable Fourth Amendment search.

The core of Petitioner's Richman's claim in this case is his undisputed and unrebutted charge that the Government recently conducted a warrantless search of his files in furtherance of

a new investigation of Mr. Comey in the Eastern District of Virginia.  Specifically, the record shows that in September 2025, the Government directed one of its agents to review a "full" extraction of the data from Petitioner Richman's cell phone and tablet to search for messages that Petitioner Richman exchanged with Mr. Comey.  *Comey I*, 2025 WL 3202693 at *6 (quoting Nero Affidavit).

Although the Government, in a single footnote, broadly "denies that there has been any violation of the Fourth Amendment," it has presented no substantive argument that this warrantless search of Petitioner Richman's files was consistent with—or even cognizant of—his Fourth Amendment rights.  *See* Gov't's Opp'n & Mot., Dkt No. 12, at 16 n.11.

Recognizing the extraordinary scope and sensitivity of data available on personal digital devices, the Supreme Court has commanded that officers *must* "secure a warrant before conducting" a search of data stored on cell phones, except in the rare case in which exigent circumstances make a warrantless search reasonable.  *Riley v. California*, 573 U.S. 373, 386, 402 (2014).  Moreover, it is well established that when the Government seeks to conduct another search after it has finished executing a previous warrant, it generally must secure another warrant.  *See Digital Devices II*, 2022 WL 998896, at *9 (collecting cases).

These requirements reflect familiar, bedrock Fourth Amendment principles.  "Searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions."  *Katz v. United States*, 389 U.S. 347, 357 (1967).  "When the right of privacy must reasonably yield to the right of search is, as a rule, to be decided by a judicial officer, not by a policeman or Government enforcement agent."  *Johnson v. United States*, 333 U.S. 10, 14 (1948).

In short, the Government's warrantless search of the contents of Petitioner Richman's cell phone and tablet in September 2025 was manifestly unconstitutional.

        4.    <u>Because the Government has failed to maintain appropriate safeguards against misuse of Petitioner Richman's files, its retention of those files is an unreasonable seizure.</u>

The Government's unlawful search of Petitioner Richman's files in September 2025 falsifies a core assumption of the general rule that the Government may retain copies of digital devices after closing an investigation. The critical assumption is that the Government will maintain such files with effective safeguards against warrantless searches. *See Digital Devices II*, 2022 WL 998896, at *9, *14–15. The Government's faithful adherence to the warrant requirement is the essential element that protects an investigation subject from "general unrestricted rummaging through the immense trove of information stored on the electronic device." *See id.* at *14. If the Government cannot be relied upon to prevent such invasions, its retention of a subject's digital data significantly intrudes on the subject's possessory interest in protecting that data from unlawful and unwanted access. *See Asinor*, 111 F.4th at 1254; *Digital Devices I*, 2021 WL 5822583 at *12–13. At that point, its retention of a subject's data is properly analyzed as a Fourth Amendment seizure. *See Asinor*, 111 F.4th at 1254.

The Court must therefore consider whether the Government's failure to protect Petitioner Richman's files from warrantless searches makes its continued retention of those files an unreasonable seizure. Under the circumstances presented here, the Court concludes that it does.

As the Court has already described, in September 2025, the Government conducted an unreasonable, warrantless search of the contents of two of Petitioner Richman's digital devices: a cell phone and a tablet. *See supra* Section III.B.3. The Government obtained those files, along with other files seized from Petitioner Richman's personal computer and online accounts, in the course of the FBI's "Arctic Haze" investigation, which concluded in 2021. Considering both the

30

sensitive nature of the files that the Government obtained from Petitioner Richman during the "Arctic Haze" investigation and the Government's failure to safeguard those files against warrantless seizures, the Court concludes that the Government continued retention of those files is an unreasonable seizure.  *See Asinor*, 111 F.4th at 1254.

