IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

DANIEL RICHMAN,

                     Petitioner,

         v.

UNITED STATES OF AMERICA,

                     Respondent.

1:25-mc-00170-CKK

**RESPONSE OF PETITIONER DANIEL RICHMAN TO THE COURT'S
DECEMBER 18, 2025 AND DECEMBER 19, 2025 ORDERS**

Petitioner Daniel Richman submits the following response to the Court's Orders dated December 18 and 19, 2025. In those Orders, the Court directed Professor Richman to address: (1) "the Government's argument that the Court should permit the Government to deposit a copy of Petitioner Richman's materials with the Department of Justice's Litigation Security Group instead of the District Court in the Eastern District of Virginia"; and (2) "whether the hard drive that Petitioner Richman consented to have imaged by the Government was returned to Petitioner Richman, and, if so, whether any of the specific material had been removed from the hard drive that was returned."

For the reasons set forth below, Professor Richman objects to the government's request to deposit his materials with the Department of Justice's Litigation Security Group ("LSG") instead of the District Court in the Eastern District of Virginia (the "EDVA District Court"). With respect to the hard drive, Professor Richman can confirm that *a* hard drive was returned to him, but he does not know whether it was the same drive he provided to the government. Based on the government's 2019 and 2020 warrant applications, though, it appears that it was not.

1

**I.  THE DEPARTMENT OF JUSTICE SHOULD NOT BE PERMITTED TO RETAIN COPIES OF THE COVERED MATERIALS, WITH LSG OR ELSEWHERE**

Professor Richman strongly objects to the government's *post-hoc* request to deposit the covered materials with LSG rather than the EDVA District Court.

By means of brief background, on December 12, 2025, the Court granted Professor Richman's Rule 41(g) motion and gave a clear instruction: the government was to "return to Petitioner Richman all copies of the covered materials," with the exception of "one complete copy of the covered materials," which the Court authorized the government to "prepare" and "deposit . . . under seal, in [the EDVA District Court], for future access pursuant to a lawful search warrant and judicial order."  ECF No. 20.  As the Court correctly explained in its accompanying Memorandum Opinion, in light of the government's previous failure "to maintain [Professor Richman's] files in a manner that adequately protects [his] right to be free from unreasonable searches and seizures," "[a]llowing the Government to retain a copy *in its own possession* . . . would not provide adequate redress to Petitioner Richman."  ECF No. 21 at 44 (emphasis added). Since December 12, the government has filed a litany of motions and other papers with meritless, half-formed, and insufficiently predicated arguments that, even if not specifically calculated to create unnecessary confusion and delay, have certainly had that effect.[1]  In a filing submitted on

---

[1] Although presented as requests for "clarification," these seriatim, repetitive filings essentially seek the same thing: that the Court reconsider its decision.  For example, on December 18, the government sought permission to create a new copy of the covered materials for the purpose of sharing it with Professor Richman.  *See* ECF No. 32.  But the Court has not ordered the government to give Professor Richman a copy of the materials.  It has ordered the government to "return . . . all copies of the covered materials" and certify that it "has not made or retained any additional copies."  ECF No. 20 at 1–2.  Similarly, in its December 19 submission, the government claimed confusion about the Court's statement that it "has not ordered the Government to delete or destroy evidence" given the Court's instruction that the government not retain "copies of the covered materials."  ECF No. 33 at ¶ 2(d).  But there is no conflict.  The government has materials that it obtained from Professor Richman.  These, at the risk of stating the obvious, are "evidence."  It then appears to have made myriad copies of pieces of that evidence (authorized and otherwise).