*    *    *

In sum, the Court concludes that Petitioner Richman has shown that, in September 2025, the Government conducted an unreasonable, warrantless search of his files that it had retained from the "Arctic Haze" investigation.  The Court further concludes that the Government's retention of Petitioner Richman's files amounts to an ongoing unreasonable seizure.  Therefore, the Court agrees with Petitioner Richman that the Government has violated his Fourth Amendment right against unreasonable searches and seizures.

**C.    Ordering the Government to return the property at issue to Petitioner Richman is a proper exercise of this Court's equitable jurisdiction.**

A motion for return of property under Criminal Rule 41(g) that is filed by "a party against whom no criminal charges have been brought" is construed as "a petition that the district court invoke its civil equitable jurisdiction."  *Parrott v. District of Columbia*, No. 21-cv-2930, 2023 WL 2162859, at *10 (D.D.C. Feb. 22, 2023) (RCL) (quoting *United States v. Comprehensive Drug Testing, Inc.*, 621 F.3d 1162, 1172 (9th Cir. 2010) (en banc) (per curiam), *overruled in part on other grounds by Hamer v. Neighborhood Hous. Servs. of Chicago*, 538 U.S. 17, 21 (2017), *as recognized by Demaree v. Pederson*, 887 F.3d 870, 876 (9th Cir. 2018) (per curiam)), *recons. denied*, 2025 WL 1836145 (D.D.C. July 3, 2025) (RCL).  Accordingly, the Court next turns to the question of whether Petitioner Richman's Motion properly invokes this Court's equitable jurisdiction and seeks a proper remedy.  It does.

1.    The *Ramsden*/*Richey* factors each weigh in favor of exercising equitable jurisdiction to order the return of Petitioner Richman's property.

The Fifth and Ninth Circuits have each adopted four-factor tests for evaluating whether a court should exercise its equitable jurisdiction to order the return of property under Federal Rule of Criminal Procedure 41(g).  *See Richey v. Smith*, 515 F.2d 1239, 1243 (5th Cir. 1975); *Ramsden v. United States*, 2 F.3d 322, 325 (9th Cir. 1993).[3]

The four relevant factors are: (1) "whether the Government displayed a callous disregard for the constitutional rights of the movant"; (2) "whether the movant has an individual interest in and need for the property he wants returned"; (3) "whether the movant would be irreparably injured by denying return of the property"; and (4) "whether the movant has an adequate remedy at law for the redress of his grievance."  *Ramsden*, 2 F.3d at 325; *accord Richey*, 515 F.2d at 1243.

Other courts, including at least one court in this District, have applied the same or similar factors.  *See, e.g.*, *In re Singh*, 892 F. Supp. 1, 3 (D.D.C. 1995) (SSH); *Trump v. United States*, 54 F.4th 689, 694 (11th Cir. 2022) (per curiam) (following *Richey* as binding precedent in the Eleventh Circuit); *Matter of Search of 4801 Fyler Ave.*, 879 F.2d 385, 387 (8th Cir. 1989) (concluding that "callous disregard" of Fourth Amendment rights, "irreparable injury if relief is not granted," and "lack of an adequate remedy at law" are each required).

Applying the Fifth and Ninth Circuits' four-factor tests to the facts of this case, this Court concludes that each factor weighs in favor of exercising equitable discretion to order the return of Petitioner Richman's property here.

---

[3] Prior to a renumbering of the paragraphs of Criminal Rule 41, the provision that is now Criminal Rule 41(g) was identified as Rule 41(e).  The *Richey* and *Ramsden* decisions both predate the numbering change, but this Court refers to the rule by its current numbering throughout this Memorandum Opinion for consistency and ease of comprehension.

a.    *The Government has shown a "callous disregard" for Petitioner Richman's constitutional rights.*