December 18, which was supposed to "recommend best practices on safekeeping evidence that will be deposited with [the EDVA District Court]," ECF No. 27 at 1, the government disclosed that it had "lodged a complete copy of the covered materials (including classified information) . . . with a Classified Information Security Officer in Washington, DC." ECF No. 31 at 1 n.1.  It is not clear whether this "complete copy" is the same set the government originally prepared for the purpose of lodging it with the EDVA District Court, but which it provided instead to another office of the Department of Justice (without the Court's authorization), or another new set (created without the Court's authorization).  But, at a minimum, as the Court has already recognized, in either event it constitutes "shar[ing], disseminat[ing], or disclos[ing]" the covered materials in violation of the Court's December 6, 2025 order, ECF No. 10.  *See* ECF No. 34 at 1.

In its December 18 and 19 submissions, the government requested that the copy of the covered materials it lodged with LSG without the Court's permission be allowed to remain there, rather than with the EDVA District Court.  The Court should promptly deny this request.

---

*See* ECF No. 22 at 5 ("The Government further understands that copies of portions of the relevant files are in the possession of government personnel (e.g., having been printed, saved locally, or emailed)."). These are "copies." The Court's order is simple: provide a full set of the original evidence to Professor Richman, provide a full set of the original evidence to the EDVA District Court (if the government wishes to do so), and either return any additional copies to Professor Richman or delete them, such that nothing remains in the government's possession.

In any event, for the reasons set forth in the December 12 Memorandum Opinion, Professor Richman's previous briefing, and this filing, the Court assuredly should not reconsider its decision based on these or any of the government's submissions.  Indeed, the government's recent submissions—and the facts included in them—powerfully reinforce the need for the Court to stand by its decision and ensure that the government swiftly comply with it.

The government's purported concerns about chain of custody and the EDVA District Court's ability to safeguard classified information[2] are a smokescreen. Federal courts regularly store classified material. Indeed, the EDVA District Court, in particular, has handled many of the most sensitive national security matters in the recent history of the United States.[3] As the government well knows (or at least should know), such cases regularly require judges, their clerks, and their staff to receive, review, generate, and store classified information. *See, e.g.*, Classified Information Procedures Act ("CIPA"), Title 18, U.S.C. App III.

The government ignores that manifest fact and claims that the only way for such information to be stored is with one of its own employees, a Classified Information Security Officer ("CISO"), who works for one of its own departments, LSG. ECF No. 33 at ¶¶ 1(a)-(f). That is simply false. The EDVA District Court plainly can store classified information[4]—and certainly a single memorandum classified at the Confidential level.[5] To the extent the government

---

[2] As previously noted, the classified information in question appears to be a single memorandum that was unclassified at the time it was shared with Professor Richman but was later "up-classified" to the lowest level of classification: Confidential. *See* ECF No. 30 at 4.

[3] *See*, *e.g.*, *United States v. Lee*, No. 18-cr-89 (E.D. Va. 2019) (espionage conspiracy prosecution of former CIA case officer); *United States v. Rahman* No. 24-CR-249 (E.D. Va. 2025) (prosecution of a CIA analyst for leaking classified information); *United States v. Elsheikh*, No. 20-cr-239-2 (E.D. Va. 2024) (terrorism prosecution of highest-ranking ISIS fighter prosecuted by the United States); *United States v. Kiriakou*, No. 12-cr-127 (E.D. Va. 2012) (prosecution of former CIA operations officer for leaking the identity of a covert CIA officer); *United States v. Hanssen*, No. 01-cr-00188-1 (E.D. Va. 2001) (espionage prosecution of former FBI agent); *United States v. Ames*, No. 94-cr-00166-A (E.D. Va. 1994) (espionage prosecution of former senior CIA officer); *United States v. Moussaoui*, No. 01-455-A (E.D. Va. 2001) (terrorism prosecution of al Qaeda operative).

[4] For at least two decades, and very likely far longer than that, there has been a sensitive compartmented information facility ("SCIF") in the EDVA District Court courthouse. *See United States v. Regan*, 281 F. Supp. 2d 795 (E.D. Va. 2002) (referencing use of a courthouse SCIF).