As the Court has already discussed, the Government has presented no substantive argument that its warrantless search of Petitioner Richman's files in 2025 was consistent with his Fourth Amendment rights, and its decision to do so is flatly inconsistent with precedent and longstanding practice. *See supra* Section III.B.  Magistrate Judge Fitzpatrick found, and the Government does not dispute, that the Government agent who performed this search did so "apparently with the concurrence of" the U.S. Attorney's Office for the Eastern District of Virginia. *Comey I*, 2025 WL 3202693, at *6.  Such a remarkable breach of protocol, especially if undertaken with the knowledge and agreement of a federal prosecutor, clearly reflects a "callous disregard" for Petitioner Richman's Fourth Amendment right against unreasonable searches and seizures.

b.    *Petitioner Richman has a compelling individual interest in the property that he seeks to have returned to him.*

As the Court has already explained, Petitioner Richman has a compelling individual interest in controlling access to the copies of his files that the Government possesses. *See supra* Section III.B.2 (discussing property owners' interests in controlling access to their property by exercising "the right to exclude").  It is undisputed that these materials contain—among other things—privileged communications, sensitive correspondence about student and faculty appointments, personal medical information, and personal photographs. *See* Pet'r's Rule 41(g) Mem. at 5; Pet'r's Reply at 1.

The Government attempts to cast doubt on Petitioner Richman's interest in these files, arguing that because it only holds *copies* of the relevant files, Petitioner Richman does not "genuinely want any property *back*" for his own purposes; instead, the Government suggests, Petitioner Richman's sole interest is in suppressing evidence in a potential future prosecution of

Mr. Comey. *See* Gov't's Opp'n and Mot., Dkt. No. 12, at 13. The Government overlooks Petitioner Richman's own compelling interest in controlling access to this material for his own private and professional purposes, including preserving his own privacy and his professional confidences. The return of the files in the Government's possession would serve this interest by cutting off future unlawful access to Petitioner Richman's sensitive files.

Accordingly, this factor weighs in favor of returning the property at issue to Petitioner Richman, notwithstanding the Government's argument to the contrary.

c.    *Petitioner Richman would be irreparably harmed by the denial of the return of his property.*

Petitioner Richman has also sufficiently shown irreparable harm from the Government's improper retention of his property.

Most fundamentally, Petitioner Richman has shown an irreparable injury to his Fourth Amendment right to be free from unreasonable searches and seizures. "[I]t is well settled that 'the loss of constitutional freedoms, "for even minimal periods of time, unquestionably constitutes irreparable injury."'" *Nat'l Ass'n for Advancement of Colored People v. U.S. Dep't of Educ.*, 779 F. Supp. 3d 53, 67 (D.D.C. 2025) (DLF) (quoting *Mills v. District of Columbia*, 571 F.3d 1304, 1312 (D.C. Cir. 2009)). For all the reasons the Court has already explained, *supra* Section III.B., the Government's recent warrantless search and subsequent retention of Petitioner Richman's files violates his Fourth Amendment right against unreasonable searches and seizures. That ongoing constitutional violation is an irreparable injury warranting equitable relief.

Moreover, the Government's intrusions into Petitioner Richman's sensitive files risk irreparably burdening both his personal privacy and his professional reputation as someone who can maintain important confidences. *See Mid-Atl. Equity Consortium v. U.S. Dep't of Educ.*, 793

34

F. Supp. 3d 166, 193 (D.D.C. 2025) (PLF) (concluding that reputational injuries may "suffice to establish irreparable harm"); *Council on Am.-Islamic Rels. v. Gaubatz*, 667 F. Supp. 2d 67, 76–77 (D.D.C. 2009) (CKK) (concluding that public disclosure of private information, including attorney-client privileged information, may constitute irreparable harm).

    For all these reasons, Petitioner Richman has made a sufficient showing of irreparable harm, and this factor weighs in favor of ordering the return of the files at issue.

d.    *Petitioner Richman has no adequate remedy at law.*

    The fourth and final factor also weighs in Petitioner Richman's favor: for many of the same reasons that his interest is compelling and his injury is irreparable, he has no adequate remedy at law. The equitable remedy of ordering the return of property is therefore proper here.