[5] Indeed, material classified at the lowest classification level, Confidential, can be stored outside a SCIF in a GSA-approved safe or cabinet. *See* 32 C.F.R. § 2001.43(b)(1), (3).

claims otherwise, it should be directed to put in an affidavit setting forth its position that the EDVA District Court is not equipped to store classified information.[6]

To address its purported concerns about safeguarding chain of custody, the government need merely place a copy of the materials in a sealed evidence bag and have an agent deliver the bag to the courthouse for storage in a SCIF or other locked, access-controlled space. In the event the government later obtains judicial authorization to access the covered materials, an agent can pick up the sealed evidence bag and confirm that it remains sealed. This is more than sufficient to "demonstrate that, 'as a matter of reasonable probability,' possibilities of misidentification and adulteration have been eliminated." *United States v. Mejia*, 597 F.3d 1329, 1335 (D.C. Cir. 2010) (citation omitted) (stating the government's burden for establishing chain of custody).

Plainly, there is neither a legitimate chain-of-custody problem nor a problem with judicial storage of classified material.[7] But LSG—*i.e.*, the Department of Justice—keeping a copy of the materials would be a problem—and a big one. For the reasons set forth in the Court's December 12 Memorandum Opinion, the fox must not be permitted to guard the henhouse.

Given the history of this case—including both the underlying facts that led this Court to find callous disregard towards Professor Richman's constitutional rights and the very recent violation of this Court's order against sharing, disseminating, or disclosing the covered materials— the government's contention that "[i]t is not clear what Fourth Amendment interest would be served by ordering the 'return' of copies of information . . . that the government continues to

---

[6] If it cannot, the Court should inquire as to the basis for the government's prior representations, including this one: "it is not clear to the Government that [the materials] could properly have been provided to the Clerk for [the EDVA District Court]." ECF No. 33 at ¶ 1(f).

[7] Depositing the covered materials with the EDVA District Court also has the benefit of addressing any purported concerns the government has with respect to its preservation obligations in the *Comey* case, *see generally* ECF Nos. 22, 33, while ensuring that the EDVA District Court retains jurisdiction with respect to any future search warrant the government may seek.

possess" strains credulity. ECF No. 33 at 4. Frankly, and with all due respect, at this point, and in light of the foregoing, it would be naïve to simply presume government compliance.

Per the Court's order, the government is permitted to lodge a copy of the covered materials with the EDVA District Court, but the government's own prior actions dictate that it should not be permitted to serve as the materials' custodian. *See* Fed. R. Crim. Pro. 41 Advisory Committee's Note to 1989 Amendment ("[I]n some circumstances . . . equitable considerations might justify an order requiring the government to return or destroy all copies of records that it has seized."); *United States v. Comprehensive Drug Testing, Inc.*, 621 F.3d 1162, 1174 (9th Cir. 2010) ("When, as here, the government comes into possession of evidence by circumventing or willfully disregarding limitations in a search warrant, it must not be allowed to benefit from its own wrongdoing by retaining the wrongfully obtained evidence or any fruits thereof.").

As the Court has already found, the EDVA District Court is well-situated to ensure that any future access by the government to the covered materials is lawful, including by affording Professor Richman an opportunity to be heard in connection with any future warrant application. ECF No. 24 at 4. In making this finding, the Court has endeavored to ensure that, in any such future effort, the government complies with the Constitution and does not gain any improper advantage from its prior violations of it.

The Court should adhere to its previous ruling for all the reasons set forth in the December 12 Memorandum Opinion and Petitioner's prior briefing, and should deny the government's request to allow LSG to maintain a copy of the materials in lieu of the EDVA District Court. Shifting possession of Professor Richman's materials from one Department of Justice office to another is inconsistent with the law and the fundamental principles animating this Court's Orders. The Court was *fully* within its equitable powers to craft the relief that it did, particularly given the

government's past conduct—and as powerfully demonstrated by its recent conduct.[8]  *See* ECF No. 21 at 3.  Consistent with the Court's December 12 Order, the government should retain no copies of the covered materials.