    The Government argues that Petitioner Richman has an adequate remedy at law because he could bring a *Bivens* action for damages against the Government agents who unlawfully seized and searched his property. Gov't's Opp'n & Mot, Dkt. No. 12, at 15 n.10; *see Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 389 (1971). This argument is unavailing.

    Even assuming—without deciding—that Petitioner Richman has a viable *Bivens* claim, *cf. Egbert v. Boule*, 596 U.S. 482, 492–93 (2022), an action for damages is not an "adequate" remedy for the harms at issue here. Petitioner Richman has shown a substantial invasion of his right to the privacy of, among other things, his personal and professional communications, including communications that are subject to the attorney-client privilege. This interference with his privacy is a significant non-monetary injury that is not fully redressable by damages alone. *See United States v. Calandra*, 414 U.S. 338, 355 n.10 (1974) (noting that a person aggrieved by an unlawful search and seizure could seek *both* damages and return of the illegally seized property to "redress the injury to his privacy" and "prevent a further invasion in the future").

35

Similarly, allowing the Government to retain Petitioner Richman's files burdens his reputation and professional activities in ways that cannot be completely redressed by monetary damages. If Petitioner Richman's students, colleagues, and clients cannot depend on the confidentiality of their communications with him, they may be less likely to seek him out for advice or to communicate candidly with him in the future. *See In re Search Warrant Issued June 13, 2019*, 942 F.3d 159, 175 n.16 (4th Cir. 2019), *as amended* (Oct. 31, 2019).

Unless and until Petitioner Richman receives an order ending the Government's ongoing interference with his property, the burden on his constitutional right against unreasonable searches and seizures and on his professional activities will continue. Accordingly, he has no adequate remedy at law. The only remedy that would provide complete redress is an order requiring the Government to return the property at issue.

In sum, all four of the *Ramsden/Richey* factors weigh in favor of exercising equitable jurisdiction to order the Government to return Petitioner Richman's property to him.

        2.    <u>Generally applicable principles of equity also weigh in favor of exercising jurisdiction to order the return of Petitioner Richman's property.</u>

Because the D.C. Circuit has not decided whether the factors identified in *Ramsden* and *Richey* provide the proper framework for evaluating the Court's jurisdiction to award the return of property under Rule 41(g), the Court next considers whether such an award is proper under generally applicable principles of equitable jurisdiction and remedies in the federal courts. It is.

Congress has conferred on the federal courts a broad equity jurisdiction that is coextensive with the historical jurisdiction of the High Court of Chancery in England. *See Trump v. CASA, Inc.*, 606 U.S. 831, 841 (2025) (identifying the Judiciary Act of 1789, § 11, 1 Stat. 78, as the source of this jurisdiction); *see also Payne v. Hook*, 74 U.S. 425, 430 (1868) (concluding that "[t]he equity jurisdiction conferred on the Federal courts is the same that the

High Court of Chancery in England possesses"); *cf.* Jack L. Goldsmith, *A Legal Mistake at the Heart of Trump v. CASA?*, *Executive Functions* (July 11, 2025), https://perma.cc/3HQD-58T5 (arguing that the precursor to 28 U.S.C. § 1331, the Jurisdiction and Removal Act of 1875, is the relevant historical origin of federal courts' equitable jurisdiction over suits like this one in which jurisdiction is based on the existence of a federal question).

Under this broad grant from Congress, the issue of equitable jurisdiction is not generally a matter of "whether the claim falls within the limited jurisdiction conferred on the federal courts," but rather an issue of whether federal courts may exercise their remedial powers "consistently with the principles governing equitable relief." *Schlesinger v. Councilman*, 420 U.S. 738, 754 (1975). In this analysis, the central question is whether the relief sought is sufficiently analogous to relief that was "'traditionally accorded by courts of equity' at our country's inception." *CASA*, 606 U.S. at 841 (quoting *Grupo Mexicano de Desarrollo, S. A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 319 (1999)); *see also Goodluck v. Biden*, 104 F.4th 920, 924 (D.C. Cir. 2024) ("[U]nless Congress expressly provides otherwise, equitable remedies must track remedies traditionally afforded by the equity courts.").