## II. IT IS NOT CLEAR WHETHER THE GOVERNMENT RETAINED THE HARD DRIVE THAT IT SEIZED IN 2017, BUT IT APPEARS THAT IT DID

### A. Background

The government returned *a* hard drive to Professor Richman in 2017 inside his Apple iMac computer (the "Computer"), but he does not know whether it was the same one he provided to the government.  However, it appears from the record that the government may have improperly kept the original hard drive and installed a replacement in the Computer.  It also appears from the record that the government may have made at least four forensic copies of the drive.

The fact that the Department of Justice may presently hold five copies of the data from Professor Richman's Computer—in addition to his iCloud backups and his Columbia University email communications—powerfully highlights the breadth of the government's violation of, not only Professor Richman's constitutional rights, but his basic expectation of privacy.  It warrants a brief review of the breadth of the unlawfully seized, retained, and searched materials, as set forth in prior briefing:

> [The seized materials] constituted, effectively, the entirety of Professor Richman's digital life—including all of his personal and professional communications and all of his electronic documents and files. . . . [T]he Hard Drive contained a forensic image of Professor Richman's personal computer, as well as backup files for Professor Richman's iPad and iPhone.  The iCloud Account contained application data, photographs, and

---

[8] The government's suggestion that the Court's order is inconsistent with *United States v. Bein* and *Peloro v. United States* is baseless.  *See* ECF No. 33 at 5.  While both cases stated that "the return of property" is the "one specific remedy" of Rule 41(g), they did so in stating that Rule 41(g) does not authorize the award of monetary damages.  *See United States v. Bein*, 214 F.3d 408, 413 (3d Cir. 2000); *Peloro v. United States*, 488 F.3d 163, 176–77 (3d Cir. 2007).  Neither considered the scope of the Court's equitable powers in crafting a remedy under the Rule.

>messages. The Columbia Accounts were Professor Richman's principal email addresses for professional and personal use during the relevant period. The emails obtained from the Accounts included, among other things, correspondence concerning highly sensitive matters related to students and faculty appointments, and communication with federal judges, including in connection with student applications for law clerk positions. Unsurprisingly, given Professor Richman's occupation, his Files also contained a significant quantum of privileged information involving multiple clients. . . . [Those] Files also include sensitive personal documents, including his own and family members' medical records, and comprehensive financial records.

ECF No. 9-1 at 6–7, 29 (citations omitted) (Memorandum of Law in Support of Petitioner Daniel Richman's Motion for Temporary Restraining Order).

### B. The 2017 Consent and Professor Richman's Understanding of Which Hard Drive Was Returned to Him

After Professor Richman signed the June 13, 2017 consent, the government took temporary possession of his Computer, which contained an internal hard drive. As noted in the consent, Professor Richman agreed to allow the government to create a forensic image of the drive and delete four documents—memoranda written by James Comey that the government believed were potentially classified.[9] The government subsequently returned the Computer to Professor Richman with an internal hard drive that did not include the four documents in question. Professor Richman never opened the Computer physically to inspect the hard drive after it was returned by the government and no longer possesses it. Declaration of Nicholas J. Lewin ("Lewin Decl.") at ¶¶ 5, 6. However, if the government in fact kept the original drive and gave Professor Richman a replacement (as discussed in Part II.C below), that would have violated the consent, as Professor Richman did not consent to the government keeping any of his devices.

---

[9] None of these memoranda were classified at the time Professor Richman received them. One was subsequently "up-classified" to Confidential.