Accordingly, the Court's focus turns to whether the return of property is a remedy that is "consistent[] with the principles governing equitable relief," *Schlesinger*, 420 U.S. at 754, and of a kind that was "traditionally accorded by courts of equity" at the relevant times in our Nation's history, *see Grupo Mexicano*, 527 U.S. at 319.

Under general equitable principles, the return of Petitioner Richman's property is a proper remedy. Foremost among the "well-established principles governing the award of equitable relief in federal courts" is the rule that such relief is available only upon a showing of both "irreparable injury and inadequacy of legal remedies." *Amoco Prod. Co. v. Vill. of*

*Gambell, AK*, 480 U.S. 531, 542 (1987).  As the Court has already concluded, Petitioner Richman has made both of these showings.  *See supra* Section III.D.1.c, d.  Another important limit is the principle that "courts cannot order relief that conflicts with a clear and constitutionally valid statute."  *Goodluck v. Biden*, 104 F.4th 920, 924 (D.C. Cir. 2024) (citing *Hedges v. Dixon Cnty.*, 150 U.S. 182, 192 (1893), and *Rees v. City of Watertown*, 86 U.S. (19 Wall.) 107 (1874)).  The Government has identified no such statute that would preclude the equitable relief that Petitioner Richman seeks.  *See generally* Gov't's Opp'n & Mot, Dkt. No. 12. Finally, federal courts will award permanent equitable remedies only if such relief is warranted after accounting for the "balance of hardships" between the parties and if "the public interest would not be disserved" by the relief sought.  *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 157 (2010) (quoting *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006)).  Here, the balance of hardships weighs in Petitioner Richman's favor, and awarding the relief that he seeks is consistent with the public interest.  Neither the Government nor the public has any legitimate interest in the perpetuation of unlawful Government action.  *League of Women Voters of United States v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016).  The Court can also fashion a remedy that adequately protects the Government's interest in future lawful access to the information at issue.  *See infra* Section III.E.  Meanwhile, Petitioner Richman has a compelling countervailing interest in regaining the privacy of his sensitive personal and professional information.

Finally, ordering the return of property is a form of relief "traditionally accorded by courts of equity."  *Grupo Mexicano*, 527 U.S. at 319.  This relief is closely analogous to the traditional remedies available in actions for replevin, which allowed a party to regain possession of personal property that was wrongfully taken, and detinue, which allowed a party to regain possession of personal property held by another when the petitioning party had a superior claim

to immediate possession.  *See Fuentes v. Shevin*, 407 U.S. 67, 78 (1972); *Maggio v. Zeitz*, 333
U.S. 56, 63 (1948); 3 W. Holdsworth, *History of English Law* 284–85, 322–27 (1927).

Accordingly, the Court concludes that under either the *Ramsden*/*Richey* factors or
generally applicable principles of equitable jurisdiction and remedies, ordering the return of
Petitioner Richman's property is an appropriate remedy for the violation of his Fourth
Amendment right against unreasonable searches and seizures.

3.      <u>Contrary to the Government's argument, Petitioner Richman's Rule 41(g)<br>motion is not "actually a collateral motion to suppress" evidence.</u>

The Government devotes most of its brief to the argument that Petitioner Richman's
motion must be denied because it functions as an improper substitute for a motion to suppress
evidence in a potential future prosecution of Mr. Comey.  *See* Gov't's Opp'n & Mot. at 2, 7–17.
This argument misses the mark, for two reasons.

*First*, for all the reasons the Court shall explain in the following two sections of this
Memorandum Opinion, granting Petitioner Richman's motion will not have the effect of
suppressing evidence in any future prosecution of Mr. Comey.  *See infra* Sections III.D, III.E.
The Court is not in any way opining on or precluding the Government's presentation of evidence
in any future proceeding involving Mr. Comey or any other person not before the Court.