### C. The Search Warrants Indicate the FBI Made Multiple Forensic Copies and Committed Additional Violations of the Consents and the Constitution

Rather than helping to clarify the government's actions, the subsequent search warrants aimed at Professor Richman's hard drive (attached as Sealed Exhibits A and D to Professor Richman's Rule 41(g) motion; collectively the "Hard Drive Warrants") only muddy the waters. *See* ECF Nos. 2-2 (Hard Drive Warrant #1), 2-5 (Hard Drive Warrant #2). Indeed, a close review of the Hard Drive Warrants suggests the possibility of both: (i) a violation of the terms of Professor Richman's initial consent; and (ii) *yet another* FBI action that was contrary to the judicial authorization in *at least* Hard Drive Warrant #1.

Back in 2017, Professor Richman's Computer contained an internal hard drive with a serial number ending in ████████████████████████████████████████████████████████. In June 2017, as explained above, Professor Richman voluntarily gave consent to the FBI to create a forensic image of the ████ Hard Drive and to delete the documents in question—and physically handed over the Computer to the FBI to that end. ████████████████. Professor Richman did *not* give the FBI consent to physically seize the ████ Hard Drive. *See id.* Rather, the FBI was authorized to make a forensic image of the ████ Hard Drive, to delete four specific documents from the ████ Hard Drive, and then to return the Computer—including the ████ Hard Drive—to him. *See id.*

As the Court knows, about two years later, in August 2019, the FBI obtained a warrant to search a forensic image of Professor Richman's hard drive. *See generally id.* This was Hard Drive Warrant #1, which sought permission to ████████████████████████████████████████████████████████████████████████████████████████████████

---

10 ████████████████████████████████████████████████████████████████

9

███████████████. ████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████ If ███████████████████████

████████████████████████████████████████████████

then it appears that the FBI unlawfully seized and retained the original hard drive ██████

██ in violation of the consent. It would of course also suggest that the FBI still retains unlawful possession of the ██ Hard Drive (in addition to the ██ Hard Drive).

It appears that the FBI also made and maintained multiple other forensic images of the ██ Hard Drive. ████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████

---

[11] It does not appear that the agent disclosed to the Judge in the Hard Drive Warrant #1 application that ██████████████████████████████████████████████████████████████████████████████.

When the FBI "processed a copy," ▮, of the ▮ Hard Drive in May 2020, it may have violated the court order ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬.

In light of the foregoing, it appears that: (1) the FBI improperly retained the original ▮ Hard Drive from Professor Richman's Computer; (2) the FBI created at least three additional copies of that drive: (a) Forensic Copy ▮, (b) the ▮ Hard Drive, and (c) the ▮ Hard Drive; and (3) the FBI may have unlawfully accessed the ▮ Hard Drive in May 2020 to create the ▮ Hard Drive. In addition, it is a fair inference from the facts that the FBI created at least a fourth forensic copy of the ▮ Hard Drive, which it provided to the Department of Justice's Office of the Inspector General ("OIG") in response to the September 2017 consent signed by Professor Richman—another forensic copy which may be in the possession of the Department of Justice.

To the extent the government retained the original ▮ Hard Drive, as strongly suggested ▬▬▬▬▬▬▬▬▬▬▬▬, that original drive should be treated as "covered materials," along with all of the other forensic copies of the same, for purposes of the Court's orders requiring the return of the covered materials and prohibiting the government from accessing, sharing, disseminating, disclosing, or transferring those materials.[12]

---

[12] For the avoidance of doubt, if this or any storage device in the government's possession includes the classified memorandum, Professor Richman continues to consent to the deletion of that document from such device prior to its return to him.

11

## III.   CONCLUSION AND PROPOSED ORDER

Professor Richman respectfully suggests that the next steps here are clear—and clearly warranted—and that the Court should order the following, which is also set forth in the attached Proposed Order:

Step One – Deliver Full Copy Set to the EDVA District Court: By a date certain, the government should be directed to deliver the full copy set of the covered materials that is currently in the possession of LSG to the EDVA District Court.  *See* ECF No. 20 at 1.  To the extent the government believes it is necessary, it should be permitted to have a chain-of-custody FBI agent accompany the DOJ CISO for this delivery; and to the extent that these materials contain the purportedly classified memorandum, those materials may be stored in the SCIF or a GSA-approved security container located in the Alexandria federal courthouse.