*Second*, although the Government attempts to construct a distinction between *proper*
Rule 41(g) motions for return of property and *improper* motions that serve to suppress evidence,
the authorities on which it relies to do so are inapposite.  *See* Gov't's Opp'n & Mot. at 7–9.  As
Petitioner Richman correctly notes, each of the cases on which the Government relies for this
proposition concerns the issue of appellate jurisdiction over Rule 41(g) orders, which often
hinges on whether the order is a final order in a freestanding case seeking the return of property
or functionally just one among many motions—including suppression motions—that are

39

properly grouped into a single ongoing criminal case.  *See* Pet'r's Reply at 6–8.  In that context, it makes sense to draw a sharp distinction between a Rule 41(g) motion filed by a defendant, which may play the same function as a motion to suppress and therefore not be directly appealable, and a similar motion filed by a nonparty, which may be final immediately upon entry.  *See id.*  In the trial court context, by contrast, the possibility of an indirect effect on a pending criminal matter is just one among many equitable considerations for the Court to weigh, not a cause for categorically different treatment of the Petitioner's motion.

In short, this Court's order will appropriately minimize any burdens on the Government's ability to investigate and prosecute a related criminal case, and the Government has not shown that a possible indirect effect on a related criminal prosecution is cause for categorically rejecting Petitioner Richman's Rule 41(g) motion.

\*     \*     \*

For all these reasons, the Court shall **GRANT** Petitioner Richman's [1] Motion for Return of Property and order the Government to return to him all copies of the relevant materials that are currently in the possession of the United States.

**D.    However, Petitioner Richman is not entitled to a prospective order limiting the Government's use of information derived from the covered materials in other investigations or proceedings.**

Finally, Petitioner Richman requests an order barring the Government from "using or relying on in any way" the information derived from the image of his laptop.  *See* Pet'r's Rule 41(g) Mem. at 26; *see also id.* at 19 (arguing that the Government should be "barred from using evidence obtained from" the image in its case against Mr. Comey).  This remedy would be broader than an order for return of property to which Petitioner Richman is entitled.  It would not only deprive the Government of the opportunity to use Petitioner Richman's materials as evidence, but it would also presumably bar the Government from presenting testimony or

pursuing investigative leads based on what Government agents learned by reviewing those materials before returning them.  Such a broad order might also bar the Government from seeking to obtain the materials again in the future by obtaining a valid search warrant from a judicial officer.

For two reasons, this Court concludes that although Petitioner Richman is entitled to the return of the improperly seized and searched materials at issue here, he is not entitled to an order preventing the Government from "using or relying on" those materials in a separate investigation or proceeding, as long as they are obtained through a valid warrant and judicial order.

*First*, an order barring the Government from "using or relying on" the covered materials would not be well-tailored to the specific irreparable harms that entitle Petitioner Richman to equitable relief.  When fashioning a prospective equitable remedy for these harms, this Court must take care to ensure that any injunction is not "broader than necessary to provide complete relief to each plaintiff with standing to sue." *Trump v. CASA, Inc.*, 606 U.S. 831, 861 (2025); *see also Zukerman v. U.S.P.S.*, 64 F.4th 1354, 1365 (D.C. Cir. 2023).  Here, Petitioner Richman has established an ongoing constitutional injury to his right to be free from unreasonable seizures, as well as cognizable ongoing harms to his compelling interest in the privacy of his personal and professional communications.  *See* Pet'r's Mot. at 12–18, 23–24.  An order requiring the Government to return all copies of the covered materials to him substantially redresses these specific injuries.  *See infra* Section III.D.  By contrast, a broader order barring the Government from relying on the image in other ways—for example, by pursuing investigative leads against other people because of information found in the image before its return—would not substantially mitigate Petitioner Richman's own injuries.