Step Two – Return of All Electronic Storage Devices Containing Original or Forensic Copies: By a date certain, the government should be directed to identify all electronic storage devices (including, but not limited to, hard drives, USB drives, and optical discs) constituting or containing Professor Richman's original seized materials or forensic copies of those materials, and return them to Professor Richman through counsel.  To whatever extent the purportedly classified memorandum is stored on any such device, the government should be permitted to permanently delete that file prior to returning that device.[13]

---

[13] Alternatively, with respect to the classified document, as set forth in Professor Richman's December 17, 2025 filing (ECF No. 30 at 4), the Court could also consider directing the government to either (1) permanently delete and destroy any electronic storage device on which that memorandum is or was saved and certify the same to the Court; or (2) via the DOJ CISO, return any electronic storage device(s) containing that memorandum to undersigned counsel—who maintains an active Top Secret//Sensitive Compartmented Information clearance—to be stored in the defense SCIF inside the federal courthouse in Manhattan.  *See* Lewin Decl. at ¶ 4.

Step Three – Deletion and Destruction of Copies: By a date certain, the government should be directed to delete, from all Department of Justice and Federal Bureau of Investigation computer systems and any other electronic devices, all electronic copies of the covered materials, as well as any printed copies of the same.

Step Four - Certification: By a date certain, the Attorney General of the United States or her designee should be directed to certify that Steps One through Three, above, have been completed and that the government has retained no copies of the covered materials.

Until these four steps are completed, the Court's December 19, 2025 order that "the Government and its agents shall not access Petitioner Richman's covered materials or share, disseminate, disclose, or transfer those materials . . . without leave of Court, [or] to any person without first seeking and obtaining leave of this Court" should be continued. ECF No. 34 at 1.

Finally, in light of the events of the last three weeks, Professor Richman respectfully requests that the Court consider directing that the government identify and use an independent "wall team" with no prior connection to either the Arctic Haze investigation or *Comey* cases to carry out the Court's directives.[14]

---

[14] Ideally, the wall team would be comprised of and supervised by career DOJ prosecutors who are not drawn from either the U.S. Attorney's Office for the District of Columbia ("USAO-DDC") (which handled the Arctic Haze investigation) or the U.S. Attorney's Office for the Eastern District of Virginia ("USAO-EDVA") (which is handling the *Comey* matter). *See* Ben Penn, *US Attorney Pirro Demotes Criminal Head as Court Losses Multiply*, Bloomberg Law (Dec. 16, 2025), https://news.bloomberglaw.com/us-law-week/us-attorney-pirro-demotes-criminal-head-as-court-losses-multiply (reporting that USAO-DDC's Criminal Division Chief was demoted for his supposed role in "facilitating" the Court's rulings in this case); ECF No. 21 at 10 (noting that USAO-EDVA authorized the warrantless search of the covered materials in 2025).

13

Dated: December 22, 2025
       New York, NY

Respectfully submitted,

By: /s/ Nicholas J. Lewin
    Nicholas J. Lewin

KKL LLP
Nicholas J. Lewin (admitted *pro hac vice*)
Jonathan F. Bolz (admitted *pro hac vice*)
Jessie-Lauren Pierce (admitted *pro hac vice*)
350 Fifth Avenue, 77th Floor
New York, NY 10118
Tel.: (212) 390-9550
Nick.Lewin@KKLllp.com
Jonathan.Bolz@KKLllp.com
Jessie.Pierce@KKLllp.com

KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.
Mark C. Hansen
1615 M Street NW, Suite 400
Washington, DC 20036
Tel.: (202) 326-7900
mhansen@kellogghansen.com

*Attorneys for Petitioner Daniel Richman*