*Second*, binding precedent precludes this Court from preventing the use of evidence in a future criminal prosecution of any person other than Petitioner Richman.  Most fundamentally, it is doubtful that this Court would have equitable jurisdiction to enter such an order.  *See Douglas v. City of Jeannette*, 319 U.S. 157, 163 (1943) ("It is a familiar rule that courts of equity do not ordinarily restrain criminal prosecutions.").  Furthermore, the D.C. Circuit has held that the Fourth Amendment does not entitle a person whose property has been wrongfully searched or seized to block the Government from using any resulting evidence in the criminal prosecution of another person.  *See United States v. Kember*, 648 F.2d 1354, 1366 (D.C. Cir. 1980).  The Supreme Court has also overruled lower courts' use of supervisory powers to bar the introduction of such evidence except when the victim is the defendant, cautioning that its decisions "have established beyond any doubt that the interest in deterring illegal searches does not justify the exclusion of tainted evidence at the instance of a party who was not the victim of the challenged practices."  *United States v. Payner*, 447 U.S. 727, 735–37 (1980).  Consistent with these precedents, the commentary to the provision that is now Rule 41(g) notes that the rule "is not intended to deny the United States the use of evidence permitted by the fourth amendment and federal statutes, even if the evidence might have been unlawfully seized."  *See* Fed. R. Crim. P. 41 advisory committee's note to 1989 amendments (referring to the relevant provision by its former designation, "Rule 41(e)"); *accord United States v. Nocito*, 64 F.4th 76, 80 (3d Cir. 2023) (noting that "Rule 41(g) does not serve the same purpose as the exclusionary rule, nor is a motion for the return of property an effective means for suppressing evidence").  Under these controlling precedents, this Court concludes that Petitioner Richman is not entitled to an order that directly limits the use of the evidence at issue in a criminal prosecution of another person.

Accordingly, the Court shall **DENY** Petitioner Richman's Motion to the extent that it seeks an order precluding the Government from using or relying on information derived from the materials at issue in another proceeding.

### E.    To protect lawful access to Petitioner Richman's property and preserve its availability for use in future proceedings, the Court shall allow the Government to deposit one complete copy with a court for safekeeping.

Rule 41(g) provides that, if a court orders property to be returned to a movant aggrieved by an unlawful search and seizure, it "may impose reasonable conditions to protect access to the property and its use in later proceedings." Fed. R. Crim. P. 41(g).

Under the circumstances presented here, the Court concludes that such "reasonable conditions" include a provision allowing one complete copy of the materials at issue to be preserved for potential future proceedings in the custody of a neutral third party—specifically, a court. *See id.*

Specifically, the Court shall allow the Government, before returning the materials at issue to Petitioner Richman, to create one complete electronic copy of those materials and deposit that copy, under seal, with the U.S. District Court for the Eastern District of Virginia, for future access pursuant to a lawful search warrant and judicial order. The U.S. District Court for the Eastern District of Virginia, which shall have supervisory authority over access to this material, may then exercise its discretion in evaluating any future application for a warrant, including deciding whether to allow Petitioner Richman an opportunity to move to quash any such warrant before it is executed.

Although Petitioner Richman has asserted claims of attorney-client privilege over certain specific files in the materials at issue, the Court will allow the Government to deposit a complete copy of the materials—including potentially privileged files—because the Court recognizes that it is likely to be impractical to separate privileged material from non-privileged material without

permanent data loss.  *See Digital Devices II*, 2022 WL 998896, at *13 ("Rule 41 recognizes that data stored in cell phones or other electronic storage media is a cohesive unit, in which responsive and non-responsive data are intermingled, and likely must be preserved in its entirety to be forensically sound."); Pet'r's Ex. A, Dkt. No. 2-2 at 37–45 (under seal) (explaining why it is often necessary to preserve an entire copy of a digital device to perform a forensic search).

　　　　Allowing the Government to preserve a complete copy of the relevant materials in the custody of a neutral third party, in this case the U.S. District Court for the Eastern District of Virginia, permits the Court to redress the specific legal wrong that Petitioner Richman has established without unduly burdening the interests of the Government or the public at large.  In other cases, courts have exercised their discretion under Rule 41(g) to allow the Government to create copies of files and preserve those copies in the Government's own records before returning the originals to aggrieved movants.  *See, e.g.*, *J.B. Manning Corp. v. United States*, 86 F.3d 926, 928 (9th Cir. 1996).  Here, however, the Court has concluded that the Government has not maintained the files at issue in a manner that adequately protects Petitioner Richman's right to be free from unreasonable searches and seizures.  *See supra* Section III.B.  Allowing the Government to retain a copy in its own possession therefore would not provide adequate redress to Petitioner Richman.  Meanwhile, requiring the Government to return all copies of the files to Petitioner Richman could unduly impede the Government's interests in pursuing future investigations and prosecutions if—as the Government strongly suggests in its briefing—it intends to pursue further prosecution of Mr. Comey.  *See supra* Section III.C.  The appropriate way to balance these interests, and to provide redress to Petitioner Richman without transforming his motion into a "collateral (and premature) motion to suppress evidence in another criminal proceeding," *see* Gov't's Opp'n & Mot. at 7, is to allow a copy of the files to be retained for

safekeeping in the custody of a court in the Eastern District of Virginia as a neutral third party. Because the Government has represented that the evidence at issue may be relevant to an investigation and potential prosecution in the Eastern District of Virginia, depositing the evidence under seal with the District Court for that District is the appropriate course of action.

      **F.**      **The remaining requests for relief in Petitioner Richman's Motion for Temporary Restraining Order and the Government's Motion to Dissolve the Court's Temporary Restraining Order are both moot.**

Finally, because the Court has resolved this matter on the merits and awarded a remedy that provides appropriate relief to Petitioner Richman without preventing the Government from conducting any future investigation or prosecution, both the remaining requests for relief in Petitioner Richman's [9] Motion for Temporary Restraining Order and the Government's [12] Motion to Dissolve Temporary Restraining Order are **MOOT**. The Court's [10] Order dated December 6, 2025, will be superseded in all material respects by the Order accompanying this Memorandum Opinion To preserve the status quo until the Court's Order is effectuated, the Court shall **EXTEND** all provisions of its [10] Order dated December 6, 2025, until the Government certifies its compliance with the Order accompanying this Memorandum Opinion.

Accordingly, the Court shall **DENY AS MOOT** both the remaining requests for relief in Petitioner Richman's [9] Motion for Temporary Restraining Order and the Government's [12] Motion to Dissolve.

*    *    *

## IV. CONCLUSION

For the foregoing reasons, the Court shall:

**GRANT** Petitioner Richman's [1] Motion for Return of Property;

**ORDER** that the Government may prepare one complete copy of the electronic files at issue in Petitioner Richman's motion and deposit that copy, under seal, in the U.S. District Court for the Eastern District of Virginia, for future access pursuant to a lawful search warrant and judicial order;

**ORDER** the Government to return to Petitioner Richman all copies of the electronic files at issue in his motion, except for the single copy that the Court has allowed to be deposited with the U.S. District Court for the Eastern District of Virginia;

**ORDER** the Attorney General of the United States to certify to this Court with specificity, no later than **4:00 p.m. ET on Monday, December 15, 2025**, that the Government has taken each of the steps required by the Court and has not made or retained any additional copies of the files that the Court has ordered be returned to Petitioner Richman;

**ORDER** that all provisions of the Court's [10] Order dated December 6, 2025, are **EXTENDED** until the Government certifies its compliance with the Order accompanying this Memorandum Opinion; and

**DENY AS MOOT** the remaining requests for relief in Petitioner Richman's [9] Motion for a Temporary Restraining Order and the Government's [12] Motion to Dissolve Temporary Restraining Order.

An appropriate Order accompanies this Memorandum Opinion.

**Dated:** December 12, 2025

COLLEEN KOLLAR-KOTELLY
United States District Judge

